MONIQUE OLIVIER (SBN 190385)
(molivier@sturdevantlaw.com)
WHITNEY HUSTON (SBN 234863)
(whuston@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA  94104
Telephone:  (415) 477-2410
Facsimile:   (415) 477-2420

MARK TALAMANTES (SBN 187961)
(mark@e-licenciados.com)
JENNIFER A. REISCH (SBN 223671)
(jennifer@e-licenciados.com)
TALAMANTES/VILLEGAS/CARRERA, LLP
170 Columbus Avenue, Suite 300
San Francisco, CA 94133
Telephone:  (415) 989-8000
Facsimile:   415) 989-8028

SHANNON LISS-RIORDAN (*Pro Hac Vice*)
(sliss@llrlaw.com)
HILLARY SCHWAB (*Pro Hac Vice*)
(hschwab@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114
Telephone:  (617) 994-5800
Facsimile:   (617) 994-5801

Attorneys for Plaintiffs and the Putative Plaintiff Class

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO, and MARIA PORTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JANI-KING OF CALIFORNIA, INC., a Texas Corporation; JANI-KING, INC., a Texas Corporation; JANI-KING INTERNATIONAL, INC., a Texas corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.:   CV09-03495 SC<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date:          October 9, 2009<br>Time:          10:00 a.m.<br>Courtroom:   1, 17th Floor<br>Judge:         The Hon. Samuel Conti<br><br>Complaint filed:   June 22, 2009 |

1

## TABLE OF CONTENTS

2   I.      INTRODUCTION .................................................................................................... 1

3   II.     FACTUAL BACKGROUND ................................................................................... 3

4   III.    ARGUMENT ........................................................................................................... 6

5        A.    Jani-King Misstates the Applicable Legal Standard .................................. 6

6             1.    Under *Iqbal* and *Twombley*, a Complaint Survives
a Motion to Dismiss When it Recites Facts
Which State a Plausible Claim for Relief ...................................... 6

             2.    Only Plaintiffs' Claims Averring Fraud Must Be Pled
with Particularity in Accordance With Federal Rules
of Civil Procedure, Rule 9(b) ........................................................ 6

             3.    Although Jani-King Creatively Attempts to Create
Extra Heightened Pleading Standards, Above and Beyond
the Requirements of Rule 9(b), No Such Standards
Apply Here..................................................................................... 7

             4.    If This Court Dismisses Any of Plaintiffs' Claims, Leave
to Amend Should Be Granted ........................................................ 9

        B.    Plaintiffs Need Not Comply with Rule 9(b) for All Claims
Identified by Jani-King, But Even if They Do, the Complaint
Easily Satisfies Rule 9(b) ........................................................................ 9

             1.    Plaintiffs Claims for Relief under California Corporations
Code Do Not Require Pleading with Particularity........................... 9

             2.    Only Plaintiffs' Unfair Competition Law Claims
Which Aver Fraud Are Required to Meet the
Rule 9(b) Standard ...................................................................... 10

             3.    Plaintiffs' Claims Alleging Fraud Include Specific
Allegations That Plainly Satisfy the Heightened Pleading
Requirements of Rule 9(b) ........................................................... 12

                  i.    The Complaint Adequately Pleads with
Particularity Each Allegation Which Avers Fraud ........... 12

                  ii.    Plaintiffs Specifically Allege the Who, What,
Where, and When of Jani-King's Fraudulent
Practices ............................................................................ 13

                  iii.   Plaintiffs' Claims of Fraud under the UCL Meet
the Requirements of Rule 9(b)........................................... 16

        C.    Plaintiffs Adequately Allege a Breach of Contract Claim........................ 17

i

D.    In Asking this Court to Dismiss Plaintiffs' Claims of
Inadequate Training, Jani-King Seek Improper Resolution
of a Factual Issue ...................................................................................... 18

E.    California Labor Code Section 2810 Applies Equally to Both
Parties Who Enter Into Contracts for Janitorial Services .......................... 19

IV.    CONCLUSION.................................................................................................... 21

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE    CASE NO. CV 09-03495 SC

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Akhavein v. Argent Mortgage Co.,*
4
    2009 WL 2157522 (N.D. Cal. Jul. 18, 2009) ........................................................................ 7

5

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ........................................................................................................ 6
6

*Baas v. Dollar Tree Stores Inc.,*
7
    2007 WL 2462150 (N.D. Cal. Aug. 29, 2007) ................................................................... 7

8

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 6, 13, 17, 19

9

*Bryant v. Mattel, Inc.,*
    573 F. Supp. 2d 1254 (C.D. Cal. 2007) ........................................................................... 12
10

11

*Cognitim, Inc. v. Obayashi Corp.,*
    2005 WL 3095934 (N.D. Cal. Nov. 15, 2005) ................................................................. 15

12

*Columbia Natural Resources, Inc. v. Tatum,*
    58 F.3d 1101, 1109 (6th Cir. 1995) ................................................................................. 19
13

14

*Falk v. General Motors Corp.,*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................................. 7, 11, 13

15

*Fanucchi & Limi Farms v. United Agri Products,*
    414 F.3d 1075 (9th Cir. 2005) ..................................................................................... 12, 13
16

17

*In re First Alliance Mortg. Co.,*
    471 F. 3d 977, 990 (9th Cir. 2006) .................................................................................. 16

18

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 7, 17
19

20

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993) ........................................................................................................... 9

21

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) ........................................................................................... 9
22

23

*In re Mattel, Inc.,*
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ......................................................................... 17

24

*Mendiondo v. Centinela Hospital Medical Center,*
    521 F.3d 1097 (9th Cir. 2008) ........................................................................................... 9
25

26

*Netbula, LLC v. BindView Development Corp.,*
    516 F. Supp. 2d 1137 (N.D. Cal. 2007) .......................................................................... 12

27

*Neubronner v. Milkin,*
28
    6 F.3d 666 (9th Cir. 1993) ........................................................................................... 7, 13

*Rojas v. Brinderson Constructors, Inc.*,
    567 F. Supp. 2d 1205 (C.D. Cal. 2008) ................................................................ 20

*Shin v. BMW*,
    2009 WL 2163509 (C.D. Cal. Jul. 16, 2009) ........................................................ 11

*Skaff v. Meridien North America Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) ................................................................................. 9

*Stewart v. Wachowski*,
    2005 WL 6184235 (C.D. Cal. Jun. 14, 2005) ...................................................... 13

*United States ex rel. Hendow v. University of Phoenix*,
    461 F.3d 1166 (9th Cir. 2006) ............................................................................... 8

*United States v. Chang Da Lui*,
    538 F.3d 1078 (9th Cir. 2008) ............................................................................... 8

*United States v. Hempfling*,
    431 F. Supp. 2d 1069 (E.D. Cal. 2006) ................................................................. 7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (2003) ............................................................................... 10, 11, 12

