MONIQUE OLIVIER (SBN 190385)
(molivier@sturdevantlaw.com)
WHITNEY HUSTON (SBN 234863)
(whuston@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA  94104
Telephone:  (415) 477-2410
Facsimile:  (415) 477-2420

MARK TALAMANTES (SBN 187961)
(mark@e-licenciados.com)
JENNIFER A. REISCH (SBN 223671)
(jennifer@e-licenciados.com)
TALAMANTES/VILLEGAS/CARRERA, LLP
170 Columbus Avenue, Suite 300
San Francisco, CA 94133
Telephone:  (415) 989-8000
Facsimile:   415) 989-8028

Attorneys for Plaintiffs and the Putative Plaintiff Class

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO, and MARIA PORTILLO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>JANI-KING OF CALIFORNIA, INC., a Texas Corporation; JANI-KING, INC., a Texas Corporation; JANI-KING INTERNATIONAL, INC., a Texas corporation; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.:   CV09-03495 SC<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CORP. CODE § 31201; (2) VIOLATION OF CORP. CODE § 31202; (3) INTENTIONAL MISREPRESENTATION; (4) CONCEALMENT; (5) NEGLIGENT MISREPRESENTATION; (6) BREACH OF CONTRACT; (7) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (8) VIOLATION OF LABOR CODE §§ 510, 1194, 1198 AND WAGE ORDER 5-2001; (9) VIOLATION OF LABOR CODE §§ 1182.11-1182.13, 1194(a), 1194.2, 1197 AND WAGE ORDER 5-2001; (10) VIOLATION OF LABOR CODE §§ 226, 1174 AND WAGE ORDER 5-2001; (11) VIOLATION OF LABOR CODE § 2802; (12) VIOLATION OF LABOR CODE § 221; (13) VIOLATION OF LABOR CODE § 450; (14) VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200 _et seq_.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.       Plaintiffs Alejandro Juarez, Maria Juarez, Luis A. Romero, and Maria Portillo (hereinafter, "Plaintiffs") bring this action on behalf of themselves and a proposed class of similarly situated California individuals against Defendants Jani-King of California, Inc., Jani-King, Inc., and Jani-King International, Inc. (hereinafter collectively referred to as "Defendants" or "Jani-King") for Jani-King's unlawful, fraudulent, and unfair conduct in marketing, promoting, selling, and operating its purported cleaning "franchises."

2.       Plaintiffs and proposed members of the class are individuals who have performed janitorial work for Jani-King.  Plaintiffs were induced by Jani-King with promises of guaranteed income and entrepreneurial opportunity to purchase purported Jani-King "franchises."  Contrary to the misrepresentations about the success of such franchises, Jani-King sells such franchises at an enormous expense to Plaintiffs and others, even though it knows there is not sufficient business or income to satisfy its obligations under the franchise contracts.  The franchise contracts are replete with unconscionable terms of which Plaintiffs and others have no understanding, and the enforcement of which creates a cycle of debt for Plaintiffs and others from which they cannot free themselves.

3.       In addition, Jani-King uses a scheme to evade responsibility for janitorial workers' wages and job benefits by purporting to hire them indirectly (through the "franchises") as "independent contractors" while, in fact, retaining control over the work that Plaintiffs and other janitorial workers perform.  Jani-King's scheme denies Plaintiffs and others the wages and benefits to which they are lawfully entitled under various sections of the California Labor Code.

4.       Through this lawsuit, Plaintiffs charge Jani-King with violations of the California Franchise Investment Law, California Corporations Code § 31000 *et seq.*, the torts of intentional and negligent misrepresentation and concealment, breach of contract, multiple provisions of the California Labor Code, and the California Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL").  Plaintiffs seek, on behalf of themselves and the proposed class, declaratory and injunctive relief, compensatory and punitive damages, restitution, penalties, and attorneys' fees and expenses.

**JURISDICTION AND VENUE**

5.    The Superior Court of the State of California in and for the County of Alameda had jurisdiction over the subject matter pursuant to California Code of Civil Procedure § 410.10 and pursuant to California Corporations Code § 31000 *et seq.,* California Business and Professions Code § 17200 *et seq.*, various sections of the California Labor Code, and the applicable Industrial Welfare Commission Wage Orders, Cal. Code of Regs. tit. 8, § 11000 *et seq.* (hereinafter, "Wage Orders"). Jurisdiction was proper because the unlawful acts and practices alleged herein were committed by Defendants within this jurisdiction and the amount of damages sought exceeds the minimum jurisdiction of the Court ($25,000).  Venue was proper pursuant to California Code of Civil Procedure § 395.5, and California Business and Professions Code §§ 17202 and 17203 and because Defendants conduct substantial business activity throughout Alameda County.

6.    This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1446, 1453, and 1332(d)(2) and the removal proceedings filed by Defendants on July 30, 2009.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) and the removal proceeding filed by Defendants on July 30, 2009.

**PARTIES**

8.    Plaintiff Alejandro Juarez is a resident of Alameda County, California who has performed cleaning and other janitorial services for Defendants during the relevant time period. Mr. Juarez purchased a Jani-King franchise with his spouse, Maria Juarez, on or about May 26, 2005.

9.    Plaintiff Maria Juarez is a resident of Alameda County, California who has performed cleaning and other janitorial services for Defendants during the relevant time period.  Ms. Juarez purchased a Jani-King franchise with her spouse, Alejandro Juarez, on or about May 26, 2005.

10.   Plaintiff Luis A. Romero is a resident of Alameda County, California who has performed cleaning and other janitorial services for Defendants during the relevant time period. Mr. Romero purchased a Jani-King franchise on or about January 25, 2008.

11.   Plaintiff Maria Portillo is a resident of Santa Clara County, California who has performed cleaning and other janitorial services for Defendants during the relevant time period.

1   Ms. Portillo purchased a Jani-King franchise on or about March 29, 2005.

2         12.    Plaintiffs seek to represent a proposed class consisting of hundreds of individuals who

3   have purchased or will purchase Jani-King franchises and have performed or will perform janitorial

4   and cleaning work for Jani-King within the State of California at any time during the period which

5   began four years prior to the filing the original complaint in this action, up through and including the

6   present (hereafter, the "relevant time period").

7         13.    Defendant Jani-King of California, Inc. ("Jani-King of California") is a Texas

8   corporation with its principal place of business in Addison, Texas.  Jani-King of California has four

9   (4) regional offices in California, which presently are located in Concord, Sacramento, Orange, and

10  San Diego.  Jani-King of California is a wholly owned subsidiary of Defendant Jani-King, Inc.

11        14.    Defendant Jani-King, Inc. is a Texas corporation with its principal place of business

12  in Addison, Texas.  Jani-King, Inc. is the parent corporation of Jani-King of California.  Jani-King,

13  Inc. provides administrative and management services to its operating affiliates, including Jani-King

14  of California.  Jani-King, Inc. is a wholly owned subsidiary of Defendant Jani-King International,

15  Inc.

16        15.    Defendant Jani-King International, Inc. ("Jani-King International") is a Texas

17  corporation with its principal place of business in Addison, Texas.  Jani-King International is the

18  parent corporation of Jani-King, Inc.  Jani-King International provides administrative and

19  management services to its operating affiliates, including Jani-King of California.  (Hereafter, Jani-

20  King of California, Jani-King, Inc., and Jani-King International will be collectively referred to as

21  "Jani-King.")

22        16.    Upon information and belief, Plaintiffs allege that all Defendants are doing business

23  as Jani-King, and are operating a single, integrated business of providing cleaning and janitorial

24  services to commercial clients throughout the State of California.  Jani-King, Inc. and Jani-King,

25  International provide and/or determine the standard policies, forms, contracts and marketing

26  practices utilized by Jani-King of California.

27        17.    Does 1 through 20, inclusive, are sued pursuant to California Code of Civil Procedure

28  § 474.  Plaintiffs are ignorant of the true names or capacities of these defendants, and therefore sue

these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true

names and capacities when ascertained.  Plaintiffs are informed and believe that each of the

fictitiously-named Doe defendants, including any such defendants that may be the agents,

representatives, or parents or subsidiary corporations of the named Defendants, is responsible in

some manner for the occurrences, events, transactions, and injuries alleged herein and that the harm

suffered by Plaintiffs and the proposed class were proximately caused by them in addition to

Defendants.

18.     Plaintiffs are informed and believe and thereon allege that each of the Defendants,

including the Doe defendants, acted in concert with each and every other defendant, intended to and

did participate in the events, acts, practices and courses of conduct alleged herein, and was a

proximate cause of damage and injury thereby to Plaintiffs as alleged herein.

19.     At all times herein mentioned, each defendant was the agent or employee of each of

the other defendants and was acting within the course and scope of such agency or employment.

### FACTUAL ALLEGATIONS

A.     **Jani-King's Deceptive Marketing Scheme Lures Class Members into Franchise Contracts.**

20.     Jani-King has purported to sell hundreds of franchises to individuals throughout

California ("franchisees") who, in-turn, perform the cleaning and other janitorial work for Jani-

King's commercial clients ("clients").  Jani-King requires individuals purchasing franchises to sign a

standard form contract (the "franchise contract") which purports to establish the terms of the

relationship between Jani-King and the franchisee.

21.     Through common practices in presenting information about its franchises, Jani-

King's representatives routinely make untrue and/or misleading statements and omit information

about purchasing a Jani-King franchise.  Jani-King's representatives make these material

misrepresentations and/or omissions knowingly and intentionally to induce individuals to sign

franchise contracts.  Jani-King's misrepresentations and/or omissions are knowingly false when

made to induce individuals to purchase Jani-King franchises that provide the purchasers with

virtually no benefit while Jani-King reaps a significant profit.  Additionally, Jani-King is aware of

the falsity of its misrepresentations and/or omissions because it receives a significant number of complaints from franchisees that identify Jani-King's misrepresentations and omissions, yet Jani-King continues to make the same misrepresentations and omissions.  Jani-King is further aware of the falsity of its misrepresentations and/or omissions at the time these statements are made because Jani-King drafted and is aware of its standardized franchise contract provisions that contradict its misrepresentations and/or omissions.

22.     Jani-King sells a significant percentage of franchises to individuals who, like Plaintiffs, have limited or no fluency in English and/or limited formal education.  The advertisements, promotional materials, and other documents Jani-King provides to prospective franchisees are in English and contain confusing and misleading statements.

23.     For example, in order to induce persons such as Plaintiffs and members of the proposed class to buy a franchise, Jani-King misrepresents that it has sufficient business to satisfy the terms of the franchise contracts, when in fact it does not have enough accounts to offer to individuals who have signed franchise contracts on the terms promised to them.

24.     Upon information and belief, Jani-King knows it does not have sufficient business to satisfy the terms of the franchise contracts when it advertises franchises, solicits franchisees, and enters into franchise contracts.  Jani-King is aware of these misrepresentations and omissions at the times at which they are made because Jani-King knows the volume of its available accounts and the requirements of the franchise contracts to which it is committed.  Thus, Jani-King knowingly and willfully solicits and enters into franchise contracts which it knows it cannot perform.

25.     Jani-King also misrepresents to Plaintiffs and the proposed class that they will receive cleaning accounts that are reasonably and profitably bid such that they can make a profit from working at the accounts and/or earn wages at an hourly rate that exceeds the applicable minimum wage.

