Benjamin K. Riley (CA Bar No. 112007)
rileyb@howrey.com
Emily L. Maxwell (CA Bar No. 185646)
maxwelle@howrey.com
Seth B. Herring (CA Bar No. 253907)
herrings@howrey.com
**HOWREY LLP**
525 Market Street, Suite 3600
San Francisco, CA  94105
Telephone:  415.848.4900
Facsimile:  415.848.4999

Kerry L. Bundy (MN Bar No. 266917) *(Pro Hac Vice)*
kbundy@faegre.com
Aaron Van Oort (MN Bar No. 315539) *(Pro Hac Vice)*
avanoort@faegre.com
Eileen M. Hunter (MN Bar No. 336336) *(Pro Hac Vice)*
ehunter@faegre.com
**FAEGRE & BENSON, LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  612.766.7000
Facsimile:  612.766.1600

Attorneys for Defendants
JANI-KING OF CALIFORNIA, INC., JANI-KING, INC.,
and JANI-KING INTERNATIONAL, INC.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO, and MARIA PORTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JANI-KING OF CALIFORNIA, INC., a Texas Corporation; JANI-KING, INC., a Texas Corporation; JAN I-KING INTERNATIONAL, INC., a Texas corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: CV09-03495 SC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:          September 17, 2010<br>Time:          10:00 a.m.<br>Courtroom:  1, 17th Floor<br>Judge:         The Hon. Samuel Conti<br><br>Complaint filed: June 22, 2009 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ...............................................................................................2

    I.    All putative class members own, or have owned, a Jani-King franchise ......................2

    II.   California separately regulates franchising, which is a major part of its economy ........2

    III.  Jani-King has standard franchisor controls, but they do not make it an employer.........3

    IV.  Plaintiffs' claims of common practices are based on hand-picked declarations ............4

ARGUMENT .....................................................................................................................5

    I.    Individual Issues Predominate In Each Of Plaintiffs' Claims Under Rule 23(b)(3) ....... 5

        A.   Litigating the franchise and statutory fraud claims will require discovery from, and separate rulings for, each franchise owner. ............................................. 5

            1.    The existence and receipt of an alleged misrepresentation is an individual issue ...................................................................................... 6

            2.    Falsity is an individual issue ................................................................ 8

            3.    Reliance is an individual issue .............................................................. 9

            4.    Timeliness is an individual issue ........................................................ 10

        B.   Litigating Plaintiffs' breach of good faith and fair dealing claims will require discovery from, and separate rulings for, each franchise owner ............. 11

        C.   Litigating Plaintiffs' employment classification claims will require discovery from, and separate rulings for, each franchise owner ......................... 14

        D.   Litigating Plaintiffs' unfair competition claims will require discovery from, and separate rulings for, each franchise owner.......................................... 17

    II.   Plaintiffs' Employment Classification Claims Do Not Fall Within Rule 23(b)(2) Because They Seek Predominantly Monetary Relief .......................................... 20

        A.   Inactive owners seek predominantly monetary relief because they lack standing to seek injunctive relief ...................................................... 21

        B.   Active owners seek predominantly monetary relief that is significant in amount and will require individual discovery and hearings................................ 21

    III.  Plaintiffs' Claims Do Not Satisfy the Typicality Or Representational Adequacy Requirements of Rule 23(a)...................................................................... 22

        A.   The named plaintiffs cannot adequately represent the proposed class ................ 22

            1.    The Juarezes are not adequate class representatives because they are subject to counterclaims and unique defenses and lack credibility ............ 22

            2.    There is a conflict of interest between owners who manage multiple employees and owners who mostly perform the labor themselves ............ 23

        B.   Plaintiffs do not satisfy the typicality requirement ............................................... 24

CONCLUSION ..............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alberghetti v. Corbis Corp.*
263 F.R.D. 571 (C.D. Cal. 2010) ...............................................................................23, 24

*Allison v. Citgo Petroleum Corp.*
151 F.3d 402 (5th Cir. 1998) ...........................................................................................21

*Ansoumana v. Gristede's Operating Corp.*
201 F.R.D. 81 (S.D.N.Y. 2001) .......................................................................................22

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001) ...........................................................................................24

*Avritt v. Reliastar Life Ins. Co.*
--- F.3d ---, 2010 WL 3168453 (8th Cir. Aug. 12, 2010) ................................................18

*Bodett v. Coxcom, Inc.*
366 F.3d 736 (9th Cir. 2004) .............................................................................................4

*Broussard v. Meineke Discount Muffler Shops, Inc.*
155 F.3d 331 (4th Cir. 1998) .............................................................................................6

*Calif. Bagel Co. v. Am. Bagel Co.*
No. CV 97-8863, 2000 WL 35798199 (C.D. Cal. June 7, 2000)........................................9

*Castano v. Am. Tobacco Co.*
84 F.3d 734 (5th Cir. 1996) ...............................................................................................5

*Cimino v. Raymark Indus., Inc.*
151 F.3d 297 (5th Cir. 1998) .............................................................................................5

*Comedy Club, Inc. v. Improv W. Assocs.*
553 F.3d 1277 (9th Cir. 2009) ...................................................................................20, 23

*De Giovanni v. Jani-King*
262 F.R.D. 71 (D. Mass. 2009) ...................................................................................6, 11

*Dukes v. Wal-Mart Stores, Inc.*
603 F.3d 571 (9th Cir. 2010) (*en banc*)................................................................5, 21, 22

*East Texas Motor Freight Sys. v. Rodriguez*
431 U.S. 395 (1977).........................................................................................................20

*Edwards v. Publishers Circulation Fulfillment, Inc.*
--- F.R.D. ---, 2010 WL 2428083 (S.D.N.Y. June 17, 2010)...........................................22

*Gartin v. S&M NuTec LLC*
245 F.R.D. 429 (C.D. Cal. 2007) ...............................................................................10, 23

*Gary Plastic Packaging Co. v. Merrill Lynch, Pierce, Fenner & Smith*
  903 F.2d 176 (2d Cir. 1990) ...................................................................................23

*Gen. Tel. Co. v. Falcon*
  457 U.S. 147 (1982) ...............................................................................................5

*Glen Holly Entm't, Inc. v. Tektronics, Inc.*
  343 F.3d 1000 (9th Cir. 2003) ................................................................................7

*Gonzalez v. Proctor & Gamble Co.*
  247 F.R.D. 616 (S.D. Cal. 2007) .....................................................................6, 17

*Gregurek v. United of Omaha Life Ins. Co.*
  No. CV 05-6067-GHK, 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009) ..................11

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................22

*Hanon v. Dataproducts Co.*
  976 F.2d 497 (9th Cir. 1992) .................................................................................23

*In re FedEx Ground Package System, Inc., Employment Practices Litigation*
  2008 WL 7764456 (N.D. Ind. Mar. 25, 2008) .......................................................22

*Kingsbury v. U.S. Greenfiber, LLC*
  No. CV 08-00151, 2009 WL 2997389 (C.D. Cal. Sept. 14, 2009)..........................17

*Kline v. Wolf*
  702 F.2d 400 (2d Cir. 1983) ..................................................................................23

*Lanzarone v. Guardsmark Holdings, Inc.*
  No. CV06-1136, 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006)...............................24

*Lee v. ABC Carpet & Home*
  236 F.R.D. 193 (S.D.N.Y. 2006) ............................................................................21

*Lozano v. AT&T Wireless Servs., Inc.*
  504 F.3d 718 (9th Cir. 2007) .................................................................................18

*Marisol v. Giuliani*
  126 F.3d 372 (2d Cir.1997) ...................................................................................24

*Mayfield v. Dalton*
  109 F.3d 1423 (9th Cir. 1997) ..........................................................................23, 24

*McLaughlin v. Am. Tobacco Co.*
  522 F.3d 215 (2d Cir. 2008) ....................................................................................5

*Menagerie Prods. v. Citysearch, Inc*
  No. CV 08-4263, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ..............................19

iii

*Moua v. Jani-King of Minn., Inc.*
  Civil No. 08-4942, 2010 WL 935758 (D. Minn. Mar. 12, 2010)..................................6, 11, 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  259 F.3d 154 (3d Cir. 2001) ...........................................................................5

*Quezada v. Loan Center of Calif., Inc.*
  No. Civ. 2:08-00177, 2009 WL 5113506 (E.D. Cal. Dec. 18, 2009)......................................10

*Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*
  637 F.Supp.2d 712 (C.D. Cal. 2008)...................................................................9

*Vathana v. EverBank*
  No. 09-02338, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010).............................................14

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*
  206 F.R.D. 271 (C.D. Cal. 2002) .....................................................................11

**STATE CASES**

*B.L.M. v. Sabo & Deitsch*
  55 Cal. App. 4th 823 (1997)..........................................................................9

*Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*
  20 Cal. 4th 163 (1999) ..............................................................................18

