1    WHITNEY HUSTON (SBN 234863)
     (whuston@sturdevantlaw.com)
2    THE STURDEVANT LAW FIRM
     A Professional Corporation
3    354 Pine Street, Fourth Floor
     San Francisco, CA  94104
4    Telephone:  (415) 477-2410
     Facsimile:   (415) 477-2420
5
     MARK TALAMANTES (SBN 187961)
6    (mark@e-licenciados.com)
     JENNIFER A. REISCH (SBN 223671)
7    (jennifer@e-licenciados.com)
     TALAMANTES/VILLEGAS/CARRERA, LLP
8    170 Columbus Avenue, Suite 300
     San Francisco, CA 94133
9    Telephone:  (415) 989-8000
     Facsimile:   415) 989-8028
10
     MONIQUE OLIVIER (SBN 190385)
11   (monique@dplolaw.com)
     DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
12   235 Montgomery St., Suite 1010
     San Francisco, CA  94104
13   Telephone: (415) 433-0333
     Facsimile:  (415) 449-6556
14
     Attorneys for Plaintiffs and the Putative Plaintiff Class
15
     (ADDITIONAL COUNSEL LISTED ON LAST PAGE)
16
                    **UNITED STATES DISTRICT COURT**
17                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
18

| | |
|---|---|
| 19  ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO, and MARIA PORTILLO, individually and on behalf of all others similarly 20  situated, | Case No.:   CV09-03495 SC **CLASS ACTION** |
| 21          Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| 22  v. | |
| 23  JANI-KING OF CALIFORNIA, INC., a Texas Corporation; JANI-KING, INC., a Texas 24  Corporation; JANI-KING INTERNATIONAL, INC., a Texas corporation; and DOES 1 through 25  20, inclusive, | Date:          September 17, 2010 Time:          10:00 am Courtroom:  1, 17th Flr. Judge:         Hon. Samuel Conti |
| 26          Defendants. | Complaint filed:   June 22, 2009 |

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CRTIFICATION; CASE NO. CV 09-03495 SC

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................1

      A.    Plaintiffs' Labor Code Claims May be Certified under Rule 23(B)(2) OR (B)(3). ...........1

            1.    Plaintiffs' Claims Are Proper for Certification under Rule 23(b)(2) Because They Seek Meaningful Injunctive Relief. .............................................1

            2.    Plaintiffs' Labor Code Claims Should Be Certified Under (b)(3) Because Common Questions Predominate. .......................................................2

                  a)    Jani-King Misstates the Legal Principles that Govern Its Misclassification of Putative Class Members. .......................................2

                  b)    Plaintiffs' Misclassification Claim is Amenable to Class Treatment. .................................................................................................4

      B.    Plaintiffs' Breach of Implied Covenant Should Be Certified. ................................................................................6

      C.    Plaintiffs' Fraud-Based Claims Should Be Certified ..........................................9

            1.    Plaintiffs' Claims Based Upon JK's Standardized Misrepresentations and Omissions Are Appropriate for Certification. ...............................................9

            2.    The Statute of Limitations Is Not a Bar to Certification. .................................10

            3.    Plaintiffs Can Demonstrate Reliance by Common Proof. ...............................10

      D.    Plaintiffs' UCL Claims Are Appropriate for Class Certification. .....................12

            1.    Plaintiffs' Unfair Claims Present Predominant Common Questions that Can Be Proven with Common Evidence. ..............................................................12

      E.    Plaintiffs Will Fairly and Adequately Represent the Proposed Class. ...........................14

            1.    JK Cannot Defeat the Juarezes' Adequacy By Attacking Them for Conduct that Is Protected under California Law. ...............................................14

            2.    There Is No Conflict of Interest Between Plaintiffs and the Proposed Class. ...............................................................................................................15

III.  CONCLUSION ..................................................................................................16

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Alberghetti v. Corbis Corp.*,
    263 F.R.D. 571 (C.D. Cal. 2010) .......................................................................15

4

5

*Breeden v. Benchmark Lending Group. Inc.*,
    229 F.R.D. 623 (N.D. Cal. 2005).......................................................................14

6

*Chavez v. Blue Sky*,
    --- F.R.D. ---, 2010 WL 2528525 (N.D. Cal. Jun. 18, 2010)................................10, 11

7

8

*Comedy Club, Inc. v. Improv West Associates*,
    553 F.3d 1277 (9th Cir. 2009) .......................................................................13

9

10

*Dalton v. Lee Publ'ns, Inc.*,
    --- F.R.D. ---, 2010 WL 2985130 (S.D. Cal. Jul. 27, 2010) ............................... passim

11

*De Giovanni v. Jani-King International, Inc.*,
    262 F.R.D. 71 (D. Mass. 2009).......................................................................11

12

13

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) .......................................................................1, 2

14

15

*In re Energy System Equip. Leasing Sec. Litigation*,
    642 F.Supp. 718 (E.D.N.Y. 1986) .......................................................................10

16

17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................14

18

19

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .......................................................................10, 14

20

*Keach v. U.S. Trust Co. N.A.*,
    313 F.Supp.2d 818 (2004)
    *aff'd*, 419 F.3d 626 (7th Cir. 2005).......................................................................7

21

22

*Huberman v. Tag-It Pac., Inc.*,
    314 Fed. Appx. 59 (2009) .......................................................................14

23

24

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands*,
    244 F.3d 1152 (9th Cir. 2001) .......................................................................14

25

26

*Lozano v. AT&T Wireless Services Inc.*,
    504 F.3d 718 (9th Cir. 2007) .......................................................................12

27

28

*Lanzarone v. Guardsmark Holdings, Inc.*,
    2006 WL 4393465 (C.D. Cal. 2006) ...................................................................15

*Mayfield v. Dalton*,
    109 F.3d 1423 (9th Cir. 1997) ........................................................................15

*Mazza v. America Honda Motor Co.*,
    254 F.R.D. 610 (C.D. Cal. 2008) .....................................................................10

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
    2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ....................................................15

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ...........................................................................1

*Morden v. T-Mobile USA, Inc.*,
    2006 WL 2620320 (W.D. Wash. Sep. 12, 2006) ................................................15