**STATE CASES**

*Linnear Technology Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ......................................................................... 16, 17

*Murphy v. Kenneth Cole Productions, Inc.*,
    40 Cal. 4th 1094 (2007) ....................................................................................... 20

*People v. Gonda*,
    138 Cal. App. 3d 774 (1982) ............................................................................... 10

*People v. Snook*,
    16 Cal. 4th 1210 (1997) ....................................................................................... 19

*Spahn v. Guild Industrial Corp.*,
    94 Cal. App. 3d 143 (1979) ................................................................................. 10

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
    17 Cal. 4th 553 (1998) ......................................................................................... 10

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .................................................................................... 16, 17

**FEDERAL STATUTES**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ............................................................................................................ 6
    Rule 9(b) ....................................................................................................... passim
    Rule 23 ................................................................................................................. 16

iv

## STATE STATUTES

California Corporations Code
     § 31201..................................................................................................................... 10
     § 31202..................................................................................................................... 10

California Labor Code
     § 2810.............................................................................................................passim
     § 2810(a) ........................................................................................................... 19, 20
     § 2810(g)(1)-(2) ...................................................................................................... 20

## OTHER AUTHORITY

S.B. 179, 2003 Reg. Sess., ch. 908, 2003 Cal. Stal. 1 ....................................................... 19

1    Plaintiffs Alejandro Juarez, Maria Juarez, Luis A. Romero, and Maria Portillo (collectively

2    "Plaintiffs"), hereby oppose the Motion to Dismiss brought by Jani-King of California, Inc.

3    Jani-King, Inc. and Jani-King International, Inc. (hereafter "Jani-King") as follows:

4    **I.    INTRODUCTION**

5    In this putative class action, Plaintiffs challenge Jani-King's business scheme of selling

6    purported cleaning franchises, at extremely high costs and on unconscionable terms, based on false

7    representations that Jani-King knows it cannot or will not fulfill at the time they are made.

8    Plaintiffs' Complaint alleges that Jani-King carries out a range of uniform and consistent unlawful,

9    fraudulent, and unfair activities in marketing, selling, and operating its cleaning franchises to

10   Plaintiffs and members of the putative class, individuals throughout California who have been

11   induced to purchase Jani-King franchises.  This course of conduct effectively makes it impossible

12   for Plaintiffs and hundreds of others in the same situation to earn any profit – or even to make the

13   minimum wage for all their hours worked.

14   Plaintiffs' experiences with Jani-King are remarkably consistent.  They are hard-working

15   individuals who clean commercial and residential properties for a living.  Through purchasing a

16   Jani-King franchise, they were led to believe that they could create financial independence for

17   themselves and their families.  Jani-King told Plaintiff Portillo, for example, that she could earn up

18   to $25,000 in one month.  All Plaintiffs were guaranteed a minimum monthly income that never

19   materialized.  Jani-King failed to live up to its end of the bargain for each Plaintiff and hundreds like

20   them.  None of the Plaintiffs regularly received the guaranteed monthly income and none was

21   offered the volume of cleaning accounts Jani-King promised.

22   Throughout the operation of their Jani-King franchises, Plaintiffs continued to be treated

23   extraordinarily alike.  They were subjected to ongoing misrepresentations regarding the cleaning

24   accounts they were offered by Jani-King, the cleaning accounts they accepted, and their cleaning

25   work.  They were also subjected to similar misrepresentations and omissions regarding the payments

26   of franchise fees, paycheck deductions, and wages.  Additionally, Plaintiffs were charged enormous

27   fees each month, regardless of whether they actually earned any income through Jani-King.  Jani-

28   King induced Plaintiffs and others to purchase franchises with the promise of profit and

1

1    independence, but in reality Plaintiffs and other franchises have found themselves paying Jani-King

2    to work.  (Compl. ¶¶ 2, 23-26, 32, 34-38, 40-47, 58-59, 63-98.)

3         Jani-King's franchise scheme violates various provisions of the California Corporations

4    Code, Business and Professions Code, and Labor Code, as well as constitutes intentional and

5    negligent misrepresentation, concealment, and breach of contract.  In its Motion to Dismiss,

6    Jani-King seeks dismissal of eight of Plaintiffs' fraud claims for relief.[1]  Plaintiffs have sufficiently

7    pled each of these claims.  For all of the reasons set forth below, Jani-King's Motion to Dismiss

8    should be denied.[2]

9         First, Jani-King's motion asks this Court to apply a standard of review that does not exist,

10   even above and beyond that required by Federal Rules of Civil Procedure, rule 9(b) ("Rule 9(b)").

11   Such a heightened standard has no application here.  Further, Jani-King misconstrues the appropriate

12   standard under Rule 9(b) which only requires that plaintiffs plead with enough factual specificity

13   that Jani-King is put on notice of the alleged wrongdoing.  Indeed, Jani-King's motion asks this

14   Court to overlook most of the more than 190 well-pled allegations in Plaintiffs' 35-page Complaint.

15   Where, as here, plaintiffs seek to challenge a fraudulent *scheme*, rather than a single bad actor or

16   one-time occurrence, that requirement is satisfied when plaintiffs describe the systematic and routine

17   practices that underlie such a scheme.  Plaintiffs' Complaint more than adequately alleges such facts.

18   Moreover, Jani-King's argument ignores the long-held rules of civil procedure that require the

19   factual allegations of a complaint to be taken as true, and viewed in the light most favorable to

20   Plaintiffs.

21        Second, Jani-King improperly seeks to apply Rule 9(b) to Plaintiffs' statutory claims under

22

23   ───────────────────────────
         [1]    Jani-King's motion seeks dismissal of the following of Plaintiffs' causes of action:
24   First (violations of Cal. Corp. Code § 31201); Second (violations of Cal. Corp. Code § 31202); Third
     (deceit by intentional misrepresentation); Fourth (deceit by concealment); Fifth (negligent
     misrepresentation); Sixth (breach of contract); Eleventh (violations of Cal. Labor Code § 2810); and
25   Fourteenth (unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*).  Plaintiffs do
     not discuss herein those causes of action of which Jani-King does not seek dismissal.

26        [2]    Plaintiffs' demand for punitive damages for their claim for negligent
     misrepresentation (Fifth Cause of Action) was pled in error.  Plaintiffs agree that it should be
27   stricken from the Complaint.

28

2

California law.  No case law supports Jani-King's argument that the heightened pleading standard of that Rule applies to Plaintiffs' claims under the California Corporations Code.  Nor does case law support the application of that standard to the Plaintiffs' allegations that Jani-King has engaged in "unfair" and "unlawful" business practices, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("UCL").  The law is settled that only the "fraudulent" prong of the UCL requires plaintiffs to aver the elements of fraud.