26.     Jani-King markets franchises to Plaintiffs and the proposed class as an entrepreneurial arrangement when in fact the franchise structure forecloses franchisees from making any profit. Jani-King misrepresents to Plaintiffs and the proposed class that after purchasing a franchise they will be independent contractors and/or business owners whereas, in actuality, Jani-King treats them

like its employees.  Essentially, Jani-King franchisees are buying a job from Jani-King.

27.    Jani-King's representatives also routinely and deliberately fail to provide material information prior to the signing of the franchise contracts that is required by California franchise law, including Jani-King's net worth, Jani-King's experience, a statement of fees required, a statement of all financing arrangements between Jani-King and the franchise purchaser, and a statement of whether or not the franchise purchaser will receive an exclusive territory.

28.    Through common practices in presenting information about its franchises, Jani-King's representatives routinely fail to provide franchisees with material information about the nature and extent of fees they will be charged and the expenses they will incur throughout the operation of their franchise.  Instead of presenting potential franchisees with information about the actual financial costs of operating a Jani-King franchise, Jani-King representatives portray the one-time payment of the franchise fee as the exclusive significant financial cost to Plaintiffs and the proposed class.  Jani-King is aware of the falsity of its misrepresentations and/or omissions at the time these statements are made because it receives a significant number of complaints from franchisees describing their lack of understanding and concerns about the excessive fees and costs they are charged, yet Jani-King continues to make material misrepresentation and omissions to franchisees and potential franchise purchasers.

29.    Jani-King representatives routinely misrepresent to franchisees that, in exchange for purchasing a franchise, they will *earn* a certain amount of income per month.  The franchise contract, however, purports to allow Jani-King to meet its obligation by merely *offering* franchisees the "opportunity to provide services" to its clients that will equal a certain level of income within the initial offering period.  Jani-King is aware of the falsity of its misrepresentations and/or omissions at the time these statements are made because Jani-King drafted and is aware of its standardized franchise contract provisions.

30.    Jani-King further routinely and intentionally misrepresents the nature and extent of Jani-King's obligation to "offer" accounts to franchisees.  Jani-King representatives do so by failing to explain that Jani-King will claim that an "offer" of business has been made to a franchisee even when that offer is made orally only (not in writing), with little or no notice to the franchisee, and

1   without giving the franchisee an opportunity to respond, ask questions, review the cleaning services

2   contract between Jani-King and the commercial client, or inspect the property to be cleaned.  Jani-

3   King also knowingly fails to disclose to franchisees that, once Jani-King has determined that it has

4   made the initial minimum amount of business "offers" to a new franchisee within the "initial

5   offering period" (usually 120 days), it no longer has to make *any* offers to franchisees, regardless of

6   whether the franchisees have accepted, declined, or simply been unable to accept or decline the

7   account "offers" that Jani-King alleges it made to them.  Jani-King is aware of the falsity of its

8   misrepresentations and/or omissions at the time these statements are made because Jani-King drafted

9   and is aware of its standardized franchise contract provisions.

10          31.     As a matter of common practice, Jani-King representatives also routinely represents

11  to franchisees that the accounts they will be offered will be limited to the specific geographic region

12  of the franchisees' designation.  The Jani-King contract, however, purports to allow Jani-King to

13  meet its obligations by offering accounts anywhere within the Jani-King "region" where the

14  franchise was purchased.  This means that, for example, individuals who purchase their franchises in

15  the East Bay (formerly Walnut Creek, now Concord) office of Jani-King could be offered accounts

16  as far away as Fresno County.  Jani-King is aware of the falsity of its misrepresentations and/or

17  omissions at the time these statements are made because Jani-King drafted and is aware of its

18  standardized franchise contract provisions.

19  **B.     Jani-King's Franchise Contracts Are Rife with Unlawful, Unfair, and Deceptive Terms.**

20          32.     The franchise contract offered to Plaintiffs and members of the proposed class is a

21  contract of adhesion in that it is offered by Jani-King on a take-it-or-leave-it basis with no

22  opportunity to negotiate any of its terms.  It is a standardized form contract written by and offered on

23  a take-it-or-leave-it basis.  Franchise purchasers may not negotiate for terms or conditions which

24  appear in the franchise contract.

25          33.     A number of specific provisions of the franchise contract are unconscionable, unfair,

26  and/or unlawful.  Jani-King's principal obligation under the franchise contract is a promise to *offer*

27  franchisees the opportunity to clean accounts that will generate a certain amount of monthly income.

28  The amount of monthly income which the offered accounts should create is dependent on the "Plan"

the franchisee purchases.  The franchise contract does not guarantee that franchisees will *earn* a certain amount per month.

34.     The obligation to only *offer* accounts is illusory, and therefore inherently unconscionable.  For example, because Jani-King does not require acceptance, or even receipt of an offer, the franchise contract allows Jani-King to "offer" the same cleaning account to multiple franchisees, thereby satisfying multiple franchise contracts without actually providing any benefit to a single franchise owner.  Additionally, because the franchise contract only requires Jani-King to offer cleaning accounts to franchisees for an "initial offering period" (typically 120 days), and Jani-King credits itself for making these offers even if franchisees do not or cannot accept them, and without any verification that these offers are received by the franchisees, franchisees may actually receive no benefit from the franchise contract.

35.     Further, if Jani-King does not satisfy its obligation to make offers, the franchise contract purports to allow Jani-King to satisfy its obligation to the franchisee by refunding the franchisee three times the amount of business not offered to the franchisee within the initial offering period (*e.g.*, if a franchisee was supposed to be offered accounts which would generate income of $2,000 per month, but they were only offered accounts that generated $1,000 per month, they would be entitled to a refund of three times $1,000).  However, because Jani-King's franchise fees generally exceed more than three times the amount of the income which was to be generated by the offers to service accounts (for example, a franchise plan of $10,000 may provide for offers that would generate $3,000 in income), franchisees stand to lose money and Jani-King still stands to make a profit even when Jani-King, by its own terms, fails to satisfy its contractual obligation to franchisees.  In addition, Jani-King routinely fails to notify franchisees when their right to obtain this refund has ripened, and fails to make these refunds to franchisees who have not received sufficient offers from Jani-King.

36.     Additionally, the franchise contract includes an unfair and one-sided exculpatory provision which purports to absolves Jani-King of its responsibility to offer any accounts to its franchisees.  The provision states that Jani-King does not guaranty that it will provide offers that "will reach or remain" the amount of monthly income the offers are intended to generate.

8

37.     The franchise contract also purports to require that franchisees purchase a supply and equipment package from Jani-King, in violation of California law governing employees.  Jani-King additionally compels franchisees to lease and/or purchase many of their cleaning products, equipment, and supplies through Jani-King, its affiliated leasing company, and/or the cleaning supply company that Jani-King designates.  Jani-King additionally requires franchisees to purchase cleaning and supply products for clients through a company designated by Jani-King.  Jani-King also charges franchisees a premium in addition to the actual product costs.

38.     The franchise contract is written only in English, in highly technical, legalistic, and confusing language.  It includes misleading language, misleading section headings, and provisions which purport to waive significant rights buried deep within the small print.

39.     Jani-King targets individuals like Plaintiffs because their lack of English proficiency renders them less likely to understand the unfavorable terms included in the franchise contract provided solely in English by Jani-King.  Jani-King knows that the individuals it targets to sign these contracts will be unlikely to understand the contract terms and will be unaware that the contracts purport to waive a number of their legal rights, including the right to bring suit in the state in which they reside, the right to receive the protections of the state in which they perform work for Jani-King, and the right to all remedies to which they may be entitled under the law.  The waiver of these rights is unconscionable and illegal.

40.     The franchise contract also purports to obligate franchisees to promise not to engage in similar employment both during and subsequent to the term of the franchise contract between the franchisee and Jani-King.  This contract term violates California law.

41.     The franchise contract also purports to require franchisees to purchase general liability insurance which names Jani-King of California, Jani-King International, Inc., and officers and directors of Jani-King as additional insured.  The franchise contract requires that this insurance have specific provisions and be from an insurance carrier with an explicitly approved rating.  This specific insurance is offered by Jani-King as the "Business Protection Plan."  Jani-King induces Plaintiffs and members of the class to pay for this Business Protection Plan by representing that they are independent contractors when they are in fact employees with no obligation to insure their

9

1    employer.

2         42.     While requiring franchisees to purchase and maintain general liability insurance, Jani-

3    King also deducts amounts from franchisees' wages to cover "damage" that it alleges the franchisees

4    caused to Jani-King clients' property, in violation of California law.  Further, Jani-King rarely, if

5    ever, provides any evidence that (a) the damage actually was sustained and that Jani-King was

6    charged for it (by the client), or (b) the franchisee was responsible for the alleged damage, or even

7    was assigned to the account at the time the damage allegedly occurred.

8         43.     The franchise contract also purports to authorize Jani-King to regularly deduct

9    "charge backs" (previously paid wages) from the payments it issues to franchisees after they have

10   already performed work on Jani-King cleaning accounts, when those clients subsequently cancel

11   their account with Jani-King.  On information and belief, Plaintiffs allege that these charge backs

12   constitute illegal rebates or deductions from the standard wages paid to purported franchisees for

13   which Jani-King has not obtained advance written authorization, in violation of California law.

14        44.     In addition, Jani-King purports to sell franchisees "charge back protection insurance."

15   Franchisees who buy this "insurance" pay Jani-King an additional percentage of their gross revenue

16   (or total wages) each month in exchange for a promise from Jani-King to pay them for their work

17   performed even if one or more of the clients fails to pay Jani-King.  Jani-King induces Plaintiffs and

18   members of the proposed class to pay for this charge back protection insurance by representing that

19   they are independent contractors when they are in fact employees with no obligation to insure their

20   employer pay them for their hours worked.

21        45.     The franchise contract purports to require individuals to pay substantial sums of

22   money styled as "fees" in order to perform janitorial work for Jani-King's commercial clients.  In

23   addition to the purchase price of the franchise, the franchise contract purports to obligate Plaintiffs

24   and members of the proposed class to pay monthly sums in order to perform work for Jani-King's

25   commercial clients, including "royalty fees," "accounting fees," "Business Protection Plan" fees,

26   "finder's fees," miscellaneous fees, advertising fees, administrative fees, charge backs and "charge

27   back protection" fees, insurance, complaint fees, and special deductions.  Jani-King deducts these

28   excessive fees from the payments it makes to franchisees.  Plaintiffs and the proposed class receive

little to no benefit in exchange for paying these fees.  These fees are oppressive, unconscionable and illegal.

**C.      Jani-King Systematically Breaches the Franchise Contracts.**

46.      In addition to filling the franchise contract with unconscionable and unlawful terms that have harmed Plaintiffs and members of the proposed class, Jani-King systemically breaches, and has not performed or satisfied the franchise contracts with Plaintiffs and members of the proposed class in numerous respects.

47.      Significantly, Jani-King repeatedly breaches the franchise contracts by not offering sufficient cleaning accounts.  Plaintiffs and the proposed class were not offered accounts sufficient to meet Jani-King's obligation within the initial offering period.

48.      Additionally, Jani-King purports to satisfy its contract obligations by claiming that it has offered the necessary accounts to franchisees.  In fact, Jani-King does not offer accounts as it contends, withdraws offers of accounts, and offers accounts without sufficient notice and/or knowing that they will not and cannot be accepted due to the geographic location of the accounts, the sheer impossibility of performing the amount of work required for the income offered and hours designated by Jani-King to the franchisee, the rates of pay that would be well below what was promised and/or less than minimum wage, and/or the impossibility of making the franchise a viable business.  Jani-King breaches the contract by not offering Plaintiffs and the proposed class with sufficient accounts.