*Cislaw v. Southland Corp.*
  4 Cal. App. 4th 1284 (1992)..................................................................3, 15, 16

*Cohen v. DIRECTV, Inc.*
  178 Cal.App. 4th 966 (2009) .........................................................................18

*Cristler v. Express Messenger Sys., Inc.*
  171 Cal. App. 4th 72 (2009)..........................................................................15

*Davis v. Ford Motor Credit Co. LLC*
  179 Cal. App. 4th 581 (2009).........................................................................19

*Engalla v. Permanente Med. Group, Inc.*
  15 Cal. 4th 951 (1997) ..............................................................................10

*Globe Surg. Supply v. Geico Ins. Co.*
  59 A.D.3d 129 (N.Y. App. Div. 2008)..................................................................23

*In re Tobacco II*
  46 Cal. 4th 298 (2009) ...........................................................................8, 18

*Kaldenbach v. Mut. Of Omaha Life Ins. Co.*
  178 Cal.App.4th 830 (2009) ..........................................................................18

iv

*Kuchta v. Allied Builders Corp.*
  21 Cal. App. 3d 541 (1971) ........................................................................15

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (1993) .........................................................................9, 10

*Newell v. State Farm General Ins. Co.*
  118 Cal. App. 4th 1094 (2004) ..............................................................14

*Pfizer Inc. v. Superior Court*
  182 Cal. App. 4th 622 (2010) ................................................................17

*Racine & Laramie, Ltd. v. Calif. Dept. of Parks and Rec.*
  11 Cal. App. 4th 1026 (1993) ................................................................11

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*
  72 Cal. App. 4th 861 (1999) ..................................................................18

*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*
  185 Cal. App. 4th 1050 (2010) ..............................................................11

*Wickham v. Southland Corp.*
  168 Cal. App. 3d 49 (1985) ...................................................................15

**FEDERAL STATUTES**

28 U.S.C. § 2072(b) ........................................................................................5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................................10

Cal. Bus. & Prof. Code § 20001 ......................................................................1

Cal. Bus. & Prof. Code §§ 20001-200043 .......................................................2

Cal. Bus. & Prof Code § 20001(a) .........................................................3, 14, 16

Cal. Bus. & Prof. Code § 20001(b) ........................................................3, 14, 16

Cal. Bus. & Prof Code § 20001(c) ..............................................................3, 14

Cal. Bus. & Prof Code § 20020 .....................................................................15

Cal. Civ. Code § 1632 ...................................................................................19

Cal. Civ. Proc. Code § 337 ............................................................................10

Cal. Civ. Proc. Code § 338 ............................................................................10

Cal. Civ. Proc. Code § 338(a) ........................................................................10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

Cal. Civ. Proc. Code § 340(a) ....................................................................10

Cal. Civil Code §§ 1709 .........................................................................5, 9

Cal. Civil Code §§ 1710 .........................................................................5, 9

Cal. Corp. Code §§ 31001 ...........................................................................8

Cal. Corp. Code §§ 31001-31516 ...............................................................3

Cal. Corp. Code § 31005(a) .........................................................................3

Cal. Corp. Code § 31101(c)(A)-(P) ............................................................3

Cal. Corp. Code § 31101(c)(M) ...................................................................6

Cal. Corp. Code § 31110 ...........................................................................19

Cal. Corp. Code §§ 31201 ...........................................................................5

Cal. Corp. Code §§ 31202 ...........................................................................5

Cal. Corp. Code § 31301 ..............................................................................9

Cal. Corp. Code § 31303 ...........................................................................10

Cal. Corp. Code § 31304 ...........................................................................10

**RULES**

Fed. R. Civ. P. 23(a) ..............................................................................5, 22

Fed. R. Civ. P. 23(b) ....................................................................................5

Fed. R. Civ. P. 23(b)(2) ..............................................................20, 21, 22

Fed. R. Civ. P. 23(b)(3) ................................................................................5

Fed. R. Civ. P. 23(a)(4) ..............................................................................22

**CONSTITUTIONAL PROVISIONS**

Seventh Amendment ......................................................................................5

**OTHER AUTHORITIES**

*Franchising in the Economy 1986-88, U.S. Dep't of Commerce,* 1 (Feb. 1988) ............................3

Roger D. Blair & Francine Lafontaine, *The Economics of Franchising*, Table 1-1 (Cambridge U. Press 2005)................................................................................3

*The Economic Impact of Franchised Businesses, A Study for the Int'l Franchise Ass'n Educ.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

*Found.*, Nat'l Econ. Consulting Practice of PriceWaterhouseCoopers (2008)..........................3

HOWREY LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

## INTRODUCTION

Plaintiffs ask the Court to certify a class of Jani-King franchise owners to raise roughly two sets of claims: employment classification claims, and fraud and unfair-practices claims. The Court should deny certification because all claims raise predominantly individual issues.

The members of the proposed class are small business owners. Each owner has paid to use Jani-King's trademarks, methods, and administrative staff to help build and run his or her own commercial cleaning business. Many owners run their businesses using employees that they hire, manage, and pay. Those employees are not part of the proposed class.

Plaintiffs first argue that the owners are Jani-King's employees. Plaintiffs cite no case in which a class of franchise owners has been certified to litigate employment-classification claims in California, and Jani-King is aware of none. Franchises are heavily regulated in California, and franchise owners are presumptively independent contractors. The owners *must*, by definition, provide services under a "system prescribed in substantial part by a franchisor." Cal. Bus. & Prof. Code § 20001. Following that command does not make them employees. To prove an owner is an employee, Plaintiffs would have to show that Jani-King controlled the owner's day-to-day activities in ways typical of an employee and beyond what is necessary to run the franchise. They have identified no way to do that on a common basis.

Plaintiffs' second group of claims arises out of their allegations that Jani-King representatives made oral misrepresentations about how profitable their businesses would be, but failed to disclose characteristics of Jani-King's system affecting profitability. Two federal courts in cases against Jani-King have denied class certification of claims like Plaintiffs', holding that they are predominantly individualized. This Court should do the same. The owners bought franchises over many years from different Jani-King representatives across California and did not all receive a common misrepresentation or omission. Nor did they have a common experience after buying their franchises. Since Jani-King's disclosure documents did not include any profitability analysis or statements, Jani-King was forbidden from making oral profitability claims. If any employee did so, it was an aberration that a plaintiff must prove individually.

Plaintiffs try to manufacture factual consistency through boilerplate declarations from

1   handpicked owners. When deposed, however, the owners' testimony varied in material ways—both

2   from each other and from their declarations. Individual issues will predominate in Plaintiffs' fraud

3   and unfair-practices claims.

4   <center>**STATEMENT OF FACTS**</center>

5   **I.    All putative class members own, or have owned, a Jani-King franchise.**

6     The putative class is formed of small business owners who operated a Jani-King franchise

7   during the class period. Dkt. 52 at 9. Jani-King is the world's largest commercial cleaning franchisor.

8   Ex. 24 [1]. It licenses its trademarks, goodwill, and proprietary commercial cleaning system to entities

9   and people that want to run their own business. Ex. 26 at JK Juarez 7014-15, 7018; Ex. 5 ¶ 20, 24, 25,

10   58. Franchise owners also receive administrative support, including billing, collections, advertising

11   and sales support, from Jani-King. Ex. 26 at JK Juarez 7001, 7007, 7009, 7014-15, 7018

12     Franchise owners are not required to personally perform their business's cleaning work. *Id.* at

13   7002. They can—and many do—hire employees to perform the work. Ex. 9 at 68; Ex. 8 at 58-59; Ex.

14   7 at 92; Ex.12 at 63-64 ; Ex. 15 at 35-36; Ex. 16 at 61; Ex. 14 at 30-31; Ex. 1 ¶ 22; Ex.2 ¶ 19; Ex. 3

15   ¶ 12; Ex. 4 ¶ 13. All the revenue generated by the business (less Jani-King's fees) is paid to the

16   owners, regardless of whether they or their employees performed the work. Ex. 26 at 7007. The

17   owners cover salaries and expenses. *E.g.*, Ex. 10 at 112; Ex. 15 at 98-99; Ex. 1 ¶¶ 23, 27-28; Ex. 3

18   ¶ 11; Ex. 4 ¶ 4. What remains is their profit.

19     People buy Jani-King franchises for a variety of reasons. Some intend to grow a business that

20   is their sole means of support. Ex. 13 at 10; Ex. 1 ¶¶ 5-9; Ex. 4 ¶ 12. For example, David Granger

21   built a franchise that currently bills approximately $47,000 per month. Ex. 4 ¶ 4; *see also* Ex. 5 ¶ 35.