*Moua v. Jani-King of Minn, Inc.*,
    2010 WL 935758 (D. Minn. Mar. 12, 2010)....................................................8, 11

*Narayan v. EGL, Inc.*,
    --- F.3d ---, 2010 WL 3035487 (9th Cir. Aug. 5, 2010) .................................3, 4, 5

*Plascencia v. Lending 1st Mortg.*,
    259 F.R.D. 437 (N.D. Cal. 2009) .....................................................................11

*Probe v. State Teachers Ret. Sys.*,
    780 F.3d 776 (9th Cir. 1986) ..........................................................................15

*Quezada v. Loan Ctr. of Cal., Inc.*,
    2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ...................................................11

*Rubio v. Capital One Bank*,
    --- F.3d ---, 2010 WL 2836994 (9th Cir. Jul. 21, 2010)........................................12

*Smith v. Cardinal Logistics Mgmt. Corp.*,
    2008 WL 4156364 (N.D. Cal. Sep. 5, 2008)......................................................15

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
    527 F.Supp.2d 1053 (N.D. Cal. 2007) ..............................................................10

*Wilder v. Bernstein*,
    499 F.Supp. 980 (S.D.N.Y. 1980).....................................................................15

*In re Worldcom Inc., Sec. Litigation*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ......................................................................10

*Yokoyama v. Midland National Life Insurance Co.,*
    594 F.3d 1087 (9th Cir. 2010) ..................................................................10, 11

**STATE CASES**

*Cislaw v. Southland Corp.,*
    4 Cal.App.4th 1284 (1992) ....................................................................................4

*Cohen v. DIRECTV, Inc.,*
    178 Cal.App.4th 966 (2009) ................................................................................11

*Cristler v. Express Messenger System, Inc.,*
    171 Cal.App.4th 72 (2009) ................................................................................3, 4

*Dowell v. Biosense Webster, Inc.,*
    179 Cal.App.4th 564 (2009) ................................................................................13

*Edwards v. Arthur Andersen LLP,*
    44 Cal.4th 937 (2008) ..........................................................................................13

*Engalla v. Permanente Medical Group, Inc.,*
    15 Cal.4th 951 (1997) ..........................................................................................11

*Estrada v. FederalEx Ground Package System, Inc.,*
    154 Cal.App.4th 1 (2007) ......................................................................................4

*Guz v. Bechtel National, Inc.,*
    24 Cal.4th 317 (2000) ........................................................................................6, 8

*Kavruck v. Blue Cross of Cal.,*
    108 Cal.App.4th 773 (2003) ..................................................................................7

*Kuchta v. Allied Builders Corp.,*
    21 Cal.App.3d 541 (1971) ......................................................................................4

*Morgan v. AT&T Wireless Services, Inc.,*
    177 Cal.App.4th 1235 (2009) ..............................................................................11

*Newell v. State Farm General Insurance Co,*
    118 Cal.App.4th 1094 (2004) ................................................................................8

*Nichols v. Arthur Murray, Inc.,*
    248 Cal.App.2d 610 (1967) ....................................................................................4

*Overstock.com, Inc. v. Gradient Analytics, Inc.,*
    151 Cal.App.4th 688 (2007) ................................................................................12

*S.G. Borello & Sons, Inc. v. Dept. of Indus. Rltns.*,
        48 Cal. 3d 341 (1989) ............................................................................................3, 5, 15

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
        100 Cal.App.4th 44 (2003) .................................................................................................8

*In re Tobacco II Cases*,
        46 Cal.4th 298 (2009) ................................................................................................10, 11

*Weinstat v. Dentsply International, Inc.*,
        180 Cal.App.4th 1213 (2010) .........................................................................................11

*Wickham v. Southland Corp.*,
        168 Cal.App.3d 49 (1985) ..................................................................................................4


## STATE STATUTES

California Business & Professions Code
        § 16600 ........................................................................................................................13
        § 20001 *et seq* ..............................................................................................................3
        § 20037 ..........................................................................................................................3

California Labor Code
        § 3357 ............................................................................................................................3

I.    **INTRODUCTION**[1]

Jani-King's business model – franchising – necessarily treats all class members (Jani-King's ("JK") purported "franchisees") similarly.  JK uses the same sales presentation, the same contract, and the same invasive controls of class members' work, including owning and controlling all of the class members' cleaning accounts.  This case was made for class certification.

There are several matters *not* at issue on this motion.  JK does not contest numerosity, commonality, adequacy of class counsel, or superiority.  In addition, JK concedes numerous facts about the centralized and hierarchical nature of its business, but argues that these facts all show that the proposed class of janitorial workers are bona fide JK franchisees rather than its employees.

JK's concessions prove the propriety of class certification here.  JK spends much of its brief pointing to "individualized" issues.  Yet, with respect to Plaintiffs' labor claims, JK does not argue that some franchisees may be employees while others franchisees are not.  It simply argues that *all* putative class members are franchisees.  Similarly, with respect to Plaintiffs' fraud, breach, and UCL claims, JK does not argue that some class members have different contractual obligations, or are subject to different policies and procedures.  These claims rely upon information that JK has presented or withheld from the class as a whole.  The individualized issues JK conjures are inapposite to class treatment.  Certification of all claims is proper.

II.   **ARGUMENT**

A.    **Plaintiffs' Labor Code Claims May be Certified under Rule 23(b)(2) or (b)(3).**

1.    **Plaintiffs' Claims Are Proper for Certification under Rule 23(b)(2) Because They Seek Meaningful Injunctive Relief.**

Class certification is appropriate where the plaintiffs seek meaningful injunctive relief.  *Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003); *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 617 (9th Cir. 2010) (en banc).  JK contends that Plaintiffs cannot satisfy Rule 23(b)(2) because (1) "inactive owners" do not have standing to pursue injunctive relief; and (2) "active owners" seek predominantly monetary relief.  (Opp. [Dkt.

---

[1]  Plaintiffs' First Amended Complaint alleges fourteen causes of action.  Plaintiffs are moving for certification of all claims except Plaintiffs' Second Cause of Action for Violation of Corporations Code § 31202, Plaintiffs' Sixth Cause of Action for Breach of Contract, Plaintiffs' Eighth Cause of Action for overtime violations, and Plaintiffs' Thirteenth Cause of Action for Violation of Labor Code § 450.