Third, Jani-King's challenge to Plaintiffs' breach of contract claim also ignores the well-pled allegations in the Complaint.  Jani-King suggests that Plaintiffs fail to identify the basic facts about the contract.  Yet, the Complaint describes in detail the franchise contract at issue.  It further describes Jani-King's numerous breaches of that contract.  As such, Jani-King's argument that a breach of contract claim is not pled is entirely unsupported.

Finally, Jani-King's novel contention that California Labor Code section 2810 does not apply to them must be rejected.  The plain language of that statute is wholly applicable to the facts alleged here.  Jani-King's argument to the contrary is unsupported by any case law or the legislative history of that statute.

## II.    FACTUAL BACKGROUND

Jani-King sells cleaning franchises throughout the world, including California.  The franchises are sold to individuals at significant cost and on extremely unfavorable terms.  In exchange for the purchase of a franchise, in sharp contrast to the representations made by Jani-King, individuals typically find themselves locked into oppressive contracts under which they received little, if any, financial benefit.

Initially, in its marketing materials and in meetings with prospective franchise buyers, Jani-King misrepresents that a Jani-King franchise will provide them with a profitable opportunity to operate a franchise.  (*See* Compl. ¶¶ 2, 26.)  To induce individuals to purchase franchises, Jani-King guarantees a monthly income *and large profits*, promises which Jani-King cannot and does not meet. (Compl. ¶¶ 2, 23, 26.)  Jani-King omits important information during and prior to the sale of franchises, including disclosures mandated by franchise law, such as Jani-King's net worth, Jani-King's experience, a statement of fees required to purchase the franchise, and a statement of all

3

financing arrangements.  (Compl. ¶ 27.)  Jani-King targets individuals for the sale of its franchises who have minimal English proficiency and/or minimal education and who are less likely to understand the unfavorable terms of the franchise they are being offered.  (Compl. ¶¶ 22, 29-30.)

When franchise buyers decide to purchase a cleaning franchise from Jani-King, Jani-King provides them with a uniform contract that is rife with unfair, deceptive, and misleading terms. (Compl. ¶¶ 20, 28-38.)  Franchise purchasers have no right to negotiate and must accept the contract as-is.  (Compl. ¶ 28.)  The contract includes terms that violate California law, such as a non-compete clause, the waiver of non-waivable rights, purported authorizations to deduct illegal fees, and mandates to purchase Jani-King insurance and products.  (Compl. ¶¶ 32-38.)

Once buyers have purchased a cleaning franchise, Jani-King then operates in a uniformly fraudulent and unfair manner, continuing to perpetuate misinformation to franchisees.  (Compl. ¶¶ 39-47, 55-59.)  When it offers accounts, Jani-King fails to provide any written documentation of requirements or details.  Instead, it routinely offers accounts through phone calls (or voice mails) to franchisees who are told they must accept the accounts immediately, sight and contract unseen. (Compl. ¶ 46.)  Jani-King underbids the cleaning contracts it negotiates with its commercial clients and thereafter assigns to franchisees.  (Compl. ¶ 42.)  It then, in turn, misrepresents to franchisees the number of hours that will be required to service the accounts offered.  (Compl. ¶ 43.)  Jani-King also uses pretextual reasons to takes accounts from franchisees without warning or notice.  (Compl. ¶ 44.) Additionally, Jani-King fails to provide franchisees with enough cleaning contracts to produce the guaranteed income.  (Compl. ¶ 40.)  Because Jani-King underbids its contracts, does not have sufficient business to provide to franchisees, and takes accounts away from franchisees, franchisees rarely make any profit from their franchises.  (Compl. ¶¶ 23-25.)

In addition, Jani-King tells franchisees they are franchise owners, and therefore deems them independent contractors, but then treats them as employees.  (Compl. ¶¶ 48-62.)  Jani-King exercises control over its franchisees, sets the prices, schedules, and terms of the contracts under which franchisees perform, and refers to franchisees as "personnel" to its clients.  (Compl. ¶¶ 49-54.) Through this misclassification scheme, Jani-King avoids millions of dollars in annual labor costs by denying Plaintiffs and others basic protections afforded workers under California labor laws.

4

(Compl. ¶ 48.)

As the Complaint avers, each of the Plaintiffs has been subjected to Jani-King's scheme.  For example, the Juarazes were told prior to their franchise purchase that their monthly income would be at least $3,000, in exchange for their payment of $10,000 to purchase a franchise.  (Compl. ¶ 64.)  In reality, the Juarazes paid $13,700 for their franchise and consistently made significantly less than $3,000 per month.  (Compl. ¶¶ 66, 68-69.)  They were given false information about the time it would take to clean specific accounts, were provided accounts to clean based upon which it was impossible to make a living wage, and had accounts terminated because of false allegations made by Jani-King representatives.  (Compl. ¶¶ 69-71, 74.)

Plaintiff Romero did not receive any of the legally required disclosures from Jani-King prior to purchasing the franchise.  (Compl. ¶¶ 76-79.)  Also, he was misinformed by Jani-King regarding the terms of the Franchise Agreement, only learning the actual terms after he began working. (Compl. ¶¶ 79-80.)  Jani-King regularly deducted excessive fees and chargebacks from his monthly income, which was consistently less than what was promised by Jani-King.  (Compl. ¶¶ 81-82, 86-88.)  For example, he was charged, each month, royalty fees, account fees, franchise fees, finder's fees, lease fees and insurance.  (Compl. ¶ 86.)  Romero worked exceptionally hard, often over 40 hours per week, 8 hours per day, to earn less then minimum wage.  (Compl. ¶¶ 82, 84.)

For Plaintiff Portillo, she understood that her franchise would cost $6,000, but she was actually charged $12,000 for the franchise.  (Compl. ¶ 91.)  Jani-King never once fulfilled her promised monthly income.  (Compl. ¶ 93.)  Jani-King offered her each of her accounts by phone, insisting on immediate responses.  (Compl. ¶¶ 94-95.)  Jani-King also told Plaintiff Portillo that if she did not earn the minimum $2,000 monthly income, they would pay her the difference.  (Compl. ¶ 89.)  Yet, instead, Jani-King charged her the monthly franchise fee even when they secured her *no* monthly income.  (Compl. ¶ 93.)

Plaintiffs were each similarly subjected to Jani-King's uniform and systematic fraudulent and unfair practices.

///

///

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    ARGUMENT

### A.    Jani-King Misstates the Applicable Legal Standard.

#### 1.    Under *Iqbal* and *Twombley*, a Complaint Survives a Motion to Dismiss When it Recites Facts Which State a Plausible Claim for Relief.

Jani-King places great emphasis on two recent Supreme Court decisions, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"), suggesting that these cases significantly alter and heighten the standard of review in response to a motion to dismiss.  (Mot. 3:22-4:13.)  Jani-King also incorrectly claims that *Iqbal* now requires this Court to apply a two-step analysis to determine if the Complaint survives a motion to dismiss but the decision creates no such mandate.  (*Id.*; *see also* Mot. 11:20-12:26.)  *See Iqbal*, 129 S. Ct. at 1950 (explaining that a court considering a motion to dismiss "*can choose*" to undertake this analysis (emphasis added)).  In fact, although these cases retire the long held *Conley* standard of "no set of facts," they also make plain that to survive a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6), a complaint need not provide detailed factual allegations.  *Twombly*, 550 U.S. at 555-56; *see* Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim").  A complaint must proffer only "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.