49.      The franchise contract purports to refund franchisees a portion of the money they paid if the promised volume of work is not offered.  As a matter of common practice, Jani-King requires franchisees to pay the full amount of the franchise fee in their franchise contract, regardless of whether or not Jani-King has fulfilled any of its obligations in the franchise contract.  When Jani-King does not satisfy the terms of the franchise contract by, for example, not offering sufficient accounts or by offering accounts that Jani-King knows franchisees will not be able to accept, or taking away accounts without justification or warning, it does not refund the franchise fees that franchisees have already paid or otherwise comply with the contract provisions regarding refund.  Indeed, franchisees are required to continue paying franchise fees even when they are being offered

11

no work from Jani-King at all.  This practice is a breach of the contract between Jani-King and the

Plaintiffs and the proposed class.

**D.    Jani-King's Bad Faith Practices and Unlawful Conduct Breach the Implied Covenant of Good Faith and Fair Dealing.**

50.    Jani-King routinely significantly underbids the janitorial contracts it negotiates with

its commercial clients and thereafter assigns to franchisees.  Upon information and belief, Plaintiffs

allege that Jani-King has bid and continues to bid and make promises to offer janitorial services for

prospective and existing clients at amounts and projected hours (per cleaning) that it knows to be

insufficient and/or cannot be reasonably completed for a fair and reasonable hourly wage and profit

by Plaintiffs and members of the proposed class.

51.    As part of and in order to effectuate its scheme to systematically underbid janitorial

accounts, Jani-King routinely, negligently, and/or intentionally misrepresents the number of hours

that will be required to service the accounts offered to franchisees.  The accounts typically require

substantially more hours of work than Jani-King represents.  Jani-King's misrepresentations and/or

omissions are knowingly false when made to induce individuals to accept these accounts.  Jani-King

is aware of the falsity of its misrepresentations and/or omissions because it receives a significant

number of complaints from franchisees about the underbid accounts and extra work required to clean

accounts and Jani-King continues to make these misrepresentations and omissions.

52.    Jani-King routinely offers accounts through phone calls (or voice mails) to

franchisees who are told they must accept the accounts immediately (or without sufficient time to

examine them) or will be deemed to have "declined" them.  Phone calls from Jani-King provide

little, if any, detail about cleaning accounts.  Jani-King routinely fails to provide written

documentation or information which would enable franchisees to evaluate the actual work

requirements to service the account before accepting the account.  Jani-King then counts all of these

accounts toward the franchisees' offers, whether or not they are able to actually accept the account

for cleaning.

53.    Jani-King also routinely takes accounts from franchisees without warning or notice,

causing franchisees a significant loss of income, for false or pretextual reasons.  For example, Jani-

King will take an account from one franchisee asserting that a "complaint" had been made against the franchisee, when none has been, and then give the account to another franchisee. Jani-King then claims the (first) franchisee is at fault for *its* failure to secure and offer sufficient accounts to satisfy the franchisee's monthly income guarantee. By re-circulating or churning accounts in this manner, Jani-King maximizes the payment of fees it receives from franchisees while claiming that it has satisfied its obligation to "offer" the monthly minimum amounts to the greatest possible number of franchisees.

54.     Upon information and belief, Jani-King, as a matter of course, makes false statements about complaints it has allegedly received from its commercial clients about the franchisees' work performance, and provides franchisees no opportunity to correct or challenge any alleged reason for taking an account away from them.

**E.     Jani-King Misclassifies its California Franchisees as Independent Contractors.**

55.     Jani-King misclassifies its franchisees, including Plaintiffs and members of the proposed class, as independent contractors when, they are, in fact, employees who perform janitorial work that is controlled by Jani-King. Through this misclassification scheme, Jani-King has reaped millions of dollars in annual labor cost savings while surrendering none of its power over franchisees' wages, hours, and working conditions, thereby continuing the franchisees' economic dependency while retaining effective control over the franchisees and their cleaning and other janitorial work that Jani-King provides to its commercial clients.

56.     Franchisees perform services within Jani-King's usual course of business, which is to provide cleaning and other janitorial services to Jani-King's commercial clients.

57.     Jani-King exercises control over its franchisees by instructing them in how to do their work, negotiating the terms, conditions, and amounts paid for franchisees' service, and dictating the performance of the details of their jobs.

58.     Franchisees generally do not work in an independently established trade, occupation, profession, or business. Instead, pursuant to the franchise contracts, franchisees are required to perform cleaning and/or janitorial services exclusively for those of Jani-King's commercial clients that Jani-King assigns to them.

59.     Jani-King sets the price, schedule, and terms of the cleaning contracts with each commercial client and then assigns that work to franchisees.

60.     Franchisees also do not represent themselves to the public as being in an independent business to provide cleaning services, and they typically have not invested in an independent business apart from their payment of "franchise" fees to Jani-King.  Jani-King requires franchisees to use the Jani-King name and trademark when they service Jani-King's commercial clients.

61.     Upon information and belief, Plaintiffs allege that Jani-King has held and continues to hold Plaintiffs and other franchisees out as Jani-King "personnel" in contracting with Jani-King's commercial clients in order to represent that Jani-King can provide a steady, trained, and well-supervised janitorial workforce to its clients.

62.     Because of their misclassification by Jani-King as independent contractors, Plaintiffs and other franchisees have not received the rights and benefits, including minimum wage, overtime, timely payment of wages, reimbursement of expenses, and itemized wage statements that inure from the employment relationship under law.  For example, Jani-King's franchisees do not receive pay for time they spend attending Jani-King trainings, visiting client account sites prior to accepting them, purchasing or picking up cleaning equipment and supplies, or traveling between different clients during the work day.  Franchisees also do not receive unemployment insurance when they lose their jobs or all of their Jani-King accounts are taken away, and they have no workers' compensation insurance coverage when they are injured on the job.

63.     Upon information and belief, Plaintiffs allege that, through common practices, policies, and/or schemes Jani-King has systematically underpaid Plaintiffs and members of the proposed class by, among other things: failing to pay all wages when due; miscalculating and/or failing to keep track of all hours worked by and applicable rates of pay for Plaintiffs and members of the proposed class; making improper deductions from wages; failing to reimburse employees for out-of-pocket expenses directly related to their employment with Jani-King, including mileage, material costs, and other expenses incurred in the course of performing their work; and entering into contracts for janitorial services with commercial clients for amounts that Jani-King knows or should know are insufficient to ensure compliance with all applicable wage laws.

64.     Jani-King's underpayment of regular and overtime premium wages to Plaintiffs and members of the proposed class results from certain unlawful compensation practices that Jani-King centrally devised, implemented, communicated and applied to Plaintiffs and all other similarly situated employees.

65.     Jani-King makes numerous and excessive deductions from franchisees' pay, which constitute improper deductions from wages.  For example, Jani-King deducts payments for franchise fees, finder's fees, advertising fees, royalty fees, charge back protection fees, charge backs, "Business Protection Plan" fees, "administrative" fees, complaint fees, insurance, payments for Jani-King-designated cleaning equipment, products and supplies, and other, often uncategorized, amounts.

66.     If Jani-King negotiates an increase in the monthly contract amount with the client, instead of passing the increase on to the franchisee who has been servicing the account, Jani-King charges the franchisee additional finder's fees on the amount of the increase, even if the overall amount of the contract remains less than what was promised, and/or still does not meet applicable minimum wage and hour standards.  As a result of Jani-King's underbidding of accounts and its deduction of excessive fees from their pay, Plaintiffs and members of the proposed class who have performed janitorial work for Jani-King receive far less pay for their work than the fair value of their services, and often receive wages equal to less than the state minimum wage.

67.     At all times relevant hereto, Jani-King has employed Plaintiffs and members of the proposed class by exercising direct and/or indirect control over their wages, hours, and working conditions while servicing Jani-King's janitorial contracts with its commercial clients.  Jani-King retains and has exercised exclusive authority to negotiate and set the hours, days, and specific cleaning tasks that Plaintiffs perform on each cleaning account, and determines the flat amounts and/or hourly rates charged to clients for Plaintiffs' labor.  The times, frequency, sequence, method, and means by which the Plaintiffs have cleaned the premises to which they are assigned has been dictated, supervised, and approved by Jani-King.

68.     Jani-King representatives periodically "inspect" the accounts where Plaintiffs clean, and these representatives have the authority to evaluate their work performance.  Jani-King purports

1  to retain and exercise authority to effectively terminate Plaintiffs' employment by taking away any

2  or all of their accounts, with or without notice, and with or without any good reason, explanation, or

3  opportunity to correct purported deficiencies.  Furthermore, Jani-King holds itself out as the

4  employer and/or supervisor of Plaintiffs and other franchisees to its commercial clients, and Jani-

5  King's managers have referred to their own Area Sales Representatives as Plaintiffs' and other

6  purported franchisees' "supervisors."

7       69.     Jani-King also determines which instruments and equipment will be used to service

8  its commercial clients' accounts, and requires Plaintiffs and other purported franchisees to rent

9  and/or purchase cleaning equipment, materials, and supplies directly through Jani-King or its

10  designated and authorized supplier(s).  Jani-King then deducts the amounts for these purchases and

11  rentals directly from the gross amounts it pays each month to Plaintiffs and, on information and

12  belief, other proposed class members, but does not report them as Plaintiffs' or proposed class

13  members' business expenses at the end of each year.

14  **F.     Plaintiffs Were Subjected to Jani-King's Unlawful, Fraudulent, and Unfair Conduct.**

15  <u>**PLAINTIFFS ALEJANDRO AND MARIA JUAREZ**</u>

16       70.     From approximately 2002 until 2005, Alejandro Juarez ("Mr. Juarez") and Maria

17  Juarez ("Ms. Juarez") (collectively "Juarezes") were employed to work as janitors on a Jani-King

18  client account under the supervision of Jani-King managers and a Jani-King "franchisee," from

19  whom they received their hourly wages.  Through this work experience, they met Jim, who was then

20  the Director of the Jani-King of California office in Walnut Creek.

21       71.     In or about May 2005, the Juarezes and another couple, Arturo Olivares Rosas and

22  Gloria Rodriguez de Olivares (collectively "Olivares"), went to the Jani-King office in Walnut Creek

23  to inquire about becoming Jani-King franchisees.  During their first visit, they spoke with Lorena, a

24  secretary at the Jani-King office, about purchasing a franchise.  Lorena referred them to Jim, the

25  Director.  Jim then met with the Juarezes and the Olivares, using his assistant, Vanessa, as an

26  interpreter, since he spoke only in English, and neither the Juarezes nor the Olivares could

27  communicate or read proficiently in English; they speak and read only Spanish and informed the

28  Jani-King representative of that during the meeting.

72.     Through Vanessa, Jim told the Juarezes that if they paid a $10,000 down payment for the franchise, they would be guaranteed to earn at least $3,000 per month.  Jim and Vanessa showed the Juarezes a blank franchise contract, but did not translate or explain each page or section.  The entire meeting was conducted with Jim speaking English and Vanessa translating from English to Spanish, and vice versa.  Vanessa was not an experienced or competent translator.   At the end of this first meeting at Jani-King, the Juarezes were given a blank franchise contract, which was written entirely in English.  Although the Jani-King representatives knew that the Juarezes could not read or understand English, at no time did anyone from the Jani-King office offer to review or explain the information contained in these materials.