22   Others have existing jobs or obligations and buy a franchise for its scheduling flexibility. Leticia

23   Ventura, for example, worked for 17 years with her husband in the late afternoon and evening on their

24   Jani-King franchise, while working full time as a hospital records clerk at night. Ex. 13 at 8-10.

25   **II.    California separately regulates franchising, which is a major part of its economy.**

26     California regulates franchises as a separate form of business under the California Franchise

27   Relations Act ("CFRA"), Cal. Bus. & Prof. Code §§ 20001-200043, and the California Franchise

28

---

[1] All exhibits are attached to the Declaration Eileen Hunter submitted herewith.

<center>2</center>

Investment Law ("CFIL"), Cal. Corp. Code §§ 31001-31516. By law, a franchisor must provide extensive disclosures to potential owners at least ten business days before the owners sign a franchise agreement. Cal. Corp. Code § 31101(c)(A)-(P). California also has issued a brochure advising owners who are considering buying a franchised janitorial business. Ex. 25. Franchising is a ubiquitous part of the state, national, and global economies. In 2005, franchised businesses employed over 1,162,888 individuals in California and generated $105.7 billion of economic activity. *The Economic Impact of Franchised Businesses, A Study for the Int'l Franchise Ass'n Educ. Found.*, 21, 25, Nat'l Econ. Consulting Practice of PriceWaterhouseCoopers (2008). Companies such as McDonald's, Dunkin' Donuts, H&R Block, and Express Services, plus thousands of others, operate on a franchising model. Roger D. Blair & Francine Lafontaine, *The Economics of Franchising*, 10, Table 1-1 (Cambridge U. Press 2005). Franchise owners enjoy "a competitive edge over other small business entrepreneurs by the use of trade names, marketing expertise, . . . standardization of products and services, training, and advertising support from the parent organization." *See Franchising in the Economy 1986-88*, *U.S. Dep't of Commerce*, 1 (Feb. 1988).

**III.     Jani-King has standard franchisor controls, but they do not make it an employer.**

The nature of franchising and franchising law require a franchisor to control its end product or service. Different franchised locations and products must appear consistent to consumers. Ex. 5 ¶ 15, 28, 41-44. Customers must know, for example, that they will get the same Big Mac in Fresno as in Boston. *Id.* Otherwise, McDonalds could not transfer its goodwill to new locations and franchising the McDonald's brand would not work. *Id.* ¶¶ 58-59.

California law not only assumes that franchisors will control the end product, it *requires* control, defining a "franchise" as a contract under which an owner provides goods or services using a "system prescribed in substantial part by a franchisor." Cal. Bus. & Prof. Code § 20001(a), (b), (c); Cal. Corp. Code § 31005(a); *see also* Ex. 27. Because these controls are required, their exercise does not make a franchisor an employer. "A franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and goodwill, without the risk of creating an agency relationship with its franchisees." *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1295 (1992); *see generally* Ex. 5 ¶¶ 19-31, 48-51.

**IV.    Plaintiffs' claims of common practices are based on hand-picked declarations.**

In discovery, the parties agreed to select a random sample of franchise owners to produce a representative pool of evidence from which the Court could determine whether owners' experiences varied materially. *See* Dkt. No. 68, Hunter Decl. ¶¶ 17-18. Plaintiffs' brief, however, ignores the sample. It relies instead on owners handpicked from outside the sample, for whom Plaintiffs wrote declarations using identical wording to create the impression of common facts. Pls.' Tabs A – M.

Plaintiffs' declarations do not prove common experiences for three reasons. **First**, the declarations are not representative, so they cannot be attributed to the thousand other class members. **Second**, the declarations are filled with qualifications showing that the events were not uniform even for the individual declarants but happened only "sometimes" or, at most, "often." *E.g.*, Pls.' Tab F ¶ 5; G ¶ 5; H ¶¶ 5, 7; I ¶ 6. **Third**, when Jani-King deposed the declarants, their testimony varied materially from the declarations and each other. Space permits only three examples. Maria Portillo's declaration stated that she "was told" she "had to purchase" supplies and equipment from Jani-King or one of its vendors." Pls.' Tab C ¶ 9. But in her deposition she admitted she knew she could have bought them "someplace else." Ex. 8 at 77-78, 79-80. Three other witnesses did the same about-face. *Compare* Pls.' Tab H ¶ 3 *with* Ex. 11 at 28; *compare* Pls.' Tab K ¶ 3 *with* Ex. 16 at 45; *compare* Pls.' Tab L *with* Ex. 17 at 27. The declaration of former Jani-King employee John Allen stated that Jani-King "often did not have enough active accounts to satisfy its obligations to new franchisees," which "encouraged the practice" of transferring accounts from one owner to another for "false or no reasons." Pls.' Tab E ¶ 13. In his deposition, however, Allen admitted that he knew of no accounts that had ever been transferred for improper reasons in any California office. Ex. 18 at 161-66. Adela Quintana's declaration stated that Jani-King told her that it "would provide me with enough cleaning accounts to earn a monthly income of at least $3,000." Pls.' Tab J ¶ 4. But at her deposition, she admitted that she was not promised an amount of income but was told she "would be given business" in the promised amount. Ex. 14 at 23-25. The Court should give the declarations no weight in determining whether every owner's experience was truly common; they are unrepresentative, manufactured documents contradicted by the witnesses' testimony. *See, e.g.*, *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 748 (9th Cir. 2004) (depositions control declarations).

**ARGUMENT**

Plaintiffs "bear[] the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 580 (9th Cir. 2010) (*en banc*). They have not met their burden.

**I.   Individual Issues Predominate In Each Of Plaintiffs' Claims Under Rule 23(b)(3).**

Plaintiffs must prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Compliance with this requirement "must be actually demonstrated, not just alleged." *Dukes*, 603 F.3d at 590; *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) (requiring "actual, not presumed, conformance"). This Court "must analyze underlying facts and legal issues" necessary to apply Rule 23's requirements "regardless of any overlap with the merits." *Dukes*, 603 F.3d at 585-86. A question is an individual one under Rule 23(b)(3) if the Court will have to consider evidence from individual class members because of material differences among them. Materiality depends on "the claims, defenses, relevant facts, and applicable substantive law." *Castano v. Am. Tobacco Co*., 84 F.3d 734, 744 (5th Cir. 1996). Individual issues cannot be decided in a class trial because forcing a jury to decide differently-situated class members' claims all the same way would violate the Rules Enabling Act, the Seventh Amendment, and the class members' and defendant's due process rights. *See* 28 U.S.C. § 2072(b) (rules of procedure "shall not abridge, enlarge or modify any substantive right"); *McLaughlin v. Am. Tobacco Co*., 522 F.3d 215, 232-33 (2d Cir. 2008); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 191-92 (3d Cir. 2001); *Cimino v. Raymark Indus., Inc*., 151 F.3d 297, 311 (5th Cir. 1998).

> **A.   Litigating the franchise and statutory fraud claims will require discovery from, and separate rulings for, each franchise owner.**

The first five counts of Plaintiffs' Amended Complaint use the same factual allegations to raise claims for fraudulent misrepresentations and omissions under California's Franchise Investment Law, Cal. Corp. Code §§ 31201, 31202, and the statutes codifying common law fraud, Cal. Civil Code §§ 1709, 1710. All five fraud-based causes of action require Plaintiffs to prove the elements of misrepresentation or omission, reliance, and falsity. Two federal district courts, considering analogous

5

claims against Jani-King, recently denied class certification on predominance. The first court held that "individual inquiries" would "overwhelm[] common questions." *De Giovanni v. Jani-King*, 262 F.R.D. 71, 79-80 (D. Mass. 2009). The second court likewise held that "proving that class members both received and relied on the alleged false statements, misrepresentations, and omissions will require individualized inquiries regarding each class member." *Moua v. Jani-King of Minn., Inc*, Civil No. 08-4942, 2010 WL 935758, *5 (D. Minn. Mar. 12, 2010). This Court should hold the same.

### 1.   The existence and receipt of an alleged misrepresentation is an individual issue.

Courts will not certify a class to litigate misrepresentation or omission claims unless the class members were all exposed to the same alleged misrepresentation, because otherwise proving receipt of a misrepresentation requires individual evidence. *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623-24 (S.D. Cal. 2007); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) (denying certification in franchise case).

Here, the record shows that Jani-King franchise owners did not all receive a common alleged misrepresentation. The sole representation that this Court at the pleadings stage held could state a claim for fraud was the claim that Jani-King representatives orally promised owners certain amounts of guaranteed income, but failed to disclose facts making the promises illusory. Dkt. No. 25 at 10-13. The Amended Complaint pleads facts to support this claim. Dkt. No. 32 ¶¶ 72, 89. But Plaintiffs' brief makes no attempt to show that they can prove this alleged misrepresentation with common evidence, and rightly so because the evidence does not exist. To the contrary, Jani-King declared in its standard disclosures that it was not making any earnings promises and had forbidden its employees from doing so:

> We do not furnish or authorize our salespersons or any employees to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of a JANI-KING franchise. Actual results vary from unit to unit and we cannot estimate the results of any particular franchise. *We have specifically instructed sales personnel, agents, employees and officers that they are not permitted to make claims or statements as to earnings, sales, profits, or prospects or chances of success, nor are they authorized to represent or estimate dollar figures for those items as to any particular JANI-KING franchise. You should not rely on any unauthorized representations.*

Ex. 26 at JK Juarez 6976 (emphasis added); *see also* Cal. Corp. Code § 31101(c)(M) (recognizing that franchisor has discretion to not make earnings claims).