77] 20:12-22:15.)  Neither of these statements is correct.

First, JK offers no authority for the proposition that "inactive" class members cannot pursue injunctive relief.  These individuals have an ongoing business relationship with JK.  JK still contends that they are franchise owners and not employees, and still contends that they are bound by franchise contracts.  "Inactive" class members are not, nor does JK contend they are, former employees who have severed all ties with JK.  Second, "active" class members do not seek, as JK contends, primarily "significant" monetary relief.  (Opp. 21:18-22:15.)  Like the class at issue in *Dukes*, the proposed class here seeks meaningful injunctive relief that would apply to and benefit the class as a whole.  (*See* Mot. [Dkt. 52] 21:23-23:1.)

JK does not dispute the injunctive relief sought, but instead claims that class members' damages "can run into the tens of thousands of dollars" per class member and thus raise "manageability concerns."  (Opp. 22:2-6.)  But certification under (b)(2) "turns on the primary goal and nature of the litigation – not the theoretical or possible size of the total damages award."  *Dukes*, 603 F.3d at 618.

### 2.    Plaintiffs' Labor Code Claims Should Be Certified Under (b)(3) Because Common Questions Predominate.

#### a)    Jani-King Misstates the Legal Principles that Govern Its Misclassification of Putative Class Members.

JK does not dispute that Plaintiffs' Labor Code claims are premised on the allegation that they are employees, not independent contractors, and that resolution of their employment status is a central issue in this case.  JK's contention that these claims are not amenable to class treatment is, instead, based upon its misapplication of California law governing Plaintiffs' employment status and its failure to appreciate the common evidence that corresponds to that law.

JK's principal argument is that "Franchisees are presumptively independent contractors, not employees."  (Opp. 14:26).  But this argument is unsupported by any legal authority and employs a circular logic that ignores Plaintiffs' class definition.  Further, even if this were the case, JK fails to articulate how this "presumption" makes Plaintiffs' claims inappropriate for certification.

Plaintiffs have defined the proposed class as "all persons who have performed janitorial work on cleaning accounts as JK 'franchisees' within the State of California" during the class period. (Mot. 1.)  JK does not dispute that Plaintiffs have performed work for JK as "franchisees."  Plaintiffs and the members of

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; CASE NO. CV 09-03495 SC

1    the proposed class are, therefore, persons who have provided services for JK, and, under California law,

2    "once a plaintiff comes forward with evidence that he provided services for an employer, the employee has

3    established a prima facie case that the relationship was one of employer/employee." *Narayan v. EGL, Inc.*,

4    --- F.3d ---, 2010 WL 3035487, at *4 (9th Cir. Aug. 5, 2010) (citing cases). Since putative class members

5    presumptively fall into the definition of "employee" under Labor Code § 3357, the burden is on JK to prove

6    otherwise. *See* Lab. Code § 3357; *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 84 (2009).

7    JK's "presumption" argument also impermissably disregards the principle that "statutes enacted to confer

8    special benefits on workers … are 'designed to defeat rather than implement contractual arrangements.'"

9    *Narayan*, 2010 WL 3035487, at *1 (citation omitted), *8.

10         JK attempts to argue that a presumption is created by the provisions of the California Franchise

11    Relations Act, Bus. & Profs. Code § 20001 *et seq.* (CFRA). The CFRA, however, does not control the

12    predominant common question of the employment status of class members. The fact that the CFRA defines

13    franchise systems as a type of "business operation" does not replace the statutory and common law definitions

14    of employment. Nothing in the CFRA says that persons who enter into franchise agreements are

15    "presumptively independent contractors, not employees." (Opp. at 14:26.) In fact, it states that, "[e]xcept as

16    expressly provided herein, nothing in this article shall abrogate the right of a franchisee to sue under any other

17    law." Bus. & Prof. Code § 20037. Similarly, CFRA's "good cause" provision to which JK cites to claim that

18    it cannot legally discharge putative class members "at will" does not supplant the fact-based test that this

19    Court must apply to Plaintiffs' misclassification claims. *S.G. Borello & Sons, Inc. v. Dept. of Indus. Rltns.*, 48

20    Cal. 3d at 341, 350-51 (1989).

21         Jani-King's argument that its uniform practices are merely evidence that it operates a bona fide

22    franchise system rather than indicators of its "right to control" as a putative employer, in any event,

23    underscores that the misclassification question can be analyzed based on common evidence and thus further

24    supports class certification. *See, e.g., Dalton v. Lee Publ'ns, Inc.*, --- F.R.D. ---, 2010 WL 2985130, at *6-7

25    (S.D. Cal. Jul. 27, 2010) (finding that "[t]he primary factor, the right to control, is also susceptible to common

26    proof … because the rights and obligations of the class members and Defendant are set forth in …

27    substantially identical contracts"); *see also Narayan*, 2010 WL 3034587, at *6-7 (contracts containing

28    automatic renewal clauses and allowing termination by either party upon notice or breach were "substantial

1   indicators of an at-will employment relationship").

2   JK's reliance on *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1292 (1992); *Wickham v.*

3   *Southland Corp.*, 168 Cal. App. 3d 49, 59 (1985); *Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 547

4   (1971) is equally inapt. (Opp. 14:26-15:10.)  These cases arise in contexts involving franchisor "agency"

5   liability to a third party where the franchisee's status as an independent contractor is not in dispute, and hold

6   that a franchisor *can* be found to be in a principal-agent relationship with a franchisee when it retains

7   "controls … beyond those necessary to protect its trade mark, trade name, and good will."  *Nichols v. Arthur*

8   *Murray, Inc.*, 248 Cal. App. 2d 610, 613-14 (1967); *Cislaw*, 4 Cal. App. 4th at 1288, 1295.  These cases thus

9   further support Plaintiffs' claim that JK's common terms, conditions, and policies – the existence of which is

10  largely undisputed (*see* Opp. 16:1-3) – create an employment relationship.

11  Finally, JK's reliance on its purported expert in franchising is misplaced.  This "expert" admits that he

12  is not an expert in California employment law, does not understand the test or requirements of California law,

13  and bases his conclusions on either unsupported assumptions or the same circular logic employed by JK.