A plaintiff's complaint is sufficiently pled if it gives defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Iqbal*, 129 S. Ct. at 1961.  In *Twombly* and *Iqbal*, the Supreme Court maintained the well-established rule that courts must construe the complaint in the light most favorable to the plaintiff, accepting all well-pled factual allegations as true and drawing all reasonable inferences in plaintiff's favor.  *Twombly*, 550 U.S. at 555-56; *Iqbal*, 129 S. Ct. at 1949.  Fundamentally, the review of a complaint remains the same:  taking all factual allegations as true, do plaintiffs allege facts that support a plausible claim for relief?  *Id.*

#### 2.    Only Plaintiffs' Claims Averring Fraud Must Be Pled with Particularity in Accordance With Federal Rules of Civil Procedure, Rule 9(b).

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be

stated with particularity.  Fed. R. Civ. P. 9(b).  When, as here, the fraud is alleged to have occurred over a period of time, the specificity requirement is less stringently applied.  *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006).  The purpose behind Rule 9(b)'s pleading requirement is to put defendants on notice of the specific fraudulent conduct such that they are able to adequately defend such allegations.  *Neubronner v. Milkin*, 6 F.3d 666, 671 (9th Cir. 1993).  Thus, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Id.* at 671-72 (citations and internal quotes omitted).  Further, in cases alleging fraud by omission, the specific time, place, and content of an omission cannot be reasonably pled, since there is no specific act being pled, and thus fraudulent omission claims can proceed "without the same level of specificity required by a normal fraud claim."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (citations omitted).

### 3.    Although Jani-King Creatively Attempts to Create Extra Heightened Pleading Standards, Above and Beyond the Requirements of Rule 9(b), No Such Standards Apply Here.

Jani-King's attempt to convince this Court that there is a pleading standard heightened even beyond that of Rule 9(b) is unavailing.  First, Jani-King suggests that fraud must be even more specifically plead when it is alleged against a corporation.  (Mot. 7:5-11.)  Courts routinely apply the *same* standard – *i.e.*, Rule 9(b) – to fraud claims made against corporations.[3]  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009); *Baas v. Dollar Tree Stores Inc.*, 2007 WL 2462150, at *2 (N.D. Cal. Aug. 29, 2007).

Further, and significantly, Jani-King overlooks that the very case that they rely on to support this proposition also states that any such heightened requirement is relaxed where "the defendant must necessarily possess full information concerning the facts of the controversy or when the facts lie more in the knowledge of the opposite party."  *Akhavein v. Argent Mortgage Co.*, 2009 WL 2157522, at *4 (N.D. Cal. Jul. 18, 2009) (citation and internal quotes omitted); *see also Neubronner*,

---

[3]     Indeed, Rule 9(b) is the only federal rule governing pleading that could and should be applied here, yet it creates no separate rule for fraud against corporations.  Additionally, Jani-King cites no authority to explain what this supposed heightened pleading standard requires.

6 F.3d at 672.  Where, as here, much of the information regarding Jani-King's activities lies more in the hands of Jani-King than Plaintiffs, no such heightened standard applies.

Jani-King possesses more information than Plaintiffs regarding the alleged activities. Plaintiffs' language barrier is a significant limitation on Plaintiffs' ability to understand documents, communications with Jani-King, and their capacity to obtain information from Jani-King.  The allegations in the Complaint explain that Jani-King deliberately targets individuals, such as Plaintiffs, who have limited proficiency in English because they are less likely to understand the contract provisions and confusing terms.  (Compl. ¶¶ 22, 30, 64, 78.)  Additionally, the information at issue is fully within Jani-King's custody, control, and knowledge.  Plaintiffs allege, for example, that they are provided inadequate information regarding accounts over the telephone or voicemail. (Compl. ¶¶ 46, 70, 83, 95.)  On these occasions, it is within Jani-King's power to alert Plaintiffs as to who is calling them and what account is being provided.  As these allegations demonstrate, Jani-King possesses more information than Plaintiffs and no extra heightened pleading standard should apply.

Secondly, Jani-King claims that Plaintiffs must meet an unspecified but additionally heightened pleading standard above Rule 9(b) because their allegations address a future event.  (Mot. 8:4-6.)  Jani-King misapprehends the law.  The allegation of a fraudulent promise does not create a heightened pleading standard.  *Id.*  Rather, making a false promise regarding a future event is simply a well-recognized basis of fraud itself, and only requires that the representation be made with the present intent not to perform.  *United States v. Chang Da Lui*, 538 F.3d 1078, 1085 (9th Cir. 2008) (where using false promises with the intent to defraud to induce action constitutes fraud); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (finding promissory fraud a basis for an action where the promise was false when made).  Plaintiffs plead that Jani-King had the intent to defraud at the time the fraudulent statements and omissions were made.  (*See, e.g.*, Compl. ¶¶ 18, 21-24 (alleging that statements, misrepresentations, and omissions, were made with the present intent to induce Plaintiffs and putative class members to purchase franchises), 27 ("deliberately fail to provide material information"), 43.)  No further pleading is necessary by Plaintiffs.

1    Accordingly, Jani-King's attempts to create higher pleading standards fail.  This Court

2    should review Plaintiffs' averments of fraud under Rule 9(b) and the remainder of their allegations

3    under Rule 8(a)(2).

4         **4.    If this Court Dismisses Any of Plaintiffs' Claims, Leave to Amend Should
                  Be Granted.**

5

6    If the Court dismisses any claim for relief, it must then consider whether to grant leave to

7    amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even

8    if no request to amend the pleading was made, unless it determines that the pleading could not

9    possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

10   2000) (citation and internal quotes omitted).  Plaintiffs request that this Court grant leave to amend

11   any claims in which it finds that Plaintiffs failed to adequately plead their allegations.