73.     During the meeting with Jim and Vanessa, Jim told the Juarezes and the Olivares that they would be owners of their own businesses and that that they would be their own bosses.  He also emphasized that they would earn a lot of money from owning a Jani-King franchise and stated that Jani-King had significant work available to offer Jani-King franchisees.

74.     Prior to signing the franchise contract, Jim asked the Juarezes in which cities or area(s) they were willing to work and told them that accounts would be offered to them based on their stated preferences.  The Juarezes told him they would accept work anywhere in the areas of Oakland, Hayward, San Leandro, and Fremont.  However, throughout the time they have had a Jani-King franchise, Jani-King has never honored these geographic designations.

75.     At no time did any of the Jani-King representatives with whom the Juarezes' met, either before or after the Juarezes signed their franchise contract, explain all of the fees and costs of operating a Jani-King franchise, how or when they would be charged these fees, nor did they review or explain any of the financial costs, terms and conditions included in the contract.  Instead, the franchise fee was portrayed as the exclusive financial obligation.

76.     On or about May 26, 2005, approximately five days after their initial meeting with the Jani-King representative, the Juarezes returned to the Jani-King office in Walnut Creek (the Olivares were also present at this meeting).  The Juarezes delivered a check to pay the down payment on their franchise for approximately $10,000.  After paying for the franchise, the Juarezes signed the franchise contract.  Upon information and belief, the Juarezes never received a Jani-King franchise

1   offering circular or any other materials regarding Jani-King's financial condition, from Jim,

2   Vanessa, Lorena or any other Jani-King employee, prior to signing the franchise contract.

3        77.    The Juarezes were then sent to a room where approximately 10 other new

4   "franchisees" were also seated, and were instructed to watch a video about Jani-King, which was

5   entirely in English.  While the video was playing, Vanessa passed around papers and instructed

6   everyone who was there watching the video to sign each of the papers as they were distributed.

7   Vanessa spoke mostly English and some Spanish.

8        78.    During the training session that Mr. Juarez attended, a Jani-King representative, a

9   female whose name is unknown to Plaintiffs at this time, said that franchisees must purchase

10   supplies for accounts the franchisees' were servicing through Cole Supply Co. ("Cole Supply") on

11   credit.  They were told they would get a discount.  Upon information and belief, Jani-King charges

12   franchisees more than what Jani-King pays to Cole Supply for franchisees' purchases of client

13   supplies on credit.  However, no Jani-King representative ever informed the Juarezes that Jani-King

14   would charge them more than what it actually paid to Cole Supply for the products they purchased

15   there.  Additionally, because the Juarezes were not billed directly by Cole Supply, they could not

16   review the billing and did not understand the additional amounts they were being charged.

17        79.    Jani-King failed to offer the Juarezes any janitorial work until September 2005.  On

18   information and belief, the Juarezes received their first payment from Jani-King in early October

19   2005 for a total amount of $324.92.  Jani-King did not fulfill its obligation to offer the Juarezes

20   $3,000 worth of cleaning accounts within the initial offering period.

21        80.    Although Jani-King failed to offer the Juarezes the cleaning accounts promised by the

22   terms of their franchise contract, Jani-King failed to refund the Juarezes any of the fees they had paid

23   or otherwise comply with the refund provision of the franchise contract, in violation of the contract.

24   Jani-King also never informed the Juarezes of their right to seek a refund under this provision of the

25   franchise contract.

26        81.    Jani-King has routinely failed to offer accurate and adequate information to the

27   Juarezes about the work involved in particular client accounts, often grossly understating the time

28   required to perform the work involved.  Jani-King also has offered accounts over the phone to the

Juarezes, offered no little or no details about the accounts and demanded immediate responses, threatening to give the accounts to other franchisees.  For example, Martín Arce, a Jani-King sales representative, offered the Juarezes one account in March 2009 for a small business over two hours away from the geographic areas they had designated, and induced them to agree to take the account by claiming that they would receive a bigger commercial account in return.  In fact, the small account was at least twice as much work as Jani-King estimated, and Jani-King never offered the Juarezes the bigger account.

82.     Due to Jani-King's practices of routinely underbidding contracts, failing to account or pay for work-related travel time and phone calls, and deducting excessive fees from the Juarezes' income, the Juarezes' monthly take home earnings have often been negligible.  Even when they have worked full-time, six days per week, the Juarezes have typically made far less than the amount they were promised and they often earned less then legal minimum wage.

83.     During most of the period since they purchased their franchise and have been working for Jani-King, the Juarezes routinely have worked in excess of 40 hours per week and/or 8 hours per day.  For example, throughout the years 2006, 2007, and 2008, the Juarezes each worked approximately 48 hours per week, or a total of at least 96 hours between the two of them.  However, Jani-King never paid them premium wages for their overtime hours.

84.     The Juarezes were paid by Jani-King once per month, on or about the fifth of the month.  Their paystubs were confusing, omitted information about the hours, location, applicable rates of pay, and total wages earned for work on each account, and failed to include and/or misrepresented other material information about their pay and the deductions made by Jani-King.

85.     The Juarezes have been charged numerous excessive fees for each of the accounts they clean for which they received no benefit.  For example, they typically have been charged, each month, for at least: royalty fees, account fees, franchise fee payments (for the first 24 months), finder's fees, advertising fees, lease fees, insurance, charge back fees, and charge back insurance fees.  For example, in September 2006, 53% of the Juarezes' total monthly revenue was deducted to pay at least ten fees, including "leases," "Additional Billing by Office Comm" and a "Business Protection Plan Admin Fee."

86.     Jani-King induces Plaintiffs and members of the proposed class to pay these fees by representing that they are independent contractors when they are in fact employees with no obligation pay fees to their employer.

87.     Jani-King also has taken away accounts from the Juarezes without notice, valid justification or the opportunity to cure any purported deficiencies.  As with other proposed class members, Jani-King has offered a variety of pretextual reasons for taking away accounts including non-performance, substandard performance, or unverified or fabricated "complaints" by Jani-King's commercial clients.

**PLAINTIFF LUIS A. ROMERO**

88.     In or about January 2008, Luis A. Romero ("Romero") called the Jani-King office for the San Francisco/Oakland region to inquire about purchasing a franchise.  In response to his phone call, Jani-King sent him a promotional video in the mail about Jani-King franchise ownership. Romero did not receive any other written information with the video.

89.     About one week after receiving the video by mail, Romero met with a Jani-King representative, Nina, at the Jani-King office in Concord.  During that meeting, Nina told Romero that if he bought a franchise for $12,000, he would be guaranteed an income of at least $2,000 in take home pay per month, making at least $15.00 per hour for work done in the East Bay, and $17.00 to $20.00 per hour for work done within the City of San Francisco.  Nina also told Romero that Jani-King had sufficient accounts available to offer Jani-King franchisees.

90.     The entire meeting between Romero and Nina was conducted in Spanish.  Romero does not speak, read, or write proficiently in English, and informed the Jani-King representative of that during the meeting.  Nonetheless, Nina did not review, explain, or translate each paragraph or page of the franchise contract.  At the end of the meeting, Nina gave Romero a sample franchise contract (in English) to take home, and told him he would receive his actual franchise contract with the same terms once he delivered payment of his initial franchise fee.

91.     No Jani-King representative, including Nina, provided Romero with a Jani-King franchise circular or any other information regarding Jani-King franchises prior to him signing the franchise contract.

92.     Approximately one week later, Romero returned to the Jani-King office in Concord and met with Nina again.  Prior to signing his franchise contract, Nina explained to him that by purchasing a franchise he would not have to conduct the cleaning work, promising him that he was not an employee, but a franchise owner who could hire his own employees to do the cleaning work. At that meeting, he provided Nina with a check for $5,000 and $1,000 in cash, for which he received a receipt.  After Romero delivered this initial down payment on his franchise fee, and signed his franchise contract, he received a copy of his actual franchise contract for the first time.

93.     At no time did Nina or any other Jani-King representative, either before or after he signed the franchise contract, explain all of the fees and costs of operating a Jani-King franchise, how or when he would be charged these fees, nor did they review or explain any of the financial costs, terms and conditions included in the franchise contract.  Instead, the franchise fee was portrayed as the exclusive financial obligation.

94.     During the same meeting when he signed the franchise contract, Nina promised Romero that he could indicate in which areas he wanted to work and Romero informed Nina that he would accept accounts in Concord, Oakland, Fremont and Union City.  Nonetheless, during his franchise contract with Jani-King, Romero was routinely offered accounts outside of these areas. For example, in approximately July 2009, former Director Oscar Perez offered Romero a restaurant account located in Santa Rosa which would have required cleaning seven days a week.

95.     When Romero was attending training at Jani-King's office in Concord, Jani-King sales representative and supervisor Mario Tavarez reiterated that the hourly rate Romero would be earning was $15.  Mr. Tavarez explained that if Romero paid the workers he hired to perform the cleaning minimum wage, he would still earn at least $7 per hour himself.

96.     John Cumberland, a former Jani-King director, told Romero that he must purchase any client supplies at Cole Supply on credit.  He was told he would get a discount at Cole Supply. Upon information and belief, Jani-King charges franchisees more than what Jani-King pays Cole Supply for franchisees' purchases of client supplies on credit.  No Jani-King representative, including Nina, Mario Tavarez, or John Cumberland ever informed Romero that Jani-King would charge him more than what it actually paid to Cole Supply for the products he purchased there.

Additionally, because Romero was not billed directly by Cole Supply, he could not review the billing and did not understand the additional amounts he was being charged.

97.     Jani-King provided Romero with only one account during the first few months of his franchisee contract, and he did not receive his first payment for the janitorial work he performed until approximately May 5, 2008. Romero's first check from Jani-King, which covered over one month of labor, was for a total gross amount of $1,817.83 after all fees were deducted. Jani-King did not fulfill its obligation to offer Romero cleaning accounts sufficient to meet the monthly income of $2,000 by the initial offering period.

98.     Although Jani-King failed to offer Romero the cleaning accounts promised by the terms of his franchise contract, Jani-King failed to refund Romero any of the fees he had paid or otherwise comply with the refund provision of the franchise contract, in violation of the franchise contract. Jani-King also never informed him of his right to seek payment under this provision of the franchise contract.

99.     Due to Jani-King's practices of routinely underbidding client contracts, failing to account or pay for work-related travel time and phone calls, and deducting excessive fees from Romero's income, his monthly take home earnings have often been negligible. Even when he was working full-time, six to seven days per week, Romero typically made far less than the amount he was promised, and often made less than the legal minimum wage. For example, when John Cumberland offered Romero the Café M account, he was told that he would make $2,200 per month on this account. However, Romero had to spend approximately $300 on supplies, had to pay for equipment, and had to accept the deductions of significant royalty and finder's fees from this total amount. Thus, in April 2008, Romero made only $620.65 from the Café M account due to over $1,570 in deductions.

100.    Jani-King has routinely failed to provide accurate and adequate information to Romero about the work involved in particular client accounts, often grossly understating the time required to perform the work involved. For example, John Cumberland offered Romero Café M account to clean, telling him that the account would take one person five hours per day to clean. In reality, Romero found it took one person at least eight hours per day, or two people 4 hours per day,

1  to clean.  Similarly, Mario Tavarez told Romero that the Community Violence Solutions account

2  would take only two hours to clean per week when, in actuality, it took Romero seven hours to

3  clean.