To prove a misrepresentation, an owner will have to submit individual evidence. The members of the proposed class bought their franchises at different times, in different offices, and talked to different Jani-King employees. *E.g.*, Ex. 13 at 5, 13, 14; Ex. 17 at 10, 14; Ex. 11 at 5, 11, 12; Ex. 4 ¶¶ 4, 10. Some owners agree that Jani-King never made any representations regarding income or profits to them. Ex. 2 ¶ 11. Some owners do not remember what they were told about Jani-King's initial business obligation. Ex. 13 at 100-101; Ex. 17 at 20-21. Owners who *do* remember what they were told remember different things. One owner claimed she was promised her initial business obligation amount *after* Jani-King's fees were deducted. Ex. 12 at 23-24; Ex. 16 at 71-73. Two other owners testified they were promised the initial business obligation amount *before* fees. Ex. 15 at 64; Ex. 11 at 46. Sometimes, witnesses contradict each other. One owner declared that Jani-King's Regional Director promised him earnings of $4,000 in "income per month," Pls.' Tab L ¶ 5, and said the person he spoke with was John Allen. Ex. 17 at 59. But Allen testified that he never made earnings claims to prospective franchise owners because the law prohibited it. Ex. 18 at 44-45.

The *only* affirmative misrepresentation Plaintiffs allege in their certification brief is that they were told that they will own their businesses and be their own bosses.  Dkt. 52 at 12. This is not the fraud claim sustained by the Court and alleged in the Amended Complaint. It is a makeweight made to mask individual differences in owners' actual claims. Franchise owners *do* own their businesses and can sell or transfer them. *See* Argument, Part II.C, *infra.* And the alleged claim that some owners were told they would be their own bosses is puffery. *See, e.g., Glen Holly Entm't, Inc. v. Tektronics, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003). Even if this claim were real, it would be individualized because Plaintiffs rely not on Jani-King's standard disclosures, but on varying oral conversations, newspaper ads, or brochures that not every owner saw. Dkt. 52 at 12. Many owners also contend they never received Jani-King's disclosures. Ex. 9 at 133-34; Ex. 17 at 15, 23; Ex.13 at 52. Some received them, but never read them. Ex. 12 at 12; Ex. 10 at 49. Some only read parts of them. Ex. 8 at 50-51; Ex. 16 at 14, 17. Some do not remember whether they received them. Ex. 7 at 53-54. Litigating this issue would overwhelm a class trial.

Plaintiffs' omission claim is tied to their misrepresentation claim, as this Court recognized, *see* Dkt. No. 25 at 10-11, and is thus similarly an individual issue. They allege that Jani-King made

representations about income and profit, but "conceal[ed] facts that demonstrate the true cost of a franchise and the near impossibility of making a profit, or even a living wage." Dkt. 52 at 24. Because the alleged representation was not common, neither is the omission claim tied to it. Plaintiffs do not state a pure omission claim, and they could not state a pure omission claim because the legislature has made a judgment about "the information necessary to make an intelligent decision regarding franchises being offered," Cal. Corp. Code §§ 31001—and it has not required franchisors to disclose the information about business expenses that Plaintiffs allege Jani-King concealed. Even when franchisors make earnings claims (unlike Jani-King), they need not disclose specific expense information but may warn prospects to perform their own investigations. 10 CCR § 310.114.1; *see* Ex. 5 ¶¶ 65-71. It is not proper use of the fraud laws to attempt to add new standard disclosures in franchise documents that the legislature does not require.

### 2.      Falsity is an individual issue.

"A fraudulent deception must be actually false." *In re Tobacco II*, 46 Cal. 4th 298, 312 (2009) (quotation omitted). Here, adjudicating falsity will be an individual issue because many owners had greater earnings than they were allegedly promised. The following three examples illustrate the individuality of Plaintiffs' earnings claims. **First**, Leticia Ventura stated that Jani-King told her it "would provide [her] with enough cleaning accounts" to earn a minimum of $2,000 each month. Pls.' Tab M ¶ 6. Throughout the class period, her original franchise earned more than that. Ex. 29. **Second**, Maria Macias asserted that Jani-King promised her an income of $1,000 per month, Pls.' Tab I ¶ 5, which she maintains was to be calculated on an after-fees basis, Ex. 12 at 23-24. Since Macias began servicing accounts, her franchise consistently earned more than that. Ex. 30. **Third**, Plaintiffs Maria and Alejandro Juarez state in their declarations that they were promised "$3,000 per month in income." Pls.' Tabs A & B ¶ 12. Their franchise consistently generated more than that, Ex. 31, until the Juarezes began siphoning away their Jani-King accounts to the competing business they secretly established in January 2008. Ex. 10 at 18; Ex. 9 at 10-11, 12-13, 20, 22; *see also* Dkt. No. 47, Riley Decl., Ex. A at ¶¶ 20-44.

As these examples show, the Court could not determine whether any owner's earnings claim was "false" without examining that owner's individual experience. Some owners earned more than

the alleged promise. Others did not, but for reasons attributable to the owner, not to Jani-King, such as (1) stealing Jani-King accounts and servicing them through a competing business; (2) non-performance, *e.g.*, Ex. 35; (3) problems with clients, *e.g.*, Ex. 16 at 38; (4) scheduling conflicts, *e.g.*, Ex. 15 at 39-40; and (5) personal preferences regarding account type or location, *e.g.*, Ex. 12 at 69-70. Falsity is an individual issue.

### 3.     Reliance is an individual issue.

Justifiable reliance is an element of all five of Plaintiffs' fraud-based claims, and it can only be litigated in this case by examining the facts of each owner, one owner at a time. Plaintiffs must "plead and prove the common law element of actual reliance" for all claims under Civil Code §§ 1709 and 1710, whether intentional or negligent, and whether affirmative misrepresentations or omissions. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092-93 (1993); *B.L.M. v. Sabo & Deitsch,* 55 Cal. App. 4th 823, 833 (1997). The same is true for the franchise statutes: "A plaintiff must show both causation and actual reliance under the CFIL." *Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 637 F.Supp.2d 712, 723, 726 (C.D. Cal. 2008); *Calif. Bagel Co. v. Am. Bagel Co.*, No. CV 97-8863, 2000 WL 35798199, at *1, *18-21 (C.D. Cal. June 7, 2000); Cal. Corp. Code § 31301 (defendant not liable for damages if "the defendant proves that the plaintiff knew the facts concerning the untruth or omission").

Reliance is an individual issue because the record shows that owners received a wide variety of information, had a wide range of prior experiences, and bought their franchises in various circumstances, precluding any common presumption of reliance. Some franchise owners claim not to have received written disclosures, some read them, some read parts, and some did not read them at all. *See* Argument, Part I.A.3, *supra*. Some franchise owners bought existing franchises, Ex. 13 at 6-7, and some bought a second franchise after they had already owned and operated a first one, *id.* at 5-6. Some were referred to Jani-King by a friend. Ex. 13 at 11-13; Ex. 15 at 7. Some had worked for a Jani-King franchise owner, Ex. 9 at 61, and some had relatives on whom they relied for information regarding whether or not to buy, Ex. 11 at 11, 98-99. Some consulted lawyers, Ex. 1 ¶ 12, and some had experience in the franchising industry, Ex. 4¶ 6-7. Some researched other franchising companies. Ex. 1 ¶ 14; Ex. 2 ¶ 9. Some called existing franchise owners to evaluate their experiences. Ex. 4 ¶ 11.

HOWREY LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

1  Determining what each owner relied on would overwhelm this case.

2        Seeking to evade this individual evidence, Plaintiffs argue that classwide reliance may be

3  presumed. Dkt. 52 at 25. Not according to the California Supreme Court, which "has expressly held

4  that the presumption of reliance . . . does not apply to fraud claims under California law." *Quezada v.*

5  *Loan Center of Calif., Inc.*, No. Civ. 2:08-00177, 2009 WL 5113506, at * 4 (E.D. Cal. Dec. 18, 2009)

6  (citing *Mirkin*, 5 Cal. 4th at 1093-94). In cases involving "identical representations to each class

7  member," some courts have held that reliance can presumptively be proved on a classwide basis. *Id.*

8  at 1094. But even then, the presumption is not conclusive; it can be rebutted by individual evidence

9  showing a lack of reliance. *Quezada*, 2009 WL 5113506, at *5; *see also Engalla v. Permanente Med.*

10  *Group, Inc.*, 15 Cal. 4th 951, 977 (1997). Here, no classwide presumption arises because the evidence

11  does not establish that an identical representation was received by each class member. Even if one did

12  arise, Jani-King has rebutted it with significant individual evidence showing material variations

13  between franchise owners.