14  (Suppl. Decl. of Jennifer Reisch in Support of Plaintiffs' Reply Brief ("Reisch Decl.") Ex. 12 at 29:25-30:4,

15  38:15-40:12, 44:10-12, 45:25-47:25, 50:20-51:10, 90:8-15, 93:12:25).  JK's claim that Plaintiffs are trying to

16  take down franchising as we know it (Hunter Decl. Ex. 5 ¶ 53), is overblown, unsupported, and distracts from

17  the real legal issues here (Reisch Decl. Ex. 12 at 128:7-14, 132:13-25).  Further, the fact that franchising is a

18  regulated industry has no bearing on what test should apply to determine whether an employment relationship

19  exists.  Many heavily regulated industries have been sued for misclassifying workers as independent

20  contractors.  *See, e.g., Narayan, supra*, 2010 WL 3035487; *Estrada v. FedEx Ground Package Sys., Inc.*, 154

21  Cal. App. 4th 1 (2007); *Cristler, supra*, 171 Cal. App. 4th 72.

22  JK's labelling of putative class members not only as independent contractors, but as "franchise

23  owners," is simply another layer of bells and whistles on top of an otherwise typical misclassification scheme

24  similar to those which many other courts have permitted plaintiffs to challenge through the class action

25  device.  (*See* Mot. 9:3-10:7 (listing cases).)

26  **b)      Plaintiffs' Misclassification Claim is Amenable to Class Treatment.**

27  There is no dispute that JK has uniformly classified all of the putative class members as non-

28  employee independent contractors.  JK argues that none of the common evidence Plaintiffs cite "establishes

4

1     employment status." (Opp. 15:19.)  However, this argument is both misleading and inaccurate.  It is

2     misleading because California law clearly places the burden of disproving that status on JK.  Secondly, it

3     implies that Plaintiffs must "establish" or prove the merits of their claims in order to prevail on their motion

4     for class certification, which is incorrect.  Plaintiffs only have to show that the question of their employment

5     status is a central issue to this case – which JK concedes it is – and that the criteria that will be used to address

6     this issue are susceptible to common proof.  *See, e.g., Dalton*, 2010 WL 2985130, at *5-9 (finding that

7     "resolution of [plaintiffs'] employment status is a central issue in this case").

8          JK's contention is also inaccurate because it ignores the abundant evidence which demonstrates that

9     virtually all of the primary and secondary factors upon which Plaintiffs' misclassification claim depends are

10    susceptible to common proof.[2]  A primary factor of employment status, JK's "right of control" over the

11    manner and means of accomplishing the result desired, is susceptible to common proof because "the rights

12    and obligations of the class members and Defendant[s] are set forth in ... substantially identical contracts."

13    *See Dalton*, *supra*, 2010 WL 2985130, at *6.  The terms of these common agreements can be analyzed to

14    determine whether and to what extent JK does have substantial control.  JK cannot defeat this motion by

15    cherry picking certain non-determinative facts to dispute while ignoring all other common and relevant

16    evidence.  For example, JK alleges that whether any members of the putative class were "strictly supervised"

17    by JK could only be discovered "through a franchise-by-franchise inquiry." (Opp. 16:9-21.)  However, there

18    is no requirement that a worker be "strictly supervised" for him to be deemed an employee.  The relevant

19    inquiry is whether the type of work carried out is "usually done under the direction of the principal or by a

20    specialist without supervision." *See Borello*, 48 Cal. 3d at 351 n.5; *Narayan*, 2010 WL 3035487, at *8.

21    Common sense and evidence of industry practices will show that, by its very nature, janitorial work does not

22    require "strict" or daily on-site supervision.  Thus, evidence that JK does not send its supervisors to watch

23    class members while they clean is of no moment, especially where there is so much common evidence of

24    JK's "general supervision and control." (Evid. Tab S ¶¶ 49-72; Reisch Decl. ¶¶ 2-3.)

25

26    [2] *See* Statement of Facts (Mot. 2:6-7:8); Evid. Tab S ¶¶ 3-77, and exhibits referenced therein; Reisch Decl.

27    ¶¶ 2-3, and exhibits referenced therein.  All of the classification factors, which are set forth in Plaintiffs' opening brief (Mot. 11:2-12:1), must be analyzed in light of the protective function of the Labor Code sections. *See Dalton*, 2010 WL 2985130, at *10 n.3.

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; CASE NO. CV 09-03495 SC

Likewise, the fact that some franchisees exercise their right to hire helpers, whereas others do all of the cleaning work themselves (Opp. 16:17-19, 17:4-7), is inconsequential to the employment status inquiry. The ability or right to hire helpers makes little difference where, as here, class members have no control over the amounts that JK pays them (*see* Evid. Tab S ¶¶ 38-41, 48, 63-66), and JK has the power to remove franchisees from "any or all" accounts they are servicing if they *or* the helpers they hire fail to comply with any of JK's policies.  (Reisch Decl. ¶ 4; Evid. Tab S Ex. 2 at JK 7019-20; *id.* Ex. 7 at JK 4739-45.)  For the same reason, the fact that putative class members are "free" to bid accounts (Opp. 16:23-24) is of little, if any, weight to the employment status determination, given JK's exclusive right of control over all account contracts (Evid. Tab S ¶¶ 61 & 63), including which cleaning tasks franchisees must perform on each account, how often (*id.* ¶ 61), and the amounts that franchisees will be paid for performing work on each account (*id.* ¶ 66).  Moreover, JK's own records show that JK not only reserves these rights; it *exercises* them with great frequency.  (Evid. Tab O ¶ 34 & Ex. 10 thereto.)

JK fails to negate Plaintiffs' showing that whether putative class members have been misclassified is susceptible to common proof.  After all, according to JK, the evidence apparently all points in one direction.  Common questions of law and fact predominate with respect to Plaintiffs' Labor Code claims.

## B.      Plaintiffs' Breach of Implied Covenant Should Be Certified.

Plaintiffs' breach claim is predicated on JK's contractual obligation to offer franchisees a minimum volume (in dollars) of cleaning accounts.  Plaintiffs allege that JK may "offer" the volume required by the contract, but does so in a way that breaches the implied covenant of good faith and fair dealing because JK's conduct unfairly frustrates Plaintiffs' "right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000).  JK concedes that it makes this contractual promise to all class members, but claims that JK's performance is too individualized to be amenable to class treatment because it met the initial business obligation (IBO) to some class members.  (*See* Opp. 11:16-12:15.)