12        **B.    Plaintiffs Need Not Comply with Rule 9(b) for All Claims Identified by
                  Jani-King, But Even if They Do, the Complaint Easily Satisfies Rule 9(b).**

13

14        **1.    Plaintiffs Claims for Relief under California Corporations Code Do Not
                  Require Pleading with Particularity.**

15   Jani-King offers the novel and unsupportable argument that Plaintiffs' claims for violations

16   of the California Corporations Code (First and Second Causes of Action) allege fraud.  (Mot. 10:9-

17   11:4.)  But, "the Supreme Court has narrowly construed Rule 9(b) to apply only to the types of

18   actions enumerated in the rule – those alleging fraud or mistake – and has not extended the

19   heightened pleading standard to other legal theories."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

20   F.3d 1097, 1103 (9th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)

21   (declining to apply Rule 9(b) to claims for violations of 42 U.S.C. § 1983 or employment

22   discrimination claims)).  Jani-King is thus improperly asking this Court to *write into* a statute a

23   heightened pleading standard that does not exist.  The Supreme Court has provided further guidance,

24   instructing courts not to impose this heightened standard in the "absence of an explicit requirement

25   in a statute or federal rule."  *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841-42 (9th

26   Cir. 2007) (citations omitted); *see also Leatherman v. Tarrant County Narcotics Intell. & Coord.*

27   *Unit*, 507 U.S. 163, 164 (1993) (rejecting heightened pleading standard suits based on § 1983).  The

28   California Corporations Code imposes no such rule and this Court should not create its own.

9

1   Jani-King's attempts to force these statutory violations into common law fraud is just the type of

2   overreaching disfavored by the *Swierkiewicz* Court.

3        The sections of the California Corporations Code at issue here govern disclosures during the

4   sale of franchises.  Section 31202 prohibits the making of any untrue or misleading statement or

5   material omissions, specifically with regard to the mandated disclosures required under a separate

6   provision of the California Corporations Code.  Cal. Corp. Code § 31202.  Section 31201 similarly

7   prohibits a franchise seller from making any untrue or misleading statements or from making

8   material omissions.  Cal. Corp. Code § 31201.  Unlike common law fraud, intent is not a required

9   element of a violation of this section of the California Corporations Code.  *People v. Gonda*, 138

10  Cal. App. 3d 774, 779 (1982); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (2003).  Where a

11  statute does not require a plaintiff to prove each of these elements of fraud, Rule 9(b) does not apply.

12  *See Mendiondo*, 521 F.3d at 1101.

13       Moreover, Jani-King's reliance on *Spahn v. Guild Indus. Corp.*, 94 Cal. App. 3d 143, 158

14  (1979), to support its claim that these statutes require application of Rule 9(b) is misguided.  (Mot.

15  10:18-21.)  *Spahn* merely makes a descriptive statement that the California Corporations Code

16  provides liability for "fraudulent statements."  94 Cal. App. 3d at 158.  This dicta is not evidence that

17  the drafters of the statute meant to impose a heightened pleading standard for violations.

18       Accordingly, this Court should deny Jani-King's effort to heighten the pleading standard for

19  claims under the California Corporations Code.  Even if Rule 9(b) applies, however, Plaintiffs'

20  allegations fully meet the requirements.  *See* Section III. B. 3.

21              **2.    Only Plaintiffs' Unfair Competition Law Claims Which Aver Fraud Are
                        Required to Meet the Rule 9(b) Standard.**

22

23       Lumping all of Plaintiffs' allegations under California's Unfair Competition Law, Cal. Bus.

24  & Prof. Code § 17200 *et seq.* ("UCL"), into a singular claim of fraud, Jani-King's attempt to confuse

25  this Court and defeat numerous non-fraud based allegations based on an incorrect standard of

26  review.  (Mot. 9:12-17;10:4-8.)  The provisions of the UCL are disjunctive – Jani-King's business

27  acts or practices may be prohibited if they are "unfair" *or* "unlawful" *or* "fraudulent," or any

28  combination thereof.  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 650 (1998).

1     Plaintiffs have alleged violations of each of these prongs of the UCL as independent bases for class-

2     wide relief.  Yet, as Jani-King admits, only those allegations which aver fraud are required to

3     conform to the requirements of Rule 9(b).  (Mot. 10:4-8.)  *Vess*, 317 F.3d at 1103-04.  Jani-King's

4     arguments are thus necessarily only directed to Plaintiffs' claim based on UCL's fraudulent prong.

5         Plaintiffs separately allege that Jani-King engaged in unlawful practices in violation of the

6     UCL.  (Compl. ¶ 189.)  These unlawful violations include the tort of intentional misrepresentation,

7     breach of contract, violation of California Corporations Code sections 31201, 31202, and 31119, and

8     numerous labor code violations.  (*Id.*)  Except for those unlawful violations which the Court

9     determines are based in fraud, none of these claims requires a heightened fraud pleading.  *See, e.g.*,

10    *Shin v. BMW*, 2009 WL 2163509, at *4 (C.D. Cal. Jul. 16, 2009) (only applying the Rule 9(b)

11    standard of review to UCL claims based on fraud).

12        Jani-King does not identify allegations of unlawful practices which it claims are premised on

13    fraud, other than the tort of intentional misrepresentation (Third Cause of Action) and violation of

14    California Corporations Code sections 31201 and 31202 (First and Second Causes of Action).  (Mot.

15    9:10-11:4.)  For those unlawful business practices which do aver fraud, as discussed in Section III.B

16    below, Plaintiffs' well-pled allegations are sufficient to meet the requirements of Rule 9(b).

17    Jani-King does not challenge any of Plaintiffs' other allegations regarding violations of the unlawful

18    prong of the UCL.

19        Plaintiffs additionally challenge Jani-King's unfair business practices.  A business practice is

20    unfair under the UCL "if it is forbidden by law, . . . or if it unfair, that is, if it offends an established

21    public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to

22    consumers."  *Falk*, 496 F. Supp. 2d at 1098 (citation and internal quotes omitted).  This analysis is

23    separate and distinct from that required to establish a violation of fraud under the UCL.  *Id.*

24    Plaintiffs allege that Jani-King has engaged in numerous unfair acts that are not premised on fraud,

25    including offering and enforcing unconscionable contracts, inducing Plaintiffs to enter into illusory

26    franchise contracts, failing to make required translations of documents, engaging in unconscionable

27    tactics to force Plaintiffs to remain employed by Jani-King, and engaging in unfair employment

28    practices.  (Compl. ¶ 190.)

Jani-King does not identify *any* allegations premised on Jani-King's unfair business practices which are grounded in fraud. (Mot. 9:10-11:4.) Jani-King makes no argument that Plaintiffs' claims based on the unfair prong of the UCL are insufficient except to mistakenly assume that they are premised on and require pleading of fraud.

Accordingly, Jani-King's motion to dismiss Plaintiffs' UCL claim on the basis that Jani-King engaged in unfair and unlawful business practices should be denied.

### 3.      Plaintiffs' Claims Alleging Fraud Include Specific Allegations That Plainly Satisfy the Heightened Pleading Requirements of Rule 9(b).

#### i.      The Complaint Adequately Pleads with Particularly Each Allegation Which Avers Fraud.

Where claims include fraud-based allegations, there are two means of pleading such claims. A claim of fraud may "allege a unified course of fraudulent conduct" such that the pleading of that claim as a whole must satisfy Rule 9(b). *Vess*, 317 F.3d at 1103-04. Alternatively, the plaintiff may allege some fraudulent and some non-fraudulent conduct and "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104. Here, Plaintiffs have alleged both fraudulent and non-fraudulent conduct such that only those allegations averring fraud must meet the standard of Rule 9(b). *See, e.g.*, *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1268 (C.D. Cal. 2007).