4      101.   Jani-King has also offered accounts to Romero over the phone, provided little or no

5  details about these accounts, demanded an immediate response, and threatened to give the accounts

6  to other franchisees.  For example, in or about April 2008 at or about 2:30 pm, Romero was working

7  for an account at BR Technology in Hayward when Jani-King sales representative Mario Tavarez

8  called him and offered him a cleaning account in Oakland that would require two days per week of

9  half-hour cleanings and would pay $199 per month.  Romero informed Mario that he was interested,

10  but he was in the middle of working.  Romero promised and subsequently did call Mario back when

11  he was finished working, in approximately one hour.  At that time, Mario told Romero that account

12  was no longer available because he had already offered it to a different franchisee.

13      102.   During much of the period since he purchased his franchise and has worked for Jani-

14  King, Romero has worked in excess of 40 hours per week and/or 8 hours per day.  In fact, during

15  several months of 2008, Romero was working approximately 67 hours per week.  However, Jani-

16  King never paid him premium wages for his overtime hours.

17      103.   Romero has been paid by Jani-King once per month, on or about the fifth of the

18  month.  His paystubs are confusing, omit information about the hours, location, applicable rates of

19  pay, and total wages earned for work on each account, and fail to include and/or misrepresent other

20  material information about his pay and the deductions made by Jani-King.

21      104.   Romero has been charged numerous excessive fees for each of the accounts he cleans,

22  for which he received no benefit.  For example, he typically has been charged, each month, for at

23  least: royalty fees, account fees, franchise note and/or franchise fee payments, finder's fees,

24  advertising fees, lease fees, insurance, and charge back fees.  For example, in July 2008, 54% of

25  Romero's total monthly revenue was deducted to pay at least nine fees, including "Leases,"

26  "Franchise Supplies," and a "Business Protection Plan Admin Fee."

27      105.   Jani-King induces Plaintiffs and members of the proposed class to pay these fees by

28  representing that they are independent contractors when they are in fact employees with no

23

1   obligation pay fees to their employer.

2       106.    Due to Jani-King's practices of chronically underbidding client accounts, deducting

3   excess fees, and forcing franchisees to pay for their own transportation expenses and cleaning

4   supplies, Romero has been forced to give back (stop working on) many of the accounts Jani-King

5   offered to him because he was spending more on expenses than he was making, and/or because his

6   effective wages were less than the state minimum wage.

7   **PLAINTIFF MARIA PORTILLO**

8       107.    On or about March 2005, Maria Portillo ("Portillo") met with a Jani-King

9   representative named Jeff at the Jani-King office in Walnut Creek to discuss purchasing a Jani-King

10  franchise.  Portillo was told by Jeff that in exchange for $6,000 in franchise fees, she would be

11  guaranteed an income of at least $2,000 each month.  Jeff described the available accounts and

12  assured her that Jani-King had sufficient business, stating that there were not enough franchise

13  owners to clean all of the available accounts.  Jeff also assured her that she would not pay more than

14  $6,000 for the franchise.  In fact, she was even told that if she was a good worker, she could earn up

15  to $25,000 in one month and that she would earn between $25 and $35 per hour.

16      108.    The entire meeting was conducted in Spanish between Portillo and Jeff.  Portillo is a

17  native Spanish speaker and does not read, or write, proficiently in English, and informed the Jani-

18  King representative of that during the meeting.  Nonetheless, Jeff did not review, explain, or

19  translate each paragraph or page of the franchise contract.

20      109.    At that meeting, Portillo requested a copy of the franchise contract in Spanish, but

21  Jani-King refused to provide her with a translated copy.  Instead, Jeff gave her only a blank franchise

22  contract in English and told her to come back as soon as the next day to sign it and finalize the

23  franchise contract.  She was not provided with any other documents prior to signing the franchise

24  contract.  No Jani-King representative, including Jeff, either before or after signing the franchise

25  contract, ever provided her with a Jani-King franchise circular or other written materials regarding

26  Jani-King franchises.

27      110.    About one week later, Portillo returned to the Jani-King office in Walnut Creek and

28  again met with Jeff.  There, she paid what she understood was her entire franchise fee of $6,000 on

her credit card.  However, even after she paid $6,000 in franchise fees up front, Jani-King took $166.67 monthly for 24 months towards additional franchise fees, claiming that she actually owed them $12,000.

111.    Before she signed the franchise contract, neither Jeff nor any other Jani-King representative explained all of the fees and costs of operating a Jani-King franchise, how or when she would be charged these fees, nor did they review or explain any of the financial costs, terms and conditions included in the contract.  Instead, the franchise fee was portrayed as her exclusive financial obligation.

112.    Jeff asked Portillo in which geographic areas she wanted to work and she told him she wanted work in Livermore, Pleasanton, Dublin, and San Ramon.  Jeff told her there was plenty of work in the areas she requested and showed her a list of accounts available in Livermore and Dublin.  However, Portillo was routinely offered accounts outside of this area, for example, she was offered accounts in Modesto and San Carlos.

113.    Portillo first learned that she would be charged fees by Jani-King when she attended the Jani-King training.  Because these fees had not been previously explained, this caused Portillo a lot of confusion.  The Jani-King representatives who spoke during the training, John Cumberland, a Hispanic man and a Chinese-American man, repeatedly told Portillo that she was the owner of her own business and that she was her own boss.

114.    At the training, Portillo was told she must purchase all of the supplies for the Jani-King clients she serviced through Cole Supply on credit.  She was told he would get a discount at Cole Supply.  Upon information and belief, Jani-King charges franchisees more than what Jani-King pays Cole Supply for franchisees' purchases on credit.  No Jani-King representative, including Jeff or the individuals that spoke during the training classes, ever informed Portillo that Jani-King would charge her more than what it actually paid to Cole Supply for the client supplies she purchased there, and because she was never billed directly by Cole Supply, she never knew how much of a mark-up Jani-King was charging her.

115.    Jani-King failed to offer Portillo any accounts until August of 2005.  Between April 2005 and August 2005, Portillo went to the Jani-King office on several occasions and asked them to

1   offer her accounts so that she could earn the money they had guaranteed.

2       116.    Throughout the entire time Portillo worked for Jani-King, they never fulfilled the

3   obligation to provide offers of cleaning accounts sufficient to meet the monthly income of $2,000

4   and Jani-King did not do so within the initial offering period.  In fact, there were several months in

5   which she was obligated to *pay* Jani-King even though she was working for them.

6       117.    Although Jani-King failed to offer Portillo with the cleaning accounts promised by

7   the franchise contract, Jani-King failed to refund Portillo any of the fees she had paid or otherwise

8   comply with the refund provision of the franchise contract, in violation of the franchise contract.

9   Jani-King also never informed her of her right to seek payment under this provision of the franchise

10   contract.

11       118.    Ms. Portillo was offered accounts that Jani-King knew she could not realistically

12   accept, but that Jani-King then counted towards meeting their monthly income guarantee to her.  For

13   example, Jani-King offered to Portillo multiple accounts that were outside the geographic areas that

14   she had agreed to and been told she would be offered work, and were so far away that the expense

15   and time involved in traveling to the job would have resulted in no or very little net earnings for her.

16   Other accounts which Jani-King claims it offered to Portillo were either never actually offered to

17   her, or required working during hours in which Jani-King knew Portillo was unavailable to work.

18   Jani-King did not offer Portillo replacement or alternative accounts to those that she could not accept

19   due to their location and/or hours.

20       119.    Each time Jani-King offered Portillo an account it did so by phone only and

21   demanded an almost immediate response.  For example, in or about 2008, a Jani-King sales

22   representative, name unknown, left Portillo a message on her voicemail at approximately 8:00 a.m.

23   saying that there was an account for her in Livermore, and to call back immediately if she was

24   interested.  Portillo called the Jani-King office at approximately 9:00 a.m. that morning and left a

25   message that she wanted to discuss the account about which she had been called.  When Portillo did

26   not receive a return call, she called the office again, at approximately 1:00 pm that same day.  At that

27   time, the Jani-King representative who had left her a message that morning told her that he had

28   already offered the account a different franchisee.

120.    Additionally, each time Jani-King offered an account to Portillo, Jani-King underestimated the time, effort, and cleaning tasks required to clean the account and did not give her full and complete information about the cleaning account's needs.  For example, Portillo was told that it would take her approximately three hours to clean the Checkers Catering account.  In fact, after she accepted this account, she realized that it took 2 people, 5-6 hours of cleaning per person to clean.

121.    Ms. Portillo cleaned only three accounts regularly for Jani-King and for each of these she was charged a finder's fees and other excessive fees.  On one of the accounts, Portillo was earning such a small amount of money that she negotiated for a price increase.  Jani-King then took a finder's fee and other fees from the increase that she had negotiated.  Due to Jani-King's practice of routinely underbidding contracts, failing to account for work related travel time, and deducting excessive fees from Portillo's income, Portillo's earnings were often negligible and she often made less then the legal minimum wage.  Additionally, Jani-King never paid Portillo premium wages she was owed for working more than 40 hours per week.

122.    Jani-King paid Ms. Portillo once a month, on or about the fifth of the month.  Her paystubs were confusing, omitted information about the hours, location, and payment worked for each account, and failed to include and/or misrepresented other material information about her pay and the deductions claimed by Jani-King.

123.    Ms. Portillo has been charged numerous excessive fees for each of the accounts she cleans for which she receives no benefit.  For example, she typically has been charged, each month, for at least: royalty fees, account fees, franchise note payments and/or franchisee fees, finder's fees, advertising fees, lease fees, and charge back fees. For example, in August 2007, 76% of Portillo's total monthly revenue was deducted to pay at least seven fees, including "chargebacks," "Additional Billing by Office Comm" and "Royalty."

124.    Jani-King induces Plaintiffs and members of the proposed class to pay these fees by representing that they are independent contractors when they are in fact employees with no obligation pay fees to their employer.

**CLASS ALLEGATIONS**

125.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated.  The proposed class (hereinafter the "Class") that Plaintiffs seek to represent is defined as follows:

> All persons who have purchased a Jani-King franchise and have performed janitorial work in or at any property within the State of California where Defendants have contracted to provide janitorial services at any time during the period from four years prior to the filing of the original complaint in this action through the date of final judgment.

126.    This action may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.

127.    Plaintiffs are informed and believe and on that basis allege that the Class is comprised of hundreds of persons, and is so numerous that joinder of all members would be impracticable.  The exact size of the Class and the identity of the members of the Class are ascertainable from the business records of Jani-King.

128.    Questions of law and fact common to the Class exist that predominate over questions affecting only individual members, including, inter alia, the following:

129.    Whether Jani-King has made false or misleading statements or omissions of material fact during the offer and/or sale of Jani-King franchise contracts, in violation of California Corporations Code §§ 31201 and 31101 and the torts of negligent misrepresentation and fraud;

130.    Whether Jani-King has breached its contracts with Plaintiffs and members of the Class;

131.    Whether Jani-King has a policy or practice of misclassifying members of the Class as independent contractors rather than employees in order to avoid compliance with various provisions of the California Labor Code and Industrial Welfare Commission Wage Orders (hereinafter, "Wage Orders");

132.    Whether Jani-King's pay practices towards members of the Class conform to the requirements of the California Labor Code and applicable Wage Order(s);

133.    Whether Jani-King's business practices are unlawful, fraudulent, and/or unfair in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL");

134.     The claims asserted by Plaintiffs in this action are typical of the claims of the Class, the claims arise from the same course of conduct by Jani-King, and the relief sought is common.