14                **4.**        **Timeliness is an individual issue.**

15        The Court also would have to decide individually whether each owner's claims are time-

16  barred. The proposed class includes all owners who worked on Jani-King accounts any time after June

17  22, 2005. Dkt. No. 52 at 9. Many of the class members bought their franchises and thus received their

18  alleged misrepresentations far earlier than June 2005.  Ex. 1 ¶ 4; Ex. 13 at 5; Ex. 11 at 10. Based on

19  the variation in purchase dates and limitations periods, many of these owners' claims are time-barred.

20        The fraud and UCL limitations periods range from three to four years. Cal. Civ. Proc. Code

21  § 338 (three years); Cal. Bus. and Prof. Code § 17200 (four years). The franchise statutes provide

22  alternative periods—two or four years from the date of misrepresentation, or one year from discovery,

23  whichever *expires first*. Cal. Corp. Code § 31303 (four and one); Cal. Corp. Code § 31304 (two and

24  one). Litigating timeliness will require individual discovery into when each owner received and

25  learned of the alleged misrepresentation.[2] Individual timing questions such as these contribute to a

26  predominance of individual issues. *See, e.g.*, *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 441 (C.D.

27  

28  
_____
[2] This issue applies to Plaintiffs' other claims too. Good faith and fair dealing claims have a 4-year bar. Cal. Civ. Proc. Code § 337. Labor code claims have a 3-year bar, Cal. Civ. Proc. Code § 338(a), unless penalties are sought, when a 1-year bar applies. Cal. Civ. Proc. Code § 340(a).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

Cal. 2007); *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 279-80 (C.D. Cal. 2002); *Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK, 2009 WL 4723137, at *8 (C.D. Cal. Nov. 10, 2009).

> **B.    Litigating Plaintiffs' breach of good faith and fair dealing claims will require discovery from, and separate rulings for, each franchise owner.**

In *Moua*, the court denied certification of plaintiffs' good-faith-and-fair-dealing claims because it found that "individual issues will predominate over common ones" in proving whether Jani-King performed its obligations in good faith. 2010 WL 935758, at *4. This Court also should deny certification because, as in *Moua*, Jani-King's performance is an individual issue.

To prove a good-faith claim, a plaintiff must prove that Jani-King acted unreasonably in performing its contractual obligations. "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Calif. Dept. of Parks and Rec.*, 11 Cal. App. 4th 1026, 1032 (1993). It "cannot contradict the express terms of a contract." *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1061 (2010).

Plaintiffs allege first that Jani-King acted in bad faith by using procedures to avoid its contractual obligation to offer owners the minimum amount of business required by their respective agreements.[3] Dkt. 52 at 22. This alleged breach can only be proved with individual evidence. Many owners admit that Jani-King met its initial business obligation to them, *see, e.g.*, Ex. 9 at 103-04; Ex. 13 at 16-17; Ex.1 ¶ 6; Ex. 14 at 58, and every deponent and declarant in this case accepted multiple offers while operating their franchises. The following chart[4] shows the initial business obligation of all Plaintiffs and declarants, the business their franchises have been offered, and the business they accepted since purchasing their franchises.

---

[3] "The Franchise Agreement and the Uniform Franchise Offering Circular, as well as Jani-King's marketing materials, are extremely clear Jani-King's only obligation to new franchisees is to offer, before the expiration of the Initial Offering Period, the opportunity to service cleaning contracts with a specified gross monthly value. Nowhere in the UFOC or Franchise Agreement does Jani-King promise new franchisees that they will ever service contracts equal to or greater than the Initial Business." *De Giovanni*, 262 F.R.D. at 78; *see* Ex. 26 at JK Juarez 7017-18.

[4] *See* Ex. 33. Some of these histories are incomplete due to the longevity of the franchise at issue.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

| Name | IBO | Total Accts Offered (monthly billings) | Total Accts Accepted (monthly billings) | Name | IBO | Total Accts Offered (monthly billings) | Total Accts Accepted (monthly billings) |
|---|---|---|---|---|---|---|---|
| Juarez | $3,000 | $40,538 | $40,300 | Rodriguez | $1,000 | $5,329 | $5,329 |
| Portillo | $2,000 | $7,289 | $6,920 | Ruiz | $4,000 | $9,272 | $2,464 |
| Romero | $2,000 | $10,159 | $8,415 | Macias | $1,000 | $15,503 | $12,854 |
| Ventura | $2,000 | $73,209 | $59,068 | Davis | $11,000 | $110,091 | $110,091 |
| Quintana | $3,000 | $19,713 | $17,498 | Granger | $3,000 | $48,916 | $48,916 |
| Gaston | $2,000 | $6,551 | $5,198 | Saunders | 2,000 | $124,847 | $124,847 |
| Grebbinikova | $4,000 | $39,788 | $29,659 | Prado | $4,000 | $81,799 | $81,799 |

Determining whether Jani-King offered any of these accounts in bad faith—whether during the initial business obligation period or later—would require an individual inquiry into whether each owner had a chance to respond to offers, to accept offers, to review accounts, or to inspect the account property. *See* Dkt. No. 52 at 22:21-28. Some owners say they never received an offer reflected on Jani-King's records. Ex. 17 at 33-34. One owner testified he was given one day to respond to offers. Ex. 15 at 42. Another said he did not get "very much time," Ex. 17 at 48-49. Some owners said they were allowed to inspect accounts, Ex. 8 at 116-118; Ex. 8 at 87, but another said the inspection practice varied, Ex. 11 at 97-98.  The issue is an individual one.

Plaintiffs argue that they can prove a universal breach of good faith by proving that Jani-King "does not have sufficient accounts to make good faith offers." Dkt. No. 52 at 23. Not so. They rely on the declarations of two disgruntled former employees, John Allen of Jani-King and Steven Cumbow of Coverall. *See* Ex. 18 at 66-67, 124-25; Ex. 20 at 30-31. Allen stated in his declaration that Jani-King "did not have enough accounts," Pls.' Tab E ¶ 13, but admitted in his deposition that this statement was based on "rumors" and that he had no personal experience of any California region transferring accounts to satisfy initial business obligations. Ex. 18 at 163-65. Moreover, even if Plaintiffs could prove that Jani-King lacked sufficient accounts to meet all of its obligations for a particular time and region, that would affect only the owners on the margin in that region at that time who did not get sufficient accounts. Identifying those owners, if any exist, is an individual inquiry.

Cumbow stated in his expert declaration that Jani-King "*may be* fulfilling its obligations by redistributing existing customer accounts among its franchisees." Pls.' Tab O ¶ 35 (emphasis added). But this factual speculation could only be proved by individual evidence regarding each transferred

1   account to determine whether it (1) was used to satisfy initial business obligation or transferred to an

2   existing franchise owner, *see, e.g.*, Ex. 1 ¶ 21, and (2) was transferred due to the franchise owner's

3   non-performance, *e.g.*, Ex. 2 ¶ 24; Ex. 3 ¶ 21; Ex. 37; *see also* Ex. 6 ¶¶ 71-75. Determining whether a

4   transfer was in bad faith requires individual inquiries. Was the "lost" account transferred to another

5   owner by Jani-King? Turned in by the owner? Canceled by the client? *E.g.*, Ex. 9 at 136-37; Ex. 13 at

6   87-88, 96; Ex. 7 at 119-20; Ex. 14 at 70; Ex. 17 at 42; Ex. 35, Ex. 36. And what role did the owner's

7   non-performance play in losing the account? *E.g.*, Ex. 16 at 38; Ex. 35.

8       Plaintiffs also allege Jani-King violates the duty of good faith and fair dealing by underbidding

9   accounts so that owners can earn little or no profit. Dkt. 52 at 23. This is an individual claim, because

10  "proving that an account was so underbid as to amount to a breach of good faith and fair dealing will

11  require individualized evidence of the revenue from that account, as well as the fair amount of time

12  and expenses a class member would have to incur to perform work on the account." *Moua*, 2010 WL

13  935758, at *4. Plaintiffs' own bidding expert, Arthur Rose, testified that determining whether an

14  account has been bid in a way that allows a profit depends on many factors, Ex. 19 at 155-56,

15  including the account's characteristics, *id.* 72-73, 111; the client's needs, *id.* 76; the type of business,

16  *id.* 83-84; the hours needed to clean the account, *id.* 101, 109; the date of the bid, *id.*; the amount of

17  franchisor deductions, *id.*; the duration of the contract, *id.* 101-02, 116; who cleans the account, *id.*

18  103; travel expenses, *id.*; other accounts serviced in the area, *id.*103-04; equipment costs, *id.* 105-07;

19  salary costs, *id.*; the owner's miscellaneous business expenses, *id.* 137-38, 142; the cost of insurance

20  (if not included in franchisor deductions), *id.* 140-41; and how large the account is, *id.* 145-46; *see*

21  *also* Ex. 5 ¶ 46; Ex. 23 at 35, 42-51, 59-60, 66-67, 68-72, 140; Ex. 21 at 178-79; Ex. 22 at 85-86.