JK misses the point.  The basis for Plaintiffs' claim of breach is not that JK does not meet the IBO; it is that JK's practice in doing so routinely deprives class members of actually receiving the benefits of that promise.  Thus JK's claim that it has met the IBO, and its chart in its brief (which in any event is not supported by the evidence), are irrelevant to class certification of this claim.

Implicit in JK's agreement to "offer" accounts is a promise to offer accounts that class members can

actually accept, work and earn income.  JK's practices – toward the class as a whole – demonstrate that it does nothing to ensure that the accounts offered are ones that class members can accept.  In fact, the contrary is true.  (Evid. Tab S ¶¶ 44-45.)  JK does not refute this evidence.  Instead, it claims that whether JK offered accounts in bad faith would require an individual inquiry into specific offers to specific class members.  But this claim does not require analyzing how JK handled each offer when evidence demonstrates that there is a pattern of conduct that applies to the class as a whole.  *See, e.g. Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 778 (2003) (certifying class for violation of implied covenant of good faith and fair dealing).

JK also incorrectly contends that Plaintiffs cannot rely upon what it mischaracterizes as the testimony of "two disgruntled former employees" establishing that JK does not have sufficient accounts to make good faith offers to fulfill its IBO to all franchisees, that is, JK must transfer accounts to satisfy the IBOs because it simply does not have enough business to go around.  (Evid. Tab S ¶¶ 35-36.)  First, Steve Cumbow never worked for JK and thus clearly is not a "disgruntled employee."  (Evid. Tab O ¶¶ 3-6 & Ex. 1.)  John Allen, who provided a declaration *on behalf of JK* when this case was originally removed to federal court and left JK of his own accord, can hardly been said to be disgruntled.  (Aff. of J. Allen [Dkt. 3]; Reisch Decl. Ex. 8 at 56:24-57:8.)  Second, JK's contention that Allen's statement is based on "rumors" is flatly wrong.  Allen testified that while he was in JK management, he had accounts that were improperly transferred.  (Reisch Decl. Ex. 8 at 150:3-16; 155:15-156:8; 156:17-157:25; 159:24-160:25; 166:9-21.)  Third, Cumbow's declaration is not based upon "factual speculation"; it is a preliminary report that demonstrates how JK's accounts can be analyzed classwide to determine the total number of accounts JK has in comparison to the number of franchise offers it must fulfill, as well as the frequency of transfers between franchisees, and the short length of time franchisees are actually permitted to keep an account.[3]  (Evid. Tab O ¶¶ 29-34, *see also*

---

[3]  JK also attempts to discredit Plaintiffs' expert by contradicting his testimony.  But JK's expert testimony should be afforded no weight because, as one court has already found, "Hitchner primarily substituted different numbers into [the opposing party's expert's] analysis without providing any satisfying explanation as to why the substitutions were economically valid."  *Keach v. U.S. Trust Co. N.A.*, 313 F. Supp. 2d 818, 854 (2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005).  The same is true here where Hitchner spoke to no franchise owners, did no independent research, and has no janitorial industry experience.  Instead, he spoke only to JK's management and lawyers, and replaced Plaintiffs' expert's assumptions with ones that were unfounded, yet more favorable to JK.  (Reisch Decl. ¶ 5.)

7

Reisch Decl. Ex. 8 at 180:3-181:9.)  Finally, and significantly, JK fails to refute the additional sources of evidence that Plaintiffs proffer demonstrating that JK has an incentive to churn accounts, needs to churn accounts to meet its legal obligation, and has, in-fact, churned accounts.  (Evid. Tab S ¶¶ 35-36; *see also* Reisch Decl. ¶ 4.)  Without sufficient accounts, JK cannot possibly fulfill its good faith promise to offer accounts franchisees can actually service.  JK's motivation in transferring a particular account, therefore, is not relevant to the question of breach.

Plaintiffs also support their claim of breach by presenting common evidence that JK chronically underbids its accounts.  (Evid. Tab S ¶¶ 37-38.)  JK claims that Plaintiffs' expert testimony on this issue, must be disregarded because each bid is based upon various factors.  What JK fails to recognize, however, is that the bids are based on several, *common* factors.  That is, each bid fails to account for all of the costs related to cleaning an account.  (Evid. Tab N ¶ 11; Reisch Decl. Ex. 10 at 144:9-146:16, 151:5-17, *id*. Ex. 8 at 87:4-22, 134:11-135:9.)  Remarkably, JK *admits* that these costs are not included in its bids and, thus, there is no dispute that this can be established on a classwide basis.  (Evid. Tab S ¶ 39.)

The cases JK uses to bolster its argument are not persuasive.  JK relies upon *Moua v. Jani-King of Minn, Inc.*, 2010 WL 935758 (D. Minn. Mar. 12, 2010).  There, the plaintiffs sought class certification of a breach of covenant claim under Minnesota law.  The district court declined to certify the claim, finding that common questions would not predominate.  *Id*. at *5.  Notably, however, the plaintiffs' claim included allegations that JK knew offers would not be accepted because they required work to be performed at a certain time of day and that JK fabricated customer complaints.  *Id*. at *4.  Plaintiffs here do not base their claim on JK's actions toward particular franchisees, but on JK's common policies and practices.  Minnesota law also requires a party to establish that "the adverse party has an ulterior motive for its refusal to perform a contractual duty," *id*. (citation & quotes omitted), California law instead requires only that the defendant unfairly interfered with plaintiffs' right to receive the benefits of the contract.  *See Guz*, 24 Cal. 4th at 349-50; *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2003).  JK's reliance on *Newell v. State Farm Gen. Ins. Co*, 118 Cal. App. 4th 1094 (2004) is similarly flawed, as the court in that case explicitly found that the nature of the bad faith claims required individualized assessments of coverage and extent of personal property damage, which are not required here.  *Id*. at 1103-04.

The same covenant applies to all class members, and JK breaches it in the same way with respect to

all class members.  This claim is appropriate for class certification.