Plaintiffs do not dispute that their claims under California Civil Code sections 1709 and 1710, deceit by intentional misrepresentation, deceit by concealment, and negligent misrepresentation (Third, Fourth, and Fifth Causes of Action), and their fraud claim under the UCL (*one* prong of the Fourteenth Cause of Action) allege fraud such that the allegations supporting these claims which aver fraud must meet the requirements of Rule 9(b). Plaintiffs' detailed, voluminous, and descriptive Complaint, however, more than meets the level of specificity required by Rule 9(b) for each cause of action that this Court finds avers fraud.[4]

---

[4]      Jani-King also incorrectly claims that Plaintiffs have not shown sufficient intent to defraud because they are required to plead more than "nonperformance" on a contract to prove intent. (Mot. 8:12-13 (citing *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1157-58 (N.D. Cal. 2007)).) In *Netbula*, the court decided a motion for summary judgment and therefore considered evidence submitted by the parties. 516 F. Supp. 2d at 1157-58; *see also Fanucchi & Limi* (continued on next page)

---

12

ii.     **Plaintiffs Specifically Allege the Who, What, Where, and When of Jani-King's Fraudulent Practices.**

Jani-King's contention that Plaintiffs' Complaint cannot meet the Rule 9(b) pleading standard because they did not allege "who, what, where and when" is a bold misstatement that ignores the plain allegations in the Complaint.  (Mot. 6:3-9:9.)  Although fraud allegations generally must state the time, place, and content of the alleged fraud, a pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner,* 6 F.3d at 671-72 (citations and internal quotes omitted).

Plaintiffs' claims of fraudulent activity are not based on one, two, or even three misrepresentations or omissions made by a unique Jani-King employee or in a single advertisement. As the Complaint unmistakably alleges, it is the widespread scheme and consistent practice of Jani-King to act with deceit and fraud.  *Stewart v. Wachowski*, 2005 WL 6184235, at *9 (C.D. Cal. Jun. 14, 2005) (the complaint meets the requirements of Rule 9(b) where it "adequately pleads the existence of a scheme to defraud").  The well-pled allegations of the Complaint describe with specificity the who, what, where, and when of Jani-King's scheme.  Moreover, because Plaintiffs include claims of fraud by omission, their allegations regarding these will necessarily lack some specificity.  *Falk*, 496 F. Supp. 2d at 1098-99.  As courts have recognized, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Id.*

The Complaint identifies the "what" of the fraud claim by describing Jani-King's common conduct in misleading the Plaintiffs and omitting material information.  (*See, e.g.*, Compl. ¶¶ 21-25, 27, 43-47, 70, 74, 83.)  Its business practice is hinged on a scheme of deceit.  (*Id.*)  For example, Jani-King induced Plaintiffs into their franchise scheme with misrepresentations, such as a

(Footnote continued from previous page)
*Farms v. United Agri Prods.*, 414 F.3d 1075,1088 (9th Cir. 2005) (requiring a showing more than nonperformance to show intent to defraud in order to avoid *summary judgment*).  Here, where the Court must only review the allegations in the Complaint to determine if there are facts pled that state a claim for relief, *evidence* of intent is not a factor in this Court's review.  *Twombly*, 550 U.S. at 570. Plaintiffs have alleged intent.  (*See, e.g.*, Compl. ¶¶ 18, 21-24, 43, 27.)

guaranteed income, and omissions, such as legally required disclosures of Jani-King's net worth, experience and required fees.  (Compl. ¶¶ 2, 21-25, 27; *see also id.* at ¶¶ 64, 66, 68, 69 (Jani-King told the Juarezes that if they paid $10,000 for the franchise, they would be guaranteed $3,000 a month.  Instead they paid over $13,000 and earned as little as $324.92 per month.); *id.* at ¶¶ 77, 81, 82 (Plaintiff Romero was promised that he would earn between $15.00 and $20.00 per hour by Jani-King and at least $2,000 per month.  In fact, Romero worked more than full time, sometimes over 60 hours per week, but earned less than minimum wage); *id.* at ¶¶ 89, 91-93 (Jani-King guaranteed Plaintiff Portillo $2,000 earnings per month, but failed to provide her with sufficient accounts to clean and never once provided her with enough work to earn $2,000).)  Jani-King also misrepresented the cost to Plaintiffs of their franchises, stating one price, but charging them more.  (Compl. ¶¶ 64, 66, 89, 91.)  Jani-King made further material misrepresentations, including fabricating "the number of hours that will be required to service the accounts offered to franchisees."  (Compl. ¶¶ 42, 43, 56,70, 82-83, 95.)  It also "makes false statements" about franchisees' work in order to take accounts from franchisees without warning or notice.  (Compl. ¶¶ 44-45, 74, 87.)  Jani-King additionally provided misinformation to Plaintiffs regarding the profitability of cleaning accounts.  (Compl. ¶¶ 2, 25, 26, 64, 66-69, 77, 82, 89, 91, 93.)  These are examples of the well-pled allegations of Jani-King's fraudulent misstatements included in the Complaint.

The "when" of Jani-King's fraudulent practice is not a specific date or time, but *routinely*.  The Complaint alleges that Jani-King routinely make untrue and misleading statements in selling franchises.  (*See, e.g.*, Compl. ¶¶ 21-25, 27, 29, 43, 44, 46, 107, 115; *see also id.* at ¶ 45 ("as a matter of course"); *id*. at ¶ 47 ("[a]s a matter of common practice"); *id*. at ¶ 88 (describing Jani-King's practice of "chronically" engaging in fraudulent activity).)  The Complaint also alleges that Jani-King routinely deceives Plaintiffs throughout its ongoing business operations.  (*Id.*)  As the dictionary definition explains, routine or routinely means "a customary or regular course of procedure."  (The Random House College Dictionary 1150 (1975).)  Plaintiffs allege that Jani-King's consistent practice is to make misleading statements and omit material information in its franchise sales and operations.  They allege that Jani-King misled, misrepresented, and omitted material information consistently before they purchased the franchise, during the sales transactions,

14

and after they had an active franchise operation through Jani-King. (Compl. ¶¶ 21-25, 27, 29, 43-47, 70, 74, 83.) Indeed, as the Complaint indicates, Jani-King has been engaged in an unlawful scheme that compromises its common business practices. Alleging specific dates for each and every one of these commonplace transactions would not only be impossible, but it would also not help Jani-King identify the specific fraudulent behavior any more than the allegations in the Complaint currently do. *See, e.g.*, *Cognitim, Inc. v. Obayashi Corp.*, 2005 WL 3095934, at *3 (N.D. Cal. Nov. 15, 2005) (denying a motion to dismiss under Rule 9(b) where the allegations in the complaint gave "Defendants fair notice of the nature of the claim").