135.     Plaintiffs are adequate representatives of the Plaintiff Class because:  (a) their interests do not conflict with the interests of the individual members of the Plaintiff Class they seek to represent; (b) they have retained counsel who are competent and experienced in consumer protection, employment and complex class action litigation; and (c) they intend to prosecute this action vigorously.  The interests of the members of the Plaintiff Class will be fairly and adequately protected by Plaintiffs and their counsel.

136.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class member has suffered injury and is entitled to recover by reason of Jani-King's unlawful conduct.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  In addition, because the economic damages suffered by the individual class members may be relatively modest, albeit significant, compared to the expense and burden of individual litigation, it would be impracticable for members of the Class to seek redress individually.  Moreover, the prosecution of separate actions against Jani-King by individual Class members would create a risk of inconsistent judgments.  Finally, there will be no undue difficulty in the management of this litigation as a class action.

**FIRST CAUSE OF ACTION**
**(Violations of California Corporations Code § 31201 by Plaintiffs individually and on behalf of the Class Against All Defendants)**

137.     Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

138.     California Corporations Code § 31201 prohibits the making of any untrue statement of material fact or omission of material fact during the offer or sale of a franchise contract.  Jani-King's conduct violates § 31201.

139.     To induce Plaintiffs and members of the Class to enter into franchise contracts, Jani-King and its agents and employees regularly made and continue to make untrue and/or misleading

statements of material fact and omissions of material fact, both in writing and orally, including, but not limited to, those set forth above.  Additionally, Jani-King's franchise circular and other marketing materials contain misrepresentations and/or omit material information that contradicts its standardized form franchise contract.

140.    In reliance on these untrue and/or misleading statements of material fact and omissions of material fact, Plaintiffs and members of the Class were induced to enter into onerous and one-sided franchise contracts, on which Jani-King knew it could not or would not perform.

141.    As a proximate result of Jani-King's conduct, Plaintiffs and members of the Class were damaged and will continue to suffer damage, including substantial economic injury such as the past and future loss of earnings, expenditures made in preparation and performance of their side of the franchise contracts, interest on loans, and other economic losses.

142.    Accordingly, Plaintiffs and members of the Class are entitled to actual damages and compensatory damages.

143.    Plaintiffs Mr. Juarez, Ms. Juarez, Luis Romero, and Maria Portillo suffered emotional distress damages for which they are entitled to compensation.

144.    The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' and members of the Class' rights. Consequently, Plaintiffs and members of the Class are entitled to punitive damages against Jani-King.

### SECOND CAUSE OF ACTION
**(Violations of Corporations Code § 31202 by Plaintiffs individually
and on behalf of the Class Against All Defendants)**

145.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

146.    California Corporations Code § 31202 prohibits any person from willfully making an untrue statement or omitting a material statement that is required to be disclosed in writing pursuant to § 31101.  The specific disclosures required by § 31101 include but are not limited to the franchise fee charged and the application of the proceeds of such fee, the terms and conditions of any financing arrangements, the past or present practice of the franchisor to sell, assign or discount to a

third party any obligation of the franchisee, a statement of the data for any estimation or projection of earnings, and a statement of any material modification of the franchise.  Jani-King's conduct violates § 31202.

147.    To induce Plaintiffs and members of the Class to enter into franchise contracts, Jani-King and its agents and employees regularly made and continue to make untrue and/or misleading statements of material fact and/or statements that willfully omit material fact in its required written disclosures pursuant to California Corporations Code § 31101 and/or routinely fail to distribute its required written disclosures.  Additionally, Jani-King's franchise circular and other marketing materials contain misrepresentations and/or omit material information that contradicts its standardized form franchise contract.

148.    As a result of Jani-King's willful misrepresentations and omissions, Plaintiffs and members of the Class were induced to enter into onerous and one-sided franchise contracts, on which Jani-King knew it could not or would not perform.

149.    As a proximate cause of Jani-King's conduct, Plaintiffs and the Class were damaged and will continue to be damaged, including substantial economic injury such as the past and future loss of earnings, expenditures made in preparation and performance of their side of the franchise contract, interest on loans and other economic losses.

150.    Accordingly, Plaintiffs and members of the Class are entitled to actual damages and compensatory damages.

151.    Plaintiffs Mr. Juarez, Ms. Juarez, Luis Romero, and Maria Portillo suffered emotional distress damages for which they are entitled to compensation.

152.    The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' and members of the Class' rights. Consequently, Plaintiffs and Class members are entitled to punitive damages against Jani-King.

**THIRD CAUSE OF ACTION**
**(Deceit by Intentional Misrepresentation in Violation of**
**California Civil Code §§ 1709, 1710 by Plaintiffs individually and on**
**behalf of the Class Against All Defendants)**

153.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

1   fully set forth herein the preceding paragraphs of this Complaint.

2        154.   At all times relevant to this action, Jani-King intentionally misrepresented material

3   facts including, but not limited to: (a) that Jani-King would guarantee a certain amount of income to

4   franchisees; (b) that Jani-King has sufficient business to satisfy the terms of the franchise contracts;

5   (c) that franchisees will receive cleaning accounts from which they can earn a profit and, at least,

6   earn minimum wage; (d) that the cost of purchasing and operating the franchise was disclosed prior

7   to the purchase of the franchise; (e) that the accounts that Jani-King will offer to satisfy its obligation

8   will be within the geographic region requested by the franchisees; and (f) that franchisees are

9   independent contractors when, in fact, they are employees entitled to the protections of California's

10  employment and labor laws.

11       155.   Jani-King has made and continues to make these misrepresentations knowing that

12  they are false or makes these misrepresentations recklessly and without regard for their truth.

13       156.   Jani-King has made and continues to make these misrepresentations to induce

14  Plaintiffs and members of the Class to purchase franchises and attempt to perform the terms of the

15  franchise contracts.

16       157.   Plaintiffs and members of the Class have reasonably relied to their detriment on Jani-

17  King's misrepresentations.  Jani-King's misrepresentations were objectively material to the

18  reasonable individual, and therefore reliance upon such representations may be presumed as a matter

19  of law.

20       158.   As a proximate cause of Jani-King's conduct, Plaintiffs and the Class were damaged

21  and will continue to be damaged, including substantial economic injury such as the past and future

22  loss of earnings, expenditures made in preparation and performance of their side of the franchise

23  contract, interest on loans and other economic losses.

24       159.   Accordingly, Plaintiffs and members of the Class are entitled to actual damages and

25  compensatory damages.

26       160.   Plaintiffs Mr. Juarez, Ms. Juarez, Luis Romero, and Maria Portillo suffered emotional

27  distress damages for which they are entitled to compensation.

28       161.   The conduct of Jani-King and its agents and employees was malicious, fraudulent

and/or oppressive and done with a willful disregard for Plaintiffs' and members of the Class' rights. Consequently, Plaintiffs and Class members are entitled to punitive damages against Jani-King.

**FOURTH CAUSE OF ACTION**
**(Deceit by Concealment in Violation of**
**California Civil Code §§ 1709, 1710 by Plaintiffs individually and on**
**behalf of the Class Against All Defendants)**

162.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

163.    At all times relevant to this action, Jani-King failed to disclose to Plaintiffs and members of the Class material facts including, but not limited to: (a) that Jani-King would not and does not fulfill its oral promises to franchisees to provide them with a guaranteed amount of earned income; (b) that Jani-King chronically underbids its cleaning contracts with commercial clients such that it is not possible for franchisees to earn minimum wage or reasonably profit from cleaning the offered accounts; (c) that Jani-King does not have enough commercial contracts to provide to franchisees to supply them with the work necessary to make a living wage; (d) that Jani-King fails to disclose material information prior to the signing of the franchise contracts that is required by franchise law; (e) that Jani-King does not have sufficient business to satisfy the terms of the franchise contracts; (f) that there are numerous hidden and excessive fees which franchisees will be charged throughout the duration of the contract with Jani-King; and (g) that the contract purports to allow Jani-King to satisfy its obligation to offer accounts far outside the geographic location of the franchisee.

164.    Jani-King has known of these material facts, has a duty to Plaintiffs and Class members to disclose these material facts, and intentionally failed to disclose these material facts.

165.    Jani-King suppressed the material facts alleged herein with the intention of inducing Plaintiffs and the Class to purchase franchises and attempt to perform the terms of the franchise contracts.

166.    Plaintiffs and members of the Class have reasonably relied to their detriment on Jani-King's omissions.  Jani-King's omissions were objectively material to the reasonable individual, and therefore reliance upon such representations may be presumed as a matter of law.

167.    As a proximate cause of Jani-King's conduct, Plaintiffs and the Class were damaged and will continue to be damaged, including substantial economic injury such as the past and future loss of earnings, expenditures made in preparation and performance of their side of the franchise contract, interest on loans and other economic losses.

168.    Accordingly, Plaintiffs and members of the Class are entitled to actual damages and compensatory damages.

169.    Plaintiffs Mr. Juarez, Ms. Juarez, Luis Romero, and Maria Portillo suffered emotional distress damages for which they are entitled to compensation.

170.    The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' and members of the Class' rights. Consequently, Plaintiffs and Class members are entitled to punitive damages against Jani-King.

**FIFTH CAUSE OF ACTION**
**(Negligent Misrepresentation in Violation of**
**California Civil Code §§ 1709, 1710 by Plaintiffs individually and on**
**behalf of the Class Against All Defendants)**

171.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

172.    At all times relevant to this action, Jani-King misrepresented material facts including, but not limited to: (a) that Jani-King would guarantee a certain amount of income to franchisees; (b) that Jani-King has sufficient business to satisfy the terms of the franchise contracts; (c) that franchisees will receive cleaning accounts from which they can earn a profit and, at least, earn minimum wage; (d) that the cost of purchasing and operating the franchise was disclosed prior to the purchase of the franchise; (e) that the accounts that Jani-King will offer to satisfy its obligation will be within the geographic region requested by the franchisee; and (f) that franchisees are independent contractors when, in fact, they are employees entitled to the protections of California's employment and labor laws.

173.    Jani-King had no reasonable grounds for believing that its misrepresentations were true.  Jani-King failed to exercise reasonable care and/or diligence in communicating its misrepresentations.

174.    Jani-King suppressed the material facts alleged herein with the intention of inducing Plaintiffs and the Class to purchase franchises and attempt to perform the terms of the franchise contracts.

175.    Plaintiffs and members of the Class have reasonably relied to their detriment on Jani-King's omissions.  Jani-King's omissions were objectively material to the reasonable individual, and therefore reliance upon such representations may be presumed as a matter of law.

176.    As a proximate cause of Jani-King's conduct, Plaintiffs and the Class were damaged and will continue to be damaged, including substantial economic injury such as the past and future loss of earnings, expenditures made in preparation and performance of their side of the franchise contract, interest on loans, and other economic losses.

177.    Accordingly, Plaintiffs and members of the Class are entitled to actual damages and compensatory damages.

178.    Plaintiffs Mr. Juarez, Ms. Juarez, Luis Romero, and Maria Portillo suffered emotional distress damages for which they are entitled to compensation.

179.    The conduct of Jani-King and its agents and employees was malicious, fraudulent and/or oppressive and done with a willful disregard for Plaintiffs' and members of the Class' rights. Consequently, Plaintiffs and Class members are entitled to punitive damages against Jani-King.