22  Profitability is also affected by customers who do not pay. *See* Ex. 6 ¶ 49; Ex. 22 at 36. Thus, whether

23  an owner has a claim that accounts are so far underbid as to be in bad faith would depend on multiple

24  individual factors—including whether the bid in question was made by the owner him-or-herself. Ex.

25  3 ¶ 23; Ex. 4 ¶ 16; Ex. 2 ¶ 15.

26      Jani-King's accounting expert James Hitchner has also demonstrated that the profitability

27  conclusions reached by Plaintiffs' proposed expert Cumbow are riddled with errors and inappropriate

28  assumptions. Ex. 6 ¶¶ 18-68. Specifically, Cumbow failed to present any actual data regarding the

HOWREY LLP

13

1    profitability of any specific Jani-King franchises. *Id.* Many Jani-King franchise owners have been in

2    business for a long time, and have made profits. Ex. 1 ¶ 20; Ex. 2 ¶ 17; Ex. 4 ¶ 18; Ex. 5 ¶ 33. Even

3    franchise owners who claim that they worked some underbid accounts acknowledge that other

4    accounts are profitable. *See, e.g.*, Ex. 10 at 112-13, 132.

5         This case is like *Newell v. State Farm General Ins. Co.*, 118 Cal. App. 4th 1094 (2004), in

6    which the court denied certification of a good-faith claim arising out of State Farm's payment of

7    earthquake insurance claims. Plaintiffs argued "that their allegations require proof of only a pervasive

8    scheme," but the court held "[c]ommon questions of law and fact do not predominate" because, even

9    if Plaintiffs could prove a common practice, "each putative class member still could recover for . . .

10   bad faith *only* by proving his or her individual claim was wrongfully denied, in whole or in part, and

11   the insurer's action in doing so was unreasonable." *Id.* at 1103 (emphasis in original).[5] So too here.

12   Bidding, and profitability, are individual issues.

13       **C.**    **Litigating Plaintiffs' employment classification claims will require discovery**

14                  **from, and separate rulings for, each franchise owner.**

15        Plaintiffs cite no case in which a class of franchise owners has been certified to litigate

16   employment-classification claims in California, and Jani-King is aware of none. The factors that

17   Plaintiffs cite as their proposed common method of proving owners to be Jani-King's employees

18   prove only that they are true franchisees. *See generally* Ex. 5 ¶¶ 15, 19-72. To prove they are

19   employees, California law requires evidence that Plaintiffs could only establish individually.

20        California expressly recognizes and regulates franchising as a form of doing business. By

21   definition, a franchise relationship does not exist unless there is an agreement by which a business

22   owner "engage[s] in the business of offering, selling, or distributing goods or services under a

23   marketing plan or system prescribed in substantial part by a franchisor" *and* does so using the

24   franchisor's "trademark, service mark, [or] trade name" *and* is "required to pay . . . a franchise fee."

25   Cal. Bus. & Prof. Code § 20001(a), (b), (c); *see also* Ex 27.

26        Franchisees are presumptively independent contractors, not employees. In the leading case,

27

28   _____

[5] Plaintiffs rely on *Vathana v. EverBank*, No. 09-02338 2010 WL 934219 (N.D. Cal. Mar. 15, 2010), which involves a claim for contract breach —*not* good faith. The defendant did the same thing to each plaintiff. Here, Jani-King's relationship with each owner turns on its own facts.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

1    decided in the context of vicarious liability, the court held that a "franchisor's interest in the

2    reputation of its entire system allows it to exercise certain controls over the enterprise without running

3    the risk of transforming its independent contractor franchisee into an agent." *Cislaw v. Southland*

4    *Corp.*, 4 Cal. App. 4th 1284, 1292 (Cal. App. 1992). Because of this starting point, "'[i]n the field of

5    franchise agreements, the question of whether the franchisee is an independent contractor or an agent

6    is ordinarily one of fact' . . . ." *Id.* (quoting *Kuchta v. Allied Builders Corp.* 21 Cal. App. 3d 541, 547

7    (1971)). To prove that owners are employees, a plaintiff must show that the franchisor exercised

8    "control beyond that necessary to protect and maintain its interest in its trademark, trade name and

9    goodwill," *Cislaw*, 4 Cal. 4th at 1296, extending to "the *means and manner* in which the result is

10   achieved." *Id.* at 1288 (quoting *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 59 (1985)).

11          The Labor Code uses the same test for employment status as the common law. The "most

12   important factor" is whether the putative employer has the right to control "the manner and means of

13   accomplishing the result desired." *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 77

14   (2009) (quotation marks omitted). The right to discharge at will, without cause, is also "strong

15   evidence in support of an employment relationship." *Id.* Other factors may be considered, including

16   whether the work done "is usually under the direction of the principal or by a specialist without

17   supervision"; whether the principal supplies the tools used; whether payment occurs by the job or by

18   the hour; and whether the parties believe they are creating an employee-employer relationship. *Id.*

19          None of the common evidence Plaintiffs cite establishes employment status.[6] They claim that

20   Jani-King "[i]n effect . . . treats franchises like 'at-will' employees." Dkt. 52 at 34. But they are forced

21   to use the words "[i]n effect" because owners' franchise relationships are not actually at will. In

22   reality, "no franchisor may terminate a franchise prior to the expiration of its term, except for good

23   cause." Cal. Bus. & Prof Code § 20020.  This factor favors contractor status.

24          On the critical issue of control, the common evidence Plaintiffs cite shows nothing more than

25

26   _____

       [6] Plaintiffs' prominent reliance on their Exhibit 15 to show that Jani-King has admitted it "is the
27   employer of franchisees" is unfounded. Dkt. No. 52 at 5. The document they reference is unique and
       relates to a franchise owner's need to verify for immigration purposes his status as the employee of
28   the corporation that runs his franchise. Ex. 3 ¶ 30.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
CASE NO. CV 09-03495
DM_US:23405263_1

1    that which makes the owners franchisees. They point to Jani-King's commercial cleaning system that

2    franchise owners must follow, including training, cleaning procedures, bidding and contract

3    documents, uniform requirements, and pricing. Dkt. 52 at 19, 27. But an owner *must* distribute

4    services "under a . . . system prescribed in *substantial part* by a franchisor," or else it is not a

5    franchise. Cal. Bus. & Prof Code § 20001(a) (emphasis added). Plaintiffs also point to the

6    requirement of using Jani-King uniforms. But an owner *must* operate under the franchisor's

7    "trademark, service mark, [or] trade name"—or else it is not a franchise. Cal. Bus. & Prof Code

8    § 20001(b).

9         To prove an owner was an employee, Plaintiffs would have to show control "*beyond* that

10   necessary to protect and maintain [Jani-King's] interest in its trademark, trade name and goodwill,"

11   *Cislaw*, 4 Cal. App. 4th at 1296 (emphasis added). Trying to meet this standard, Plaintiffs assert that

12   Jani-King "strict[ly] supervis[es]" franchise owners' work. Dkt. No. 52 at 19. But none of the deposed

13   owners confirmed this. *E.g.*, Ex. 14 at 93, 94; Ex. 7 at 96; Ex. 16 at 55; Ex. 12 at 59; Ex. 13 at 79; Ex.

14   17 at 72; Ex. 8 at 66-68; Ex. 11 at 74-75; Ex. 15 at 66. They instead testified that Jani-King inspects

15   the *results* of their work from time to time to assure compliance with Jani-King's franchise standards.

16   Ex. 12 at 59; Ex. 13 at 67-73; Ex. 28; *see also* Ex. 5¶¶ 28, 41, 48; Ex. 26 at JK Juarez 7011. Jani-

17   King's inspection reports evaluate results, not day-to-day performance. Ex. 28. Many deponents

18   testified they trained their employees, Ex. 9 at 112; Ex. 1 ¶ 25, and supervise them, Ex. 9 at 112; Ex. 1

19   ¶ 24. At least one employed a manager who assisted with this oversight. Ex. 4 ¶ 13. If franchise

20   owners exist who have been "strictly supervised" by Jani-King, they can only be found through a

21   franchise-by-franchise inquiry. *See* Ex. 5 ¶¶ 15, 36-46.