**C.      Plaintiffs' Fraud-Based Claims Should Be Certified.**

**1.      Plaintiffs' Claims Based Upon JK's Standardized Misrepresentations and Omissions Are Appropriate for Certification.**

Although Plaintiffs' Motion clearly outlines JK's standardized misrepresentations and omissions to all class members (Mot. at 16:5-19), JK insists that Plaintiffs are entitled to seek certification only of a different, oral misrepresentation, and then spends the remainder of its argument contending that this misrepresentation is too individualized.  JK's attempt to recast Plaintiffs' fraud-based claims fails.

JK's initial premise – that this Court's order at the pleadings stage limits Plaintiffs' fraud-based claims to one oral misrepresentation (that JK representatives orally promised class members guaranteed income) – is incorrect.  JK's motion to dismiss focused on Plaintiffs' allegations of oral misrepresentations; this Court granted Plaintiffs leave to amend all fraud-based claims.  (Dkt. 25 at 7-13.)  Plaintiffs filed a First Amended Complaint (FAC) (Dkt. 32), which JK answered.  (Dkt. 35.)  The misrepresentations that form the basis of the claims for which they now seek certification are framed in the FAC.  (*See* FAC ¶¶ 26, 30, 81-87, 99-106, 111, 115-16, 118-20, 124.)[4]

JK's attacks on the individuality of oral misrepresentations made to class members are, therefore, misguided.[5]  The misrepresentations and omissions that underlie the claims Plaintiffs seek to certify are those that are common to the class.  The affirmative misrepresentation that class members will own their own businesses and be their own bosses is one that is made repeatedly in standardized documents, presentations and scripts, a fact which JK does not deny.  (Evid. Tab S ¶¶ 20-24; Reisch Decl. Ex. 8 at 199:16-202:9.)  Similarly, JK's concealment of specific facts that demonstrate the true cost of operating a JK franchise is an omission common to the class – the omissions flow from the representations in the standardized disclosure documents and presentations.  (Evid. Tab S  ¶¶ 35-37, 42-44.)   The fact that Plaintiffs may have also relied

---

[4]  Plaintiffs' original complaint alleged that JK guaranteed a certain amount of income to franchisees, but did not meet that guarantee.  (Dkt. 1 at 19 ¶¶ 40-41.)  In the FAC, Plaintiffs clarified that in its franchise contract, JK commits to "offering" a certain amount of income to franchisees (the IBO), and misrepresents the nature of its "offer" because it does not disclose key facts.  (FAC ¶ 30.)

[5]  JK's claim that falsity will be an individual issue is based upon the erroneous premise that Plaintiffs are alleging JK guaranteed certain levels of income.  (Opp. 8:12-9:5.)

9

upon oral conversations (which enforced the misrepresentations and omissions) is of no import. Predominance does not require that the claims of all the class members be identical. *See*, *e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007).

Moreover, JK's arguments that the representation that "franchise owners *do* own their businesses" is true and the statement that they would "be their own bosses" is puffery (Opp. 7) reinforce the propriety of certification of these claims, as these arguments admit that JK's liability will be the same for all class members. JK does not contend that some franchise owners own their own businesses and some do not, or that their statement may be puffery in some instances but not others. Similarly, their unsupportable argument that California franchise law preempts Plaintiffs' fraud-based claims (Opp. 8:3-9) runs to the class as a whole.

Plaintiffs' misrepresentation and omission claims are thus the very type of fraud-based claims that are suitable for class treatment. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010); *Chavez v. Blue Sky*, --- F.R.D. ---, 2010 WL 2528525, at *10 (N.D. Cal. Jun. 18, 2010); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 622 (C.D. Cal. 2008).

### 2.      The Statute of Limitations Is Not a Bar to Certification.

"[T]he existence of even a meritorious statute of limitations defense does not necessarily defeat class certification." *In re Worldcom Inc., Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y. 2003); *see also In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp 718, 752-53 (E.D.N.Y. 1986). The statute of limitations is only relevant to certification if the affirmative defense is unique to the named plaintiff and "threatens to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations & quotes omitted). JK does not, and cannot, make a showing that the statute of limitations defense threatens to become the focus of this litigation.

### 3.      Plaintiffs Can Demonstrate Reliance by Common Proof.

JK insists that this Court cannot certify Plaintiffs' fraud-based claims because the claims will require individualized proof of reliance. JK is mistaken for several reasons.

First, JK's reliance arguments again erroneously focus on oral misrepresentations which are *not* at issue here. Second, JK concedes, as it must, that Plaintiffs need not demonstrate individual reliance to pursue their UCL fraudulent prong claim. (Opp. 18:5-7.) *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27

---

10

1    (2009).  Its argument that "individual proof is required to establish exposure" (Opp. 18:10-11) is premised,

2    again, upon its miscasting of Plaintiffs' claims and, in any event, is not the law.  "[O]nly the named plaintiff in

3    a UCL class action need demonstrate injury and causation."  *Plascencia v. Lending 1st Mortg.*, 259 F.R.D.

4    437, 448 (N.D. Cal. 2009) (citing *Tobacco II*, 46 Cal. 4th 298).  Statements to the contrary in *Cohen v.*

5    *DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979 (2009), upon which JK relies, directly conflict with the California

6    Supreme Court's holding that relief under the UCL may be ordered "without individualized proof of

7    deception, reliance and injury."  *Tobacco II*, 46 Cal. 4th at 320; *see Morgan v. AT&T Wireless Servs., Inc.*,

8    177 Cal. App. 4th 1235, 1255-56 (2009); *Yokoyama*, 594 F.3d at 1093; *Weinstat v. Dentsply Int'l, Inc.*, 180

9    Cal. App. 4th 1213, 1223 (2010).

10        Third, JK's contention that Plaintiffs are not entitled to a presumption of reliance in their fraud claims

11    is incorrect.  In support, JK relies upon a single unpublished order in *Quezada v. Loan Ctr. of Cal., Inc.*, 2009

12    WL 5113506 (E.D. Cal. Dec. 18, 2009).  In that case, however, the district court did not address the law,

13    firmly established in California and asserted by Plaintiffs here, that a party is entitled to a presumption of

14    reliance where she can demonstrate that the misrepresentation or omissions was material.  *Id.* at *4-5;

15    *Tobacco II*, 46 Cal. 4th at 327; *Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 977 (1997) ("a

16    presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation

17    was material" (citing *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (1971))); *Chavez*, 2010 WL 2528525, at *11.