The "who" is pled with particularity as well. As Plaintiffs allege, it is not a single individual representative of Jani-King who is responsible for making fraudulent and misleading statements. Rather, the dissemination of false and misleading information is based on company-wide practices common to all Jani-King representatives. (*See, e.g.,* Compl. ¶¶ 21, 27, 39, 43, 45, 47, 88.) Additionally, because different representatives made similarly fraudulent statements and omissions to different plaintiffs and different class members during hundreds of routine contacts, listing every employee (often known by first name only), is not necessary to place Jani-King on notice of the practices at issue. Accordingly, the Complaint accurately names Jani-King representatives as the "who" that engaged in fraudulent practices.

In an effort to convince this Court to set aside all of Plaintiffs' well-pled allegations, Jani-King carves up Plaintiffs' allegations into categories. (Mot. 4:20-5:22.) The categorical disregard of Plaintiffs' allegations is error. For example, Jani-King makes the remarkably flawed assertion that the Court should disregard all allegations which it labels as not "plaintiff specific" – *i.e.*, those allegations that do not identify a specific Plaintiff by name. (Mot. 4:22-24; 7:25-8:2; 8:19-9:9.) In other words, Jani-King is contending that this Court should entirely ignore allegations describing the who, what, where, and when if each allegation is not labeled with a particular plaintiffs' name. (*See* Mot. 8:19-9:9 (claiming that Plaintiffs only make a "single allegation" of a misrepresentation).) Not only does Jani-King fail to cite any legal authority for such a proposition, this argument blatantly disregards Plaintiffs' actual allegations which describe a course of conduct and a uniform contract that is common to all Plaintiffs. Jani-King's attempt to have this Court read

"Plaintiffs" out of the Complaint is unavailing.  Indeed, it is axiomatic that a well-pleaded class action complaint necessarily will contain allegations that describe a common course of conduct.  *See, e.g.*, Fed. R. Civ. P. 23; *In re First Alliance Mortg. Co.*, 471 F. 3d 977, 990 (9th Cir. 2006) (noting that the ninth circuit "favors class treatment of fraud claims stemming from a common course of conduct" (citations and internal quotes omitted)).

Moreover, Plaintiffs describe numerous specific misrepresentations.  (*See, e.g.*, Compl. ¶¶ 64, 66, 67, 70 (alleging that Jani-King misrepresented to the Juarezes the cost of a franchise, how much they would earn, the amount of time Jani-King had to provide them with cleaning accounts, and how long it would take them to clean an account they agreed to clean outside of their region); *id.* at ¶¶ 77, 80, 81, 83 (alleging that Jani-King misrepresented how much Romero would earn each month, the number of accounts he would be offered for work, how much they would deduct in fees from his earnings and how long it would take him to perform work); *id.* at ¶¶ 89, 91, 94, 96 (alleging that Jani-King misrepresented to Portillo the franchise costs, how much she could earn each month, the amount of accounts they would provide her, the geographic area in which they would offer her accounts and the amount Jani-King would deduct for franchise and other fees).)

Plaintiffs plead with specificity the circumstances underlying the alleged fraudulent conduct such that Jani-King is on notice of the alleged fraud.  Accordingly, this Court should deny Jani-King's motion on this ground.

### iii.    Plaintiffs' Claims of Fraud under the UCL Meet the Requirements of Rule 9(b).

Jani-King's arguments lack particular force as they pertain to Plaintiffs' UCL claim. Plaintiffs allege that Jani-King engaged in fraudulent activity in violation of the UCL.  (Compl. ¶ 191.)  To state such a claim, Plaintiffs need only show that a reasonable person is "likely to be deceived" by the fraudulent statements.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (citation and internal quotes omitted).  In order to allege fraud under the UCL, "a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to mislead consumers and allege that each misrepresentation to each customer conforms to that scheme." *Linnear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134 (2007)

16

1    (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal. 3d 197, 212-13 (1983).)

2    Although pleading fraud under the UCL requires meeting the standard of Rule 9(b), *Kearns*, 567 F.

3    3d at 1125, the fraudulent business practice prong of the UCL is understood to be "distinct from

4    common law fraud," *In re Tobacco II Cases*, 46 Cal. 4th at 312; *see also In re Mattel, Inc.*, 588 F.

5    Supp. 2d 1111, 1118 (C.D. Cal. 2008) ("'fraudulent' under [the UCL] is not the same as common

6    law fraud-as [the UCL] does not require a plaintiff to plead all of the elements of fraud" (citation

7    omitted)).

8           As described above, Plaintiffs make numerous allegations describing Jani-King's fraudulent

9    scheme.  Plaintiffs also specifically allege that this fraudulent activity is likely to deceive a

10   reasonable person.  For example, Plaintiffs allege that Jani-King's contracts are "highly technical,

11   legalistic, and confusing" such that its contract provisions would mislead a reasonable person.

12   (Compl. ¶ 29.)  Similarly, Plaintiffs allege that information about franchise costs, fees, and

13   chargebacks were presented to them in a manner that was likely to deceive them, because Plaintiffs'

14   paystubs were "confusing, omitted information about hours, location, applicable rates of pay, and

15   total wages earned for work on each account."  (Compl. ¶ 72.)  Additionally, language barriers,

16   created because Jani-King intentionally targets Spanish speakers, make the representations contained

17   in the franchise contract likely to deceive.  Plaintiffs allege that their negotiations were conducted in

18   Spanish, but the contracts were presented in English, which Plaintiffs can not speak, read, or write

19   with proficiency.  (*See, e.g.*, Compl. ¶¶ 22, 29, 30, 64, 78, 89.)

20          Plaintiffs have thus alleged violations of the fraudulent prong of the UCL with the requisite

21   particularity.  Jani-King's motion to dismiss on this basis should be denied.

22          **C.      Plaintiffs Adequately Allege a Breach of Contract Claim.**

23          Plaintiffs' Complaint includes a well-pled claim for breach of contract.  Jani-King misreads

24   the allegations in the Complaint, however, and wrongly suggests that Plaintiffs fail to identify the

25   contract or the breach at issue.  (Mot. 12:19-26.)  This argument is false.

26          As a threshold matter, because the breach of contract claim does not claim fraud, the Court

27   need only determine that Plaintiffs alleged enough facts to support a plausible breach of contract

28   claim.  *Twombly*, 550 U.S. at 570.  Moreover, Plaintiffs plainly allege and specifically describe the

contract.  Plaintiffs allege that Jani-King requires each franchisee to sign "a standard form contract." (Compl. ¶ 20.)  Plaintiffs also allege that this is the same contract which each of them were offered. (Compl. ¶¶ 28-29.)  Plaintiffs each allege that they signed the contract.  (Compl. ¶¶ 65, 79-80, 90-91.)