**SIXTH CAUSE OF ACTION**
**(Breach of Contract by Plaintiffs individually and on**
**behalf of the Class Against All Defendants)**

180.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

181.    Jani-King failed to perform under its contractual agreement with Plaintiffs and members of the Class.  Jani-King's refusal to perform was unlawful, without justification and/or excuse, and constituted a total and material breach of the contract between the parties.

182.    Jani-King breached the franchise contract with Plaintiff and members of the Plaintiff Class by doing, inter alia, the following:

a.      Jani-King fails to offering franchisees the amount and value of  cleaning accounts required by the contract.

1
      b.    Jani-king's "offers" are illusory because it withdraws offers of accounts,

2
offers accounts without sufficient notice, and/or offers accounts knowing that franchisees will not

3
and cannot accept due to the geographic location of the accounts, the sheer impossibility of

4
performing the amount of work required, the rates of pay that would be well below what was

5
promised and/or less than minimum wage, and/or the impossibility of making the franchise a viable

6
business.

7
      c.    When Jani-King fails to offer sufficient cleaning accounts, it fails to comply

8
with the refund provision of the franchise contract.

9
183.    Plaintiffs and members of the Class gave consideration that was fair and reasonable,

10
and have performed the conditions, covenants, and promises required to be performed under their

11
respective contracts with Jani-King.

12
184.    By reason of Jani-King's breaches, Plaintiffs and members of the Class suffered and

13
will continue to suffer reasonable and foreseeable consequential damages resulting from such

14
breaches, including loss of earnings promised under the franchise contract, interest on loans,

15
expenses for cleaning supplies, transportation costs, and other damages for breach of contract.

16
185.    Jani-King directly benefits from, and was unjustly enriched by, its contractual

17
breaches alleged herein.

18
186.    Plaintiff and the Plaintiff Class have been damaged by Jani-King's breach of contract

19
in an amount to be proven at trial.

20

21

22

### SEVENTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing
by Plaintiffs individually and on
behalf of the Class Against All Defendants)**

23
187.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

24
fully set forth herein the preceding paragraphs of this Complaint.

25
188.    Under common law, a covenant of good faith and fair dealing is implied into every

26
contract.

27
189.    Jani-King has violated and continues to violate this covenant of good faith and fair

28
dealing in its agreements with Plaintiff and members of the Plaintiff Class by doing, inter alia, the

following:

       a.     Jani-King significantly underbids the cleaning contracts it negotiates with its commercial clients and thereafter assigns to franchisees, therefore making it impossible for the franchisee to earn minimum wages and for the franchise to be operated as a viable business;

       b.     Taking accounts away from franchisees for false or pretextual reasons, therefore making it impossible for the franchisee to earn minimum wages and for the franchise to be operated as a viable business;

       c.     Offering accounts to franchisees without sufficient notice or information, such that franchisees cannot make an informed decision and/or can not possibly accept the offered account (*e.g.*, because it is outside of a the franchisees geographic region) therefore making it impossible for the franchisee to earn minimum wages and for the franchise to be operated as a viable business;

       d.     Jani-King deducts excessive and unlawful fees, royalties, charge backs, and premiums from franchisees' paychecks therefore making it impossible for the franchisee to earn minimum wages and for the franchise to be operated as a viable business;

       e.     If Jani-King does not satisfy its obligation to make the initial business offering, Jani-King makes a significant profit while the franchisee loses money because the refund provision of the franchise contract is inherently unfair and one-sided;

       f.     Jani-King obligates franchisees to pay Jani-King excessive fees, premiums and charges by misrepresenting that they are independent contractors when they are in fact employees with no obligation pay fees to their employer; and

       g.     Jani-King relies on an exculpatory provision in the franchise contract that purports to allow Jani-King to avoid all of its obligation to offer franchisees accounts.

     190.    Plaintiffs and members of the Class gave consideration that was fair and reasonable, and have performed the conditions, covenants, and promises required to be performed under their respective contracts with Jani-King.

     191.    As a result of Jani-King's breach of this implied covenant, Plaintiffs and members of the Class suffered and will continue to suffer reasonable and foreseeable consequential damages

1  resulting from such breaches, including loss of earnings promised under the contract, interest on

2  loans, expenses for cleaning supplies, transportation costs, and other damages for breach of contract.

3        192.    Plaintiff and the Plaintiff Class have been damaged by Jani-King's breach of the

4  implied covenant of good faith and fair dealing in an amount to be proven at trial.

5                            **EIGHTH CAUSE OF ACTION**
                   **(Failure to Pay Overtime Wages in Violation of**
6           **California Labor Code §§ 510, 1194, 1198 and Wage Order 5-2001**
             **by Plaintiffs individually and on behalf of the Class Against All Defendants)**
7

8        193.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

9  fully set forth herein the preceding paragraphs of this Complaint.

10       194.    <u>Plaintiffs and Class Members' Status as Employees</u>.  The term "employee" is defined

11 in California Labor Code § 350 as a "person … rendering actual service in any business for an

12 employer."  The term "employee" is defined in section 2 of the applicable Wage Orders as a person

13 who is "engage[d], suffer[ed], or permit[ted] to work" by an employer.  Plaintiffs and all members of

14 the Class are or were employees of Jani-King for which they performed services within these

15 definitions.  At all material times herein, Jani-King has acted as Plaintiffs and Class members'

16 "employers" and are or were "employing" them.

17       195.    <u>Jani-King's Status as Employers</u>.  Section 2 of the applicable Wage Order defines

18 "employer" as any person who "directly or indirectly, or thorough an agent or any other person,

19 employs or exercises control over the wages, hours, or working conditions of any person."

20 California Labor Code § 350 defines "employing" as "hiring, or in any way contracting for, the

21 services of an employee."  Jani-King meets these definitions with respect to those workers who

22 performed services for them.

23       196.    Jani-King effectively controls the employment of Plaintiffs and members of the Class

24 and knows or should have known that Plaintiffs and Class members have been and continue to be

25 routinely underpaid for their labor.  Jani-King controls the wages, hours, and working conditions of

26 Plaintiffs and Class members in the following manner:  as a practical matter, the only commodity

27 Jani-King sells to other businesses and entities is the labor performed by Plaintiffs and members of

28 the Class.  Since Plaintiffs and Class members receive no health and welfare benefits, medical

1  insurance, pension, paid vacation, sick leave or bereavement leave in connection with their

2  employment, nearly all of Jani-King's overhead goes to pay Plaintiffs' and Class members' wages.

3  Thus, after Jani-King pays to secure Plaintiffs' and Class members' labor, Defendants retain nearly

4  all monies remaining as profit.

5      197.    Plaintiffs and members of the Class are or were directly supervised by employees or

6  agents of Jani-King, who determine what tasks Plaintiffs and Class members are to perform; the

7  location, manner, means, schedule, and speed they are to do their work, and the cleaning implements

8  and chemicals they are to use.

9      198.    California Labor Code §§ 510 and 1198, and the applicable Wage Orders provide that

10  employees in the janitorial industry must receive: "(a) One and one-half (1 ½) times [their] regular

11  rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in

12  any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work

13  in a workweek; and (b) Double [their] regular rate of pay for all hours worked in excess of 12 hours

14  in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th)

15  consecutive day of work in a workweek."  Wage Order 5-2001, ¶ (3)(A)(1)(b).

16      199.    As a result of Jani-King's misclassification of Plaintiffs and members of the Class as

17  independent contractors, Jani-King fails to provide Plaintiffs and Class members with overtime and

18  other compensation in amounts to be determined at trial, thus they are entitled to recovery of such

19  amounts, plus interest thereon, attorneys' fees, and costs, under California Labor Code § 1194.

20
**NINTH CAUSE OF ACTION**
**(Failure to Pay Minimum Wage for All Hours Worked in Violation of**
21  **California Labor Code §§ 1182.11-1182.13, 1194(a), 1194.2, 1197 and Wage Order 5-2001**
**by Plaintiffs individually and on behalf of the Class Against All Defendants)**
22

23      200.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

24  fully set forth herein the preceding paragraphs of this Complaint.

25      201.    Throughout the relevant time period, California Labor Code §§ 1182.11-1182.13,

26  1197, and Wage Order 5-2001 required that Plaintiffs and members of the Class receive at least the

27  minimum wage for all hours worked for Jani-King, irrespective of whether nominally paid on an

28  hourly or piece rate, at the rate of $6.75 per hour for the period from January 1, 2002 through

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF

December 31, 2006; $7.50 per hour for the period from January 1, 2007 through December 31, 2007; and $8.00 per hour for the period January 1, 2008 through the present.

202.    Throughout the relevant time period, as a result of the policies and practices of Jani-King, as described herein, Jani-King has failed to pay Plaintiffs and members of the Class minimum wages for all of the their hours worked.

203.    As a direct and proximate cause of Jani-King's business practices, Plaintiffs and members of the Class have been deprived of minimum wages in an amount to be determined at trial. California Labor Code § 1194(a) provides that employees who have not been paid minimum wages may recover the unpaid balance of the full amount of such wages, interest thereon, attorneys' fees and the costs of suit.

204.    In addition, California Labor Code § 1194.2 provides that employees who are paid less than minimum wage are entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon.  On behalf of themselves and the Class, Plaintiffs seek to recover such liquidated damages in amounts according to proof at the time of trial.

**TENTH CAUSE OF ACTION**
**(Failure to Provide Accurate Itemized Wage Statements and Maintain Adequate Records in Violation of California Labor Code §§ 226 & 1174 and Wage Order 5-2001 by Plaintiffs individually and on behalf of the Class Against All Defendants)**

205.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

206.    Pursuant to California Labor Code §§ 226 and 1174, and the recordkeeping provisions of Wage Order 5-2001, Jani-King is required to maintain accurate records of each employee's hours of work and meal breaks each workday for a period of at least three (3) years, and provide to each employee with accurate, periodic wage payments in writing setting forth, among other things:  (a) the dates of labor for which payment of wages is made; (b) the total hours of work for the pay period; (c) the applicable rates of pay for all hours worked; (d) gross and net wages paid, as well as all authorized deductions from those wages; and (e) the name and address of the employer.

207.    Jani-King has knowingly failed to comply with California Labor Code § 226 by, among other things: (a) failing to provide accurate itemized wage statements in writing showing all

applicable rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by Plaintiffs and members of the Class; (b) failing to show the dates of labor for which payments are or were being made; and (c) failing to provide complete and/or accurate information concerning deductions that are or have been taken from these employees' wages.

208.    As a result of Jani-King's failure to comply with California Labor Code § 226(a), pursuant to California Labor Code § 226(e), Plaintiffs and members of the Class are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred, and one hundred dollars ($100) per employee for each violation in each subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) per employee.  Plaintiffs and members of the Class are further entitled to an award of costs and reasonable attorneys' fees pursuant to California Labor Code §§ 226(e) and (g).

### ELEVENTH CAUSE OF ACTION
**(Failure to Indemnify Employees for Expenses in Violation of California Labor Code § 2802 by Plaintiffs individually and on behalf of the Class Against All Defendants)**

209.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

210.    California Labor Code § 2802 provides that: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful…. For purposes of this section, the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorneys' fees incurred by the employee enforcing the rights granted by this section."  This provision of the California Labor Code imposes strict limitations on an employer's ability to offset the costs of business by imposing financial obligations on employees as a condition of discharging their duties.