22        Plaintiffs' assertion that Jani-King has the "exclusive power" to determine which accounts are

23   offered and transferred also was not confirmed by any of the deponents. Dkt. No. 52 at 19. Owners

24   are free to obtain and bid their own accounts—and many do. *See* Ex. 2 at ¶ 15; Ex. 3 ¶ 23; Ex. 4 ¶ 16;

25   Ex. 5 ¶ 54. They also may turn in accounts. *E.g.*, Ex. 9 at 136-37; Ex. 13 at 87-88; Ex. 7 at 119-20. As

26   the franchisor, Jani-King reserves the right to transfer accounts away from non-performing owners,

27   Ex. 26 at JK Juarez 7019-20, which is necessary to protect the integrity and goodwill of Jani-King's

28   system. *See* Ex. 5 ¶ 41. If owners exist over whom Jani-King has exercised "exclusive power"

16

regarding transferring accounts, they can only be found through a franchise-by-franchise inquiry.

With regard to the "other factors," Jani-King does not provide any of the deponents with tools, equipment, or transportation. Ex. 8 at 125; Ex. 11 at 28; Ex. 15 at 74; Ex. 1 at ¶ 36. It also pays them by the job, not by the hour. *See* Exs. 31-33. Most of the deponents in this case hire their own employees. *See* Facts Part I, *supra*, lines 13-16. Jani-King did not interview these owners' employees, Ex. 8 at 60; Ex. 9 at 115; Ex. 7 at 93, did not pay the employees, Ex. 2 ¶ 20, and does not know who they are, Ex. 1 ¶ 22. No deponent alleged that Jani-King could fire (or had fired) his or her employees. Ex. 9 at 113; Ex. 7 at 93. Many deponents testified that their clients set the hours their properties may be cleaned. Ex. 8 at 126; Ex. 10 at 82-83; *but see* Ex. 12 at 27-28. Some owners negotiate the optimum cleaning time with their clients. Ex. 17 at 35-36. Many deponents testified that they determine how long it will take to clean an account, and set their employees' pay accordingly. Ex. 4 ¶ 14, 20; Ex. 1 at ¶ 35. Many deponents testified that they have direct contact with their clients regarding complaints. Ex. 10 at 90-91; Ex. 17 at 143-44; Ex. 1¶ 40, Ex. 4 ¶ 24; *but see* Ex. 8 at 95. None of these factors provides common evidence of an employment relationship.

### D. Litigating Plaintiffs' unfair competition claims will require discovery from, and separate rulings for, each franchise owner.

Plaintiffs admit that their claims based on the **unlawful prong** of the UCL are derivative and stand or fall with the predicate claims on which they depend. *See* Dkt. 52 at 26. The underlying claims should not be certified, so neither should the UCL claims.

Plaintiffs' claims under the **fraudulent prong** of the UCL turn on individual evidence because, as demonstrated above, Jani-King's franchise owners did not all receive a single, standard written or oral misrepresentation or omission. Plaintiffs rely on cases in which the members of the putative class all received a single, uniform, material misrepresentation, where courts will sometimes grant certification. Dkt 52 at 25. But courts deny certification when the class members did not all receive a single common misrepresentation because of the predominance of individual issues. *See, e.g., Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623-24 (S.D. Cal. 2007); *Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-00151, 2009 WL 2997389 (C.D. Cal. Sept. 14, 2009); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631-33 (2010) (granting mandamus and ordering

1    decertification where alleged misrepresentation not commonly received because "one who was not

2    exposed to the alleged misrepresentations" has no UCL claim); *Cohen v. DIRECTV, Inc.*, 178 Cal.

3    App. 4th 966, 979 (2009); *Kaldenbach v. Mut. Of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 849

4    (2009) (distinguishing cases that "involved identical misrepresentations and/or nondisclosures by the

5    defendants made to the entire class"). Although the California Supreme Court held in *In re Tobacco II*

6    *Cases*, 46 Cal. 4th 298 (2009), that only the named plaintiffs in a class action must prove individual

7    reliance and injury to establish standing under the UCL, "the issue of 'standing' simply is not the

8    same thing as the issue of 'commonality.'" *Cohen*, 178 Cal. 4th at 981. The UCL does not

9    "authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never

10   exposed in any way to an allegedly wrongful business practice." *Id.* at 980. So if individual proof is

11   required to establish exposure, as it is here, the claims must be litigated individually rather than as a

12   class. *Id.*; *Avritt v. Reliastar Life Ins. Co*, --- F.3d ---, 2010 WL 3168453, at *8-9 (8th Cir. Aug. 12,

13   2010) (denying certification of UCL claims).

14        Plaintiffs' claims under the **unfair prong** of the UCL also turn on individual evidence under

15   either of the three possible governing tests. In *Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.

16   4th 163, 184 (1999), the California Supreme Court held that "courts may not apply purely subjective

17   notions of fairness" to determine UCL liability and adopted a specific test for claims brought by

18   competitors. It did not, however, settle the rule for consumer claims. *Id.* at 187 n.12. Three tests are

19   competing to fill the void. One test requires courts to examine the challenged practice's "impact on its

20   alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *S.*

21   *Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999) (quotation marks

22   omitted); *see Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). The second

23   test requires a plaintiff to prove "conduct that threatens an incipient violation of [a] law, or violates

24   the policy or spirit of one of [the] laws because its effects are comparable to or the same as a violation

25   of the law." *Cel-Tech*, 20 Cal. 4th at 187; *see also Lozano*, 504 F.3d at 736. A third test—which Jani-

26   King believes is correct—adopts the approach of the Federal Trade Commission and requires

27   plaintiffs to prove three elements: (1) the consumer injury must be substantial; (2) it must not be

28   outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury

18

that consumers themselves could not reasonably have avoided. *See, e.g., Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 597-98 (2009).

Although courts have sometimes certified unfairness claims when a defendant made a single, uniform disclosure to all class members, *see Lozano*, 504 F.3d at 737 (affirming certification, "[t]hough we might have decided the issue differently"), more often they have denied certification even there because of the individual nature of the required balancing of the impact on the alleged victim against the reasons, justifications, and motives of the defendant. *See, e.g., Menagerie Prods. v. Citysearch, Inc.*, No. CV 08-4263, 2009 WL 3770668, at *14 (C.D. Cal. Nov. 9, 2009). In cases without a common disclosure, class certification should be denied.

Plaintiffs perfunctorily advance four theories of unfairness but have not shown how any of them can be tried with common proof.  First, they argue that Jani-King's fees are excessive under the UCL. This turns on individual evidence because owners value services differently. Plaintiffs may complain about the accounting fee, for example, but many owners find it valuable. *See* Ex. 4 ¶ 25; Ex. 1 ¶ 13, 18 ; Ex. 2 ¶ 10; Ex. 3 ¶ 19; Ex. 11 at 93; Ex.13 at 66-67. Owners also incur different fees depending on their own choices, such as whether to generate their own new business or pay finder's fees to Jani-King. *E.g.*, Ex. 1 ¶¶ 16-18; Ex. 2 ¶¶ 13-14; Ex. 3 ¶¶ 15-16, 20; Ex. 4 ¶ 16-17.

Second, Plaintiffs argue that it was unfair for Jani-King not to translate its documents into languages other than English. This is an individual claim because many owners did not need translations. Other owners provided their own interpreters. Ex. 11 at 16, 18, 87, 98-99. Some Jani-King employees required non-English-speaking prospects to use interpreters. Ex. 18 at 47. And all this assumes that fairness required translations, which it did not. The statute Plaintiffs  cite, Cal. Civ. Code § 1632, requires translation only for specific categories of documents, not including franchise agreements, and only if the agreement was negotiated in another language. Jani-King does not separately negotiate the terms of its franchise agreements, *see* Cal. Corp. Code § 31110; *see* 10 CCR 310.000.2; *see generally* Ex. 26, so Section 1632 does not apply.

Third, Plaintiffs argue that the non-compete provision in Jani-King's contracts is unfair. This is an individual issue because most owners, unlike the Juarezes, *see* Dkt. No. 47, Riley Decl., Ex. A at ¶¶ 20-44, have not set up competing businesses and hence there is no ripe controversy. Moreover,

non-compete agreements are enforceable during the term of the franchise. *See Comedy Club, Inc. v. Improv. W. Assocs.,* 553 F.3d 1277, 1293-94 (9th Cir. 2009). Plaintiffs cite two post-term cases but no plaintiff in this case asserts that Jani-King has sought to enforce the covenant not to complete after a franchise has been terminated, so there is no such issue here. *See East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 404 (1977).

Fourth, Plaintiffs argue that Jani-King's refund policy is unfair, but no named Plaintiff has standing to raise this claim because the evidence shows that Jani-King satisfied its initial business obligation to each one. Ex. 9 at 103-04; Ex. 34; *East Texas*, 431 U.S. at 404. Moreover, determining the unfairness of the refund is just as individualized as determining which owners received sufficient offers of business.  *See* Argument I.B, *supra*.

None of Plaintiffs' unfairness claims is a true class claim.

## II.     Plaintiffs' Employment Classification Claims Do Not Fall Within Rule 23(b)(2) Because They Seek Predominantly Monetary Relief.

Rule 23(b)(2) allows certification of a class when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) does not require notice to absent class members, and it does not allow class members to opt out, so it "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Adv. Comm. Notes to 1966 Amends. to Rule 23(b)(2). Here, Plaintiffs contend that Jani-King has not paid them minimum wages or overtime wages and has not reimbursed them for out-of-pocket expenses. Am. Compl., Dkt. 32, ¶¶193-204, 209-12 (Counts 8, 9, and 11). To compensate these alleged harms, they seek damages. Because monetary relief is the predominant relief in Plaintiffs' claims, Rule 23(b)(2) does not apply.

In a recent *en banc* decision, the Ninth Circuit held that a Rule 23(b)(2) class is improper when the monetary relief sought in a lawsuit is "superior in strength, influence, or authority to injunctive and declaratory relief." *Dukes*, 603 F.3d at 616 (*en banc*) (quotation marks and brackets

omitted).[7] To make this determination, courts consider whether the request for monetary relief "determines the key procedures that will be used," "introduces new and significant legal and factual issues," "requires individualized hearings," or "raise[s] particular due process and manageability concerns" because of "its size and nature—as measured by recovery per class member." *Dukes*, 603 F.3d at 617. "[N]o single factor [is] determinative." *Id.*

**A.    Inactive owners seek predominantly monetary relief because they lack standing to seek injunctive relief.**

Plaintiffs' proposed class includes many inactive owners who have not billed any work in the last year. For these owners, the Rule 23(b)(2) analysis is simple: they seek only monetary relief because that is the only relief they have standing to pursue. Injunctive relief is meaningless to them because they have no ongoing working relationship with Jani-King. The Ninth Circuit recently decertified a Rule 23(b)(2) class as to former employees, holding that "it is difficult to say that monetary relief does not predominate with respect to claims by plaintiffs who lack standing to seek injunctive or declaratory relief." *Dukes*, 603 F.3d at 623; *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204-05 (S.D.N.Y. 2006) (denying certification of Rule 23(b)(2) class for employment misclassification claims brought by former workers). This Court should deny certification of a Rule 23(b)(2) class for inactive owners.

**B.    Active owners seek predominantly monetary relief that is significant in amount and will require individual discovery and hearings.**

Monetary relief predominates even in the claims of active owners, as shown by the *Dukes* factors. Plaintiffs' demands for overtime wages, minimum wages, and out-of-pocket expenses "introduce[] new and significant legal and factual issues" into the case—including how much each owner worked, how much they got paid, and what business expenses they actually incurred. *Dukes*, 603 F.3d at 617. Each of these new issues will require discovery from each owner and subsequent "individualized hearings." *Dukes*, 603 F.3d at 617. Many of the owners received payments, not just

---

[7] In adopting this standard, the Ninth Circuit admittedly created a three-way circuit split. *Dukes*, 603 F.3d at 616. To preserve the issue for appeal, Jani-King objects to the *Dukes* standard and maintains that the correct standard is the one adopted in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415-16 (5th Cir. 1998).

21

for their own work, but for the work of their employees, further complicating the issue of monetary relief. *See* Facts Part I, lines 13-16, *supra*. Moreover, Plaintiffs' demands for damages "raise particular due process and manageability concerns" because of their "size and nature—as measured by recovery per class member." *Dukes*, 603 F.3d at 617. The damages claims for wages and business expenses over the class period can run into the tens of thousands of dollars per owner. *E.g.*, Ex. 3 ¶ 11; Ex. 4 ¶ 4.

Other courts, recognizing these issues, have denied Rule 23(b)(2) certification of employee misclassification claims. In *Edwards v. Publishers Circulation Fulfillment, Inc.*, --- F.R.D. ---, 2010 WL 2428083 (S.D.N.Y. June 17, 2010), the court denied certification of a class of former delivery drivers because it concluded that they sought predominantly monetary relief:

> [Plaintiffs] ask only that this Court declare that the deliverers are employees and not independent contractors. *Such a declaration, however, would serve no purpose other than to set the stage for the recovery of money damages under the New York Labor Law*. In consequence, the claim for money damages predominates and certification under Rule 23(b)(2) would be inappropriate.

*Id.* at *23-24 (emphasis added); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (same).[8]

## III. Plaintiffs' Claims Do Not Satisfy the Typicality Or Representational Adequacy Requirements of Rule 23(a).

### A. The named plaintiffs cannot adequately represent the proposed class.

The adequate-representation requirement of Fed. R. Civ. P. 23(a)(4) exists "to satisfy due process," which requires that "absent class members . . . be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

#### 1. The Juarezes are not adequate class representatives because they are subject to counterclaims and unique defenses and lack credibility.

The Juarezes cannot adequately represent other owners because, while Jani-King franchisees, they opened a competing commercial cleaning business, siphoned away Jani-King clients for their

---

[8] *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, --- F.R.D. ---, 2008 WL 7764456, at *30, *76 (N.D. Ind. Mar. 25, 2008), is inapposite because it did not involve franchises and the court did not assess the predominance of monetary relief.

HOWREY LLP

1    own private benefit, and concealed their actions from Jani-King. Ex. 9 at 17-18; Ex. 10 at 18. These

2    actions directly undercut the class claims regarding the amount of work available. The Juarezes'

3    breach of their in-term non-compete agreement provides a defense to their claims for breach of the

4    covenant of good faith and fair dealing in the franchise agreement, *see Comedy Club, Inc*, 553 F.3d at

5    1293-94, and their actions in hiding their work servicing former Jani-King customers severely

6    challenges their credibility. *See* Ex. 9 at 13, 22.

7           A "motion for class certification should not be granted if there is a danger that absent class

8    members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v.*

9    *Dataproducts Co.*, 976 F.2d 497, 508-09 (9th Cir. 1992); *see also Gary Plastic Packaging Co. v.*

10   *Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 179-80 (2d Cir. 1990); *Gartin v. S & M Nutec*

11   *LLC*, 245 F.R.D. 429, 434 (C.D. Cal. 2007). The same rule applies to representatives who are subject

12   to well-founded counterclaims. *Globe Surg. Supply v. Geico Ins. Co.*, 59 A.D.3d 129, 145 (N.Y. App.

13   Div. 2008). And, when named plaintiffs are "vulnerable to serious attacks upon their credibility," it is

14   unfair to saddle other class members with those problems. *Kline v. Wolf*, 702 F.2d 400, 401-02 (2d

15   Cir. 1983). All of these cases apply to the Juarezes. They are not adequate representatives for other

16   owners.

17                  **2.      There is a conflict of interest between owners who manage multiple
                            employees and owners who mostly perform the labor themselves.**
18

19          A fundamental conflict of interest among owners also precludes certification of a class. "It is

20   well-established that class representatives are inadequate if they seek relief that putative class

21   members do not wish to seek." *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 577-78 (C.D. Cal. 2010).

22   Here, Plaintiffs seek reclassification of themselves as employees. Other owners, however, who have

23   successfully built their businesses and are themselves employers receiving the profits from the labor

24   of their own employees, want no part of this relief. *E.g.*, Ex. I ¶ 33; Ex. 2 ¶ 22. Successful owner-

25   employers benefit from running their own businesses, hiring others, and deducting business expenses

26   from their taxes. *See, e.g.*, Ex. 2 ¶ 22; Ex. 1 ¶ 33-34.

27          Class certification is not proper where, as here, material differences within the proposed class

28   lead some members to oppose the relief sought by plaintiffs. *See Mayfield v. Dalton*, 109 F.3d 1423,

1427 (9th Cir. 1997) (no adequate representation for claims that DNA repository violated constitution because "there were undoubtedly people among the broad class . . . who did not oppose the repository, and who, in fact, approved of it"); *Alberghetti*, 263 F.R.D. at 577-78 (no adequate representation where conflict over relief); *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136, 2006 WL 4393465, at \*7-8 (C.D. Cal. Sept. 7, 2006) (no adequate representation for claims challenging interruptible meal periods because "a sizeable segment of the absent class members has on-duty meal periods and does not want the validity of their agreements challenged"). "This is not a case where some class members might prefer to leave violation of their rights unremedied. We have here a conflict between the interests of the putative representative and members of the class." *Mayfield*, 109 F.3d at 1427 (citations omitted).

### B. Plaintiffs do not satisfy the typicality requirement.

The typicality requirement considers whether the claims of the class representatives are typical of those of the class and is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997); *see also Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001). As demonstrated above, each owner's claim arises out of events unique to that owner. In the course of proving their own claims, the named Plaintiffs will not prove any other owner's claims, which precludes a finding of typicality.

## CONCLUSION

For the foregoing reasons, the Court should deny class certification.

Dated:  August 18, 2010

**HOWREY LLP**

**FAEGRE & BENSON, LLP**

_____/s/ Aaron Van Oort_____
Aaron Van Oort
Attorneys for Defendants
JANI-KING OF CALIFORNIA, INC.,
JANI-KING, INC., and JANI-KING
INTERNATIONAL, INC.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28