18    Thus Plaintiffs "need only make a showing that the misrepresentations were material, and that therefore a

19    reasonable trier of fact could infer reliance from such misrepresentations."  *Engalla*, 15 Cal. 4th at 977.

20        Rather than respond to any of this authority, JK then asserts that this Court should deny certification

21    of Plaintiffs' fraud-based claims as the district courts did in cases against JK in Massachusetts and Minnesota.

22    The law and claims in those cases, however, are distinct from the standardized misrepresentations at issue

23    here.  In *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71 (D. Mass. 2009) the court held that – unlike

24    California law which allows a presumption of reliance if the misrepresentation or omission is material (*see*

25    Mot. 17:20-22) – Massachusetts law requires individualized reliance.  In *Moua*, the plaintiffs' claim involved

26    oral representations made to franchisees and different representations generally than Plaintiffs allege here, and

27    the court followed Minnesota law in holding that individualized reliance was required and therefore would

28    predominate over common questions.  2010 WL 935758, at *6.  Further, unlike in *De Giovanni*, Plaintiffs

11

have provided the Court with common evidence and with expert testimony that establishes that the class claims share predominant common questions.  (Evid. Tab S ¶¶ 37, 39, 42, 43.)

Plaintiffs have alleged materiality, reliance and injury.  (Evid. Tab A ¶¶ 6, 8-10, 13; *id.* Tab B ¶¶ 6, 8-10, 13; *id.* Tab C ¶¶ 5, 7, 8, 10-12; *id.* Tab D ¶¶ 5, 7-9, 11-12.)  Plaintiffs have also presented common proof of the materiality of JK's misrepresentations and omissions.  (Evid. Tab N ¶¶ 8-12; *id.* Tab O ¶¶ 32-34 & Exs. 10, 41, 44; Reisch Decl. Ex. 8 at 142:11-143:15; 148:16-20.)

### D.    Plaintiffs' UCL Claims Are Appropriate for Class Certification.[6]

#### 1.    Plaintiffs' Unfair Claims Present Predominant Common Questions that Can Be Proven with Common Evidence.

JK argues that none of its practices that Plaintiffs allege is unfair under the UCL is a "true class claim."  But JK fails to demonstrate why this is the case.  As Plaintiffs' motion establishes, Plaintiffs have properly alleged four specific unfair practices that are common to the class and thus are appropriate for class certification.  JK presents no credible argument to the contrary.

As an initial matter, JK's "belief" that the FTC test is the appropriate test for a UCL unfairness claim is neither controlling nor persuasive.  As the Ninth Circuit recently recognized, the two competing tests for unfairness in the consumer context are whether the harm to the consumer outweighs the utility of the conduct in question, or whether the practice violates a public policy that is tethered to a legislatively declared policy. *Rubio v. Capital One Bank*, --- F.3d ---, 2010 WL 2836994, at *8 (9th Cir. Jul. 21, 2010); *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 738 (9th Cir. 2007) ("we decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court").  The FTC test, which very few courts have looked to, has no support in California's UCL jurisprudence. *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715 (2007) ("the California UCL contains no directive to interpret our consumer protection statute consistently with the FTC Act").  Regardless, under any formulation of the unfair test, Plaintiffs have demonstrated that their unfair claims are suitable for class treatment because the focus of the UCL violation is on JK's conduct that is common to the class.

First, in response to Plaintiffs' claim that JK's fees are excessive and unfair, JK's sole response is that

---

[6]  JK agrees that Plaintiffs' UCL claims based upon the unlawful prong stand or fall with the predicate claims upon which they depend.  (Opp. 17:17-18.)

1  this claim is individualized because "owners value services differently." (Opp. 19:12.) This argument,

2  however, ignores the applicable law and the facts here, which focuses on a defendant's conduct, not the

3  consumer's subjective experience. (Evid. Tab S ¶ 27; *id.* Tab E ¶ 10.)

4       Second, in response to Plaintiffs' claim that JK fails to translate key franchise documents, JK argues

5  that many owners "did not need translations" and thus this issue is individualized. Whether someone needed

6  a translation is simply a damages issue; alternatively, this claim could run to a subclass of individuals who are

7  not fluent in English. As to JK's bald assertion that it does not negotiate franchise terms in languages other

8  than English, the evidence establishes that JK routinely negotiated in Spanish. (Evid. Tab S ¶ 33.)

9       Third, JK's contention that there is "no ripe controversy" regarding its unlawful noncompetition

10  clause is simply false, as it in the same breath attacks Plaintiffs Alejandro and Maria Juarez for having another

11  cleaning business. (Opp. 19:26-28.) Indeed, JK has filed a *cross-claim* against the Juarezes alleging violation

12  of the non-compete clause. (*See* Dkt. 47.) JK does not dispute that its franchise contracts with all class

13  members contain a non-compete clause. (Evid. Tab S ¶ 75.) This non-compete clause violates California

14  law. Bus. & Prof. Code § 16600 ("every contract by which anyone is restrained from engaging in a lawful

15  profession, trade, or business of any kind is to that extent void"); *Edwards v. Arthur Andersen LLP*, 44

16  Cal. 4th 937, 945 (2008); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 574-75 (2009). JK's

17  claim that non-compete clauses are enforceable during the life of a franchise is wrong because the law

18  contains no such limitation. *Edwards*, 44 Cal. 4th at 949 (Bus. & Prof. Code § 16600 "should not be diluted

19  by judicial fiat."). In addition, the lone case JK cites in support in fact holds that non-compete clauses are *not*

20  enforceable if, as here, they "foreclose competition in a substantial share of a business, trade, or market."

21  *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1292 (9th Cir. 2009) (citation & quotes omitted).

22       Fourth, JK's claim that Plaintiffs do not have standing to challenge the refund policy is factually

23  incorrect. JK did not meet Portillo's initial business obligation. JK was required to offer Portillo $2,000

24  worth of cleaning accounts by August 21, 2005, but JK offered her less than $700 worth of business. (Reisch

25  Decl. Exs. 17 & 18.) Further, Portillo disputes that JK's purported offers of business, made after the 120

26  days, which JK relies on to claim it met her IBO, were actually made. (*Id.* Ex. 15 at 80:6-83:17, 88:13-90:7.)

27

28

Therefore, she was entitled to a refund under JK's policy and has standing to challenge it.

**E.      Plaintiffs Will Fairly and Adequately Represent the Proposed Class.**[7]

**1.      JK Cannot Defeat the Juarezes' Adequacy By Attacking Them for Conduct that Is Protected under California Law.**

Plaintiffs Alejandro and Maria Juarez, like all other class members, were induced to buy JK "franchises," believing that this was their opportunity for financial independence. (Evid. Tab S ¶ 34.) Like other class members, the Juarezes discovered that JK was controlling nearly every aspect of their enterprise, including giving and taking away accounts at will and dictating the terms of all accounts. Unable to control their own income stream through their JK "franchise," the Juarezes started to perform cleaning services on their own. They also filed this action. In response, JK has mounted a retaliatory attack, filing a legally unfounded cross-claim and accusing them on the public record of "stealing." (Reisch Decl. Ex. 9 at 171:2-172:1.) JK's claim that this makes the Juarezes inadequate class representatives in specious.[8]

Any conflicts must be serious and irreconcilable in order to defeat adequacy. *Breeden v. Benchmark Lending Group. Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citation omitted). As detailed above, JK's non-compete clause, which is the basis for its claim that the Juarezes have a conflict and thus are not adequate, is illegal. There is no "danger" therefore, that they will be preoccupied with unique defenses to their claims. *Huberman v. Tag-It Pac., Inc.*, 314 Fed. Appx. 59, 62 (2009). In any event, JK's non-compete "defense" is not a defense to the Labor Code claims or the vast majority of the UCL claims asserted in this case. There is no threat here, as there was in *Hanon v. Dataproducts Co.*, *supra*, that this defense will become the "focus of the litigation." 976 F.2d at 508. (*See generally* Evid. Tabs A-B.) Moreover, JK's histrionic claim that the Juarezes "hid" their additional employment from JK and are thus vulnerable to "credibility" attacks which would impair the ability to represent the class is utterly without foundation. (Reisch Decl. Ex. 13 at 23:23-

---

[7]  JK barely addresses typicality, summarily restating its contention that "each owner's claim arises out of events unique to that owner." (Opp. 24:16.) It fails to raise any specific argument that Plaintiffs' claims are not typical of those of the class. As demonstrated in Plaintiffs' Motion, Plaintiffs' claims are typical of the claims of the class because they all arise out of JK's standardized conduct, and are thus "reasonably coextensive" with those of absent class members. (Evid. Tab S ¶¶ 46, 76.) *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[8]  JK does not challenge, and thus concedes, the adequacy of the other named Plaintiffs. Moreover, only one of the named plaintiffs must be an adequate representative. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1162 n.2.

14

24:3, 26:6-20, 27:6-28:5; *id.* Ex. 14 at 27:12-15.)

2.      **There Is No Conflict of Interest Between Plaintiffs and the Proposed Class.**

JK also contends that Plaintiffs cannot adequately represent the class because a handful of class members allegedly enjoy their status as independent contractors, thus creating a "conflict" with Plaintiffs and the rest of the class.  (Opp. at 23:17-24:10.)  This is decidedly not the law.

First, a conflict does not exist when some members of the class purportedly wish that JK would continue violating the law.  *See Probe v. State Teachers Ret. Sys.*, 780 F.3d 776, 781 (9th Cir. 1986).  Even if workers "consciously accept" the independent contractor designation, that fact is not determinative because the relevant factors set forth in *Borello* do *not* include whether the employee "chooses" to remain an independent contractor.  *Borello*, 48 Cal. 3d at 358.  Second, courts – including this Court – have consistently held that the existence of potential class members who do not support the plaintiffs' claims does not defeat class certification.  *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *7 (N.D. Cal. Sep. 5, 2008); *Dalton*, 2010 WL 2985130, at *3.  Given the number of potential class members (in excess of 1,000), the fact that four class members "may be personally satisfied with the existing system and may prefer to leave the violation of their rights unremedied" is not surprising, *Wilder v. Bernstein*, 499 F. Supp. 980, 993 (S.D.N.Y. 1980), especially where those class members are "exceptional franchise owners."  (Reisch Decl. Ex. 8 at 177:2-12, 178:3-12.)  Third, courts have long recognized that employer-solicited declarations are of little probative value because of the nature of the employer-employee relationship.  *See*, *e.g.*, *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005); *Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, at *3-5 (W.D. Wash. Sep. 12, 2006).

The cases upon which JK relies are inapposite.  In *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571 (C.D. Cal. 2010), the district court found a lack of adequacy where "the individual Plaintiffs and their lawyer are all in conflict over whether to seek injunctive relief and how to define the scope of injunctive relief" and "fundamentally disagree over the proper definition of the class."  *Id.* at 578-79.  *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997) and *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465 (C.D. Cal. 2006) both involved a dispute as to the proper remedy advocated by different class members.

Plaintiffs have met the adequacy requirement of Rule 23(a)(4).

15

1

## III.     CONCLUSION

2         Plaintiffs' respectfully request that this Court grant class certification of the proposed class pursuant to

3   Fed. R. Civ. Proc. 23(b)(2) and/or (b)(3).

4

5   DATED:  September 8, 2010                              Respectfully submitted,

6                                                By:    /s/ *Monique Olivier*
                                                         Monique Olivier
7                                                        Attorneys for Plaintiffs

8

9   **ADDITIONAL COUNSEL**

10  Counsel for Plaintiffs:

11  SHANNON LISS-RIORDAN (*Pro Hac Vice*)
    (sliss@llrlaw.com)
12  HILLARY SCHWAB (*Pro Hac Vice*)
    (hschwab@llrlaw.com)
13  LICHTEN & LISS-RIORDAN, P.C.
    100 Cambridge Street, 20th Floor
14  Boston, MA  02114
    Telephone:  (617) 994-5800
15  Facsimile:   (617) 994-5801

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; CASE NO. CV 09-03495 SC