The allegations also describe the contract in detail.  (*See generally* Compl. ¶¶ 28-38.)  For example, the contract binds franchisees to providing cleaning services for the entire period of their debt to Jani-King (usually several years), but Jani-King is only obligated to perform under the contract for a limited time within the first year (usually four months).  (Compl. ¶ 31; *see also* ¶¶ 67, 80, 92.)  The contract includes a requirement that franchisees purchase a supply and equipment package from Jani-King.  (Compl. ¶ 32.)  The Contract includes a non-compete clause.  (Compl. ¶ 33; *see also* ¶ 75.)  And, the contract includes a provision purportedly authorizing Jani-King to deduct franchisee and other fees.  (Compl. ¶ 36; *see also* ¶¶ 69, 73, 82, 86, 88, 96, 98.)

Finally, the Complaint also includes detailed allegations regarding Jani-King's systematic breaches of the contract.  (*See generally* Compl. ¶¶ 39-47.)  For example, the Complaint alleges: "Plaintiffs and the proposed class rarely, if ever, receive the promised level of monthly income" (Compl. ¶ 40); and "Plaintiffs allege that Jani-King has bid and continues to bid and make promises to provide janitorial services for prospective and existing clients at amounts and projected hours (per cleaning) that it knows to be insufficient and/or cannot be reasonably completed for a fair and reasonable hourly wage and profit by Plaintiffs and members of the proposed class" (*id*. at ¶ 42).

In order for Jani-King's argument to succeed, it improperly asks this Court to simply disregard all of these allegations.  But Plaintiffs have described their contracts and Jani-King's breaches of the Complaint sufficiently.  Accordingly, Plaintiffs have pled a breach of contract claim and Jani-King's motion on this basis should be denied.

**D.      In Asking this Court to Dismiss Plaintiffs' Claims of Inadequate Training, Jani-King Seek Improper Resolution of a Factual Issue.**

Jani-King's contention that Plaintiffs' Complaint both alleges and disproves allegations that Jani-King misrepresented that it would provide support and training is absurd.  (Mot. 11:5-17 (arguing that "[p]laintiffs plead themselves out of" the claims, included in the Third and Fifth Causes

18

of Action, that Jani-King failed to provide adequate training and support).) In fact, Plaintiffs properly allege that Jani-King failed to provide Plaintiffs and the plaintiff class with the promised level of support and training. (Compl. ¶¶ 122, 140.)

Jani-King's sole basis for arguing that Plaintiffs "plead themselves out of" these allegations is that Plaintiffs also allege that they attended a single training. (Mot. 11:12-16.) Whether this one training satisfied Jani-King's promises regarding provision of ongoing support and training to its franchisees, however, is an entirely factual matter not appropriate for review in a motion to dismiss. *Twombly*, 550 U.S. at 545-46.

Further, where a complaint's factual allegations are capable of more than one interpretation, inference should be drawn in the plaintiff's favor. *Twombly,* 550 U.S. at 555-56; *see also Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Accordingly, this Court should not entertain Jani-King's argument that demands review well beyond the four corners of the Complaint.

### E. California Labor Code Section 2810 Applies Equally to Both Parties Who Enter Into Contracts for Janitorial Services.

California Labor Code section 2810 ("Section 2810") prohibits "[a] person or entity" from entering into a financially insufficient contract for janitorial labor or services. Cal. Labor Code § 2810(a). It was signed into law in 2003 by then-Governor Gray Davis in response to growing evidence of labor law violations in the areas covered by the statute, including janitorial services. *See* S.B. 179, 2003 Reg. Sess., ch. 908, 2003 Cal. Stat. 1. On its face, the law plainly governs contracts that Jani-King routinely negotiates with its clients, pursuant to which Plaintiffs and other putative class members perform janitorial labor. (*See* Compl. ¶¶ 36, 38, 42, 56-58.) Jani-King's argument to the contrary is without merit cannot be sustained

Under California law, when statutory language is not ambiguous, courts must "presume the Legislature meant what it said and the plain meaning of the statute governs." *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997) (citations omitted). Yet, while Section 2810 prohibits "[a] person or entity" from entering into a financially insufficient contract for janitorial labor or services, Jani-King contends that this rule applies to only one of the two necessary parties to such contracts. Cal. Labor

Code § 2810(a).  (Mot. 13:1-18.)  In essence, Jani-King contends that only its customers, not Jani-King itself, may be held responsible for entering into the financially insufficient contracts that result in underpayment of wages to janitorial workers like the Plaintiffs in this case.  This reading ignores Section 2810's plain language, which is unambiguous in its coverage of any "person or entity" that enters into such contracts.

Jani-King's argument also ignores the plain language of subsection (g), which authorizes any aggrieved employee, in connection with the performance of a covered contract, to bring an action for damages and injunctive relief.  Cal. Labor Code § 2810(g)(1)-(2).  As Plaintiffs allege that they and members of the putative class are employees who have suffered labor law violations in connection with their performance of janitorial contracts that were entered into by Jani-King, they have a private right of action against Jani-King under this provision.  (Compl. ¶¶ 3, 26, 48-62, 71-72, 84-85, 97.)

Further, Jani-King's reliance on dicta in *Rojas v. Brinderson Constructors, Inc.*, 567 F. Supp. 2d 1205 (C.D. Cal. 2008), to support their interpretation of this statute is misplaced.  That case did not hold that a janitorial contractor, like Jani-King, could not be held liable for financially insufficient contracts under Section 2810; it merely noted that the law may be used to "hold[] contractors' clients liable to the contractors' employees in certain circumstances."  *Id*. at 1207 n.1. Nothing in *Rojas* supports Jani-King's contention that aggrieved employees cannot also sue the janitorial contractor when that entity knowingly enters into financially insufficient contracts, as Plaintiffs allege here.

Finally, Jani-King's narrow reading of Section 2810 would require the Court to disregard California's well-established policy of liberally construing laws that establish minimum labor standards in favor of protecting workers.  *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1111 (2007) (noting that, "statutes regulating conditions of employment are to be liberally construed with an eye to protecting employees" (citing *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) & *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999) (additional citation omitted)).  As Section 2810 regulates the conditions of employment in the area of janitorial labor and services, it must be construed in a manner that is consistent with that policy.

Accordingly, because the plain language of the statute indicates no intent to limit the

20

application of the statute as Jani-King suggests, Jani-King's motion to dismiss on this ground should be denied.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Jani-King's Motion to Dismiss be denied.

Date:  September 14, 2009

Respectfully submitted,
THE STURDEVANT LAW FIRM
A Professional Corporation

TALAMANTES/VILLEGAS/CARRERA, LLP

LICHTEN & LISS-RIORDAN, P.C.

/s/ *Whitney Huston*
WHITNEY HUSTON
Attorneys for Plaintiffs

Z:\441 - Jani-King\Pleadings\Mtn to Dismiss - Opp - DRAFT 12.doc