211.    Jani-King has required Plaintiffs and members of the Class to make purchases and incur work-related expenses without reimbursement.

212.    Plaintiffs and members of the Class are therefore are entitled to recover all actual and

1   statutory damages and penalties applicable to these expenses, as well as reasonable costs of suit and

2   attorneys' fees, in amounts to be proven at trial.

3   **TWELFTH CAUSE OF ACTION**
    **(Unlawful Deductions from Wages in Violation of**

4   **California Labor Code § 221 by Plaintiffs individually and on**
    **behalf of the Class Against All Defendants)**

5

6       213.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

7   fully set forth herein the preceding paragraphs of this Complaint.

8       214.    California Labor Code § 221 provides that:  "It shall be unlawful for any employer to

9   collect or receive from an employee any part of wages theretofore paid by said employer to said

10  employee."  This statute and other provisions of the California Labor and Civil Codes impose strict

11  limitations on an employer's right to withhold or deduct unauthorized amounts from employees'

12  wages.

13      215.    Jani-King has made unauthorized and otherwise unlawful deductions from the wages

14  of Plaintiffs and members of the Class, including, but not limited to excessive and unfair royalty

15  fees, accounting fees, finder's fees, complaint fees, miscellaneous fees, advertising fees,

16  administrative fees, charge backs, and charge back protection fees.

17      216.    Accordingly, Plaintiffs and members of the Class are entitled to recover all actual and

18  statutory damages available for these violations, as well as reasonable costs of suit and attorneys'

19  fees, in amounts to be proven at trial.

20  **THIRTEENTH CAUSE OF ACTION**
    **(Compelling Employees to Patronize Employer or Any Other Person, in Violation of**

21  **California Labor Code § 450 by Plaintiffs individually and on**
    **behalf of the Class Against All Defendants)**

22

23      217.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

24  fully set forth herein the preceding paragraphs of this Complaint.

25      218.    Pursuant to California Labor Code § 450, "No employer, or agent or officer thereof,

26  or other person, may compel or coerce any employee, or applicant for employment, to patronize his

27  or her employer, or any other person, in the purchase of anything of value."  This provision of the

28  California Labor Code imposes strict limitations on an employer's ability to offset the costs of

42

1    business by imposing financial obligations on employees.

2        219.    Jani-King has required Plaintiffs and members of the Class to purchase cleaning

3    equipment, supplies, and other materials, as well as insurance, from Jani-King or other persons

4    designated by Jani-King, as a condition of receiving work from or maintaining their employment

5    with Jani-King, in violation of California Labor Code § 450.

6        220.    Plaintiffs and members of the Class are entitled to recover all actual and statutory

7    damages available for these violations, as well as reasonable costs of suit and attorneys' fees, in

8    amounts to be proven at trial.

9                        **FOURTEENTH CAUSE OF ACTION**
                        **(Unfair Competition in Violation of**
10                   **California Business and Professions Code § 17200 *et seq*.**
                **by Plaintiffs individually and on behalf of the Class Against All Defendants)**
11

12       221.    Plaintiffs individually, and on behalf of the Class, incorporate by reference as though

13   fully set forth herein the preceding paragraphs of this Complaint.

14       222.    The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

15   ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business

16   act or practice.  Cal. Bus. & Prof. Code § 17200.

17       223.    Jani-King's conduct as described above constitutes unlawful business practices for

18   the reasons set forth below, without limitation:

19           a.    Jani-King has committed the torts of intentional misrepresentation,

20   concealment and negligent misrepresentation as described above;

21           b.    Jani-King has breached the franchise contracts as described above;

22           c.    Jani-King has violated California Corporations Code §§ 31201 and 31202, as

23   described above;

24           d.    Jani-King has violated California Corporations Code § 31119, which requires

25   that Jani-King must produce binding franchise contracts 14 days prior to execution of the agreement;

26   and

27           e.    Jani-King has violated various sections of the California Labor Code,

28   including but not limited to §§ 201 and 202 (requiring payment of all wages due upon termination of

---
43

employment), 204 (requiring timely bimonthly payment of wages), 221 (prohibiting unlawful, unauthorized deductions from wages), 226 (requiring provision of accurate itemized wage statements), 450 (prohibiting forced patronage of employer), 510 (requiring payment of premium pay for all overtime hours worked), 1174 (requiring maintenance of employee payroll, pay rate, and hours worked records), 1182.11-1182.13 and 1197 (requiring payment of state minimum wage for all hours worked), 1198 (prohibiting employment under substandard conditions), 2802 (requiring employer to indemnify employees for all expenses incurred in discharge of duties), and 2810 (prohibiting insufficient contracts for provision of janitorial services).

224.    Jani-King's conduct as described above constitutes unfair business practices for the reasons set forth below, without limitation:

a.    Jani-King has induced and continues to induce Plaintiffs and members of the Class to purchase illusory franchise contracts, such as using high pressure sales tactics, failing to disclose material information and documents, making misrepresentations about critical terms of the contract and targeting vulnerable populations, such as non-English speaking immigrants;

b.    Jani-King offers contracts to Plaintiffs and members of the Class that are filled with unconscionable terms;

c.    Jani-King has failed and continues to fail to provide or make available translations of the franchise contracts or related documents in the languages in which they are marketed and sold to Plaintiffs and members of the Class, *see* California Civil Code § 1632;

d.    Jani-King uses a variety of tactics to keep Plaintiffs and members of the Class from leaving their employment with Jani-King and to force them to continue to pay fees, including systemically underbidding cleaning accounts, charging excessive and unwarranted fees and deducting these fees from the income generated by Plaintiffs and Class members, providing inadequate information about the nature of the cleaning services required at its cleaning accounts, taking accounts from Plaintiffs and Class members without notice or justification, and failing to provide enough cleaning accounts to meet the monthly income guarantees in the franchise contracts;

e.    Jani-King misclassifies Plaintiffs and members of the Class as independent contractors (non-employees) and misrepresents and conceals from Plaintiffs and members of the

1    Class their status as employees;

2           f.     Jani-King fails to pay Plaintiffs and members of the Class the wages required

3    by law when due, including but not limited to minimum wages and overtime compensation, and

4    other wages and benefits, all in violation of California Labor Code §§ 201, 202, 204, 510, 1197, and

5    1198, and Wage Order 5-2001;

6           g.     Jani-King requires Plaintiffs and members of the Class to make purchases and

7    failing to reimburse them for expenses incurred in the course of discharging their duties, in violation

8    of California Labor Code §§ 450 and 2802; and

9           h.     Jani-King knowingly contracts for janitorial services at prices too low to

10   permit compliance with minimum labor standards and thus depriving Plaintiffs and members of the

11   Class of the wages, benefits, and protections to which they were entitled by law, in violation of

12   Labor Code § 2810;

13          225.   Jani-King's conduct described above constitutes fraudulent business practices for the

14   reasons set forth below, without limitation:

15          a.     Jani-King has made and continues to make misrepresentations and omissions

16   of material fact as described above to induce Plaintiffs and members of the Class to enter into

17   employment with Jani-King, as further described above in Causes of Action Three, Four and Five;

18          b.     Jani-King has made and continues to make misrepresentations and omissions

19   of material fact as described above to induce Plaintiffs and members of the Class to continue their

20   working relationship with Jani-King as further described above in Causes of Action Three, Four and

21   Five;

22          c.     Jani-King's misrepresentations and omissions are likely to deceive the

23   reasonable consumer;

24          d.     Jani-King's misrepresentations are objectively material to the reasonable

25   consumer, and therefore reliance upon such representations may be presumed as a matter of law; and

26          e.     Plaintiffs and members of the Class reasonably and justifiably relied on such

27   misrepresentations.

28          226.   As a result of Jani-King's unlawful, unfair and fraudulent conduct, Plaintiffs and

45

1  members of the Class suffered injury in fact and lost money and property, including, but not limited

2  to including loss of money invested in the franchise, earnings promised under the franchise contract,

3  interest on loans, expenses for cleaning supplies, and transportation costs.

4     227.    Pursuant to California Business and Professions Code § 17203, Plaintiffs and

5  members of the Class seek declaratory and injunctive relief for Jani-King's unlawful, unfair and

6  fraudulent conduct and to recover restitution.

7     228.    Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and members of

8  the Class are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing

9  this action.

10                            **PRAYER FOR RELIEF**

11     Wherefore, Plaintiffs prays for the following relief for themselves and on behalf of the Class:

12     1.    That the Court find and issue an order certifying the Class and appoint Plaintiffs and

13  their counsel to represent the Class pursuant to Federal Rules of Civil Procedure, rule 23;

14     2.    That the Court find and declare Jani-King's acts and practices as described herein to

15  be unlawful, unfair, and fraudulent;

16     3.    That Jani-King be permanently enjoined from engaging in the unlawful, unfair, and

17  fraudulent acts and practices alleged herein;

18     4.    That Jani-King be ordered to make restitution to Plaintiffs and members of the Class;

19     5.    That the franchise contracts of Plaintiffs and Class members be rescinded and that

20  Jani-King be ordered to pay restitution and damages;

21     6.    That the Court award compensatory and punitive damages to Plaintiffs and members

22  of the Class in an amount according to proof;

23     7.    That Jani-King be ordered to make restitution to Plaintiffs and members of the Class

24  pursuant to California Business and Professions Code § 17200;

25     8.    That the Court make such orders as may be necessary to restore to Plaintiffs and

26  members of the Class any money or property which may have been obtained from them by means of

27  Defendants' unlawful, unfair, and fraudulent business practices pursuant to California Business and

28  Professions Code §§ 17203 and 17535;

1        9.     That Plaintiffs and members of the Class be awarded pre-judgment interest on all

2    sums collected;

3        10.    That the Court grant costs of suit, including reasonable attorneys' fees, costs and

4    expenses; and

5        11.    That the Court grant all such other relief as the Court deems just.

6    ### DEMAND FOR JURY TRIAL

7        Plaintiffs hereby demand a trial by jury of each and every cause of action so triable.

8

9    DATED:  November 3, 2009        Respectfully submitted,

10           By:    /s/   *Monique Olivier*

11   MONIQUE OLIVIER (SBN 190385)
     (molivier@sturdevantlaw.com)

12   WHITNEY HUSTON (SBN 234863)
     (whuston@sturdevantlaw.com)

13   THE STURDEVANT LAW FIRM
     A Professional Corporation

14   354 Pine Street, Fourth Floor
     San Francisco, CA  94104

15   Telephone:  (415) 477-2410
     Facsimile:   (415) 477-2420

16

17   MARK TALAMANTES (SBN 187961)
     (mark@e-licenciados.com)

18   JENNIFER A. REISCH (SBN 223671)
     (jennifer@e-licenciados.com)

19   TALAMANTES/VILLEGAS/CARRERA, LLP
     170 Columbus Avenue, Suite 300

20   San Francisco, CA 94133
     Telephone:  (415) 989-8000
     Facsimile:   (415) 989-8028

21

22   SHANNON LISS-RIORDAN (*Pro Hac Vice TBD)*
     (sliss@llrlaw.com)

23   HILLARY SCHWAB (*Pro Hac Vice TBD)*
     (hschwab@llrlaw.com)

24   LICHTEN & LISS-RIORDAN, P.C.
     100 Cambridge Street, 20th Floor

25   Boston, MA  02114
     Telephone:  (617) 994-5800

26   Facsimile:    (617) 994-5801

27   Attorneys for Plaintiffs and the Putative Plaintiff Class

28

FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF