IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO and MARIA PORTILLO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JANI-KING OF CALIFORNIA, INC., a Texas corporation, JANI-KING, INC., a Texas corporation, JANI-KING INTERNATIONAL, INC., a Texas corporation, and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 09-3495 SC<br><br>ORDER GRANTING JANI-KING'S <u>MOTION TO FILE COUNTERCLAIM</u> |

**I.**   <u>**INTRODUCTION**</u>

    Before the Court is a motion by Defendants Jani-King of California, Inc., et al. ("Jani-King") to file three counterclaims against Alejandro and Maria Juarez ("the Juarezes"), two of the four named plaintiffs in this putative class action (collectively, "Plaintiffs"). ECF No. 47 ("Mot."). Plaintiffs filed an Opposition, and Jani-King filed a Reply. ECF Nos. 94 ("Opp'n"), 102 ("Reply"). For the reasons below, Jani-King's Motion is GRANTED.

///

///

**II. BACKGROUND**

Jani-King provides cleaning and janitorial services to commercial clients in California and other states. First Amended Complaint, ECF No. 32 ("FAC") ¶ 16. Its business model involves selling franchises to individuals, who then perform janitorial work for Jani-King's clients. Id. ¶ 20. Plaintiffs are individuals who have purchased franchises from Jani-King and have performed janitorial work under the Jani-King franchise agreement. Id. ¶ 2.

The fourteen causes of action in Plaintiffs' FAC rely on two distinct theories of liability. Plaintiffs' first theory is that Jani-King so tightly controls and oversees the janitorial work done by Plaintiffs as to create an employer-employee relationship, triggering the numerous employee protections provided by California's Labor Code, including payment of overtime wages, payment of California's minimum wage, and itemized wage statements. Id. ¶¶ 3, 193-220. Plaintiffs allege that Jani-King violated these provisions. Id.

Plaintiffs' second theory of liability, independent of their franchisees-as-employees theory, involves the standard franchise agreement that Jani-King requires each franchisee to sign. Plaintiffs argue that the franchise agreement is a form contract "offered by Jani-King on a take it or leave it basis with no opportunity to negotiate any of its terms." Id. ¶ 28. Plaintiffs allege the contract includes "unlawful, unfair, and deceptive terms," that Jani-King induces franchisees into entering the agreements by making untrue or misleading statements about the profitability of Jani-King franchises, and that Jani-King "systematically breaches the franchise contracts." Id. ¶¶ 20-49.

2

Plaintiffs allege breach of contract, breach of the implied covenant of good faith and fair dealing, and various violations of California's Corporations Code and Civil Code. Id. ¶¶ 137-192.

At the January 22, 2010 status conference, the Court bifurcated discovery, with discovery relating to class certification commencing immediately and merits discovery beginning after the Court rules on Plaintiffs' class certification motion. ECF No. 40. On July 16, 2010, Plaintiffs filed a Motion to Certify the Class. ECF No. 52. The Court denied this motion, ruling that it violated Civil Local Rule 7-4(b)'s twenty-five-page limit, and instructed Plaintiffs to refile the motion in conformity with the local rules. ECF No. 93. Plaintiffs have since refiled this motion, and it is scheduled to be heard on December 3, 2010. ECF No. 96.

On July 8, 2010, Jani-King filed the present motion. Jani-King claims that when it deposed the Juarezes on April 26 and 27, 2010, it learned that the Juarezes had established an independent cleaning company, Nano's Janitors, to compete with Jani-King for business during the term of the franchise agreement, in violation of the franchise agreement's noncompetition and royalties clauses. Mot. at 1. Jani-King alleges that "the Juarezes have taken customer relationships that Jani-King gave to them as franchisees and converted them away from Jani-King to serve on their own, without paying their contractual royalties and fees." Id. Specifically, Jani-King alleges that two former Jani-King clients whose accounts were serviced by the Juarezes subsequently terminated their relationships with Jani-King and hired Nano's Janitors for their cleaning services. Id. at 4-6. Jani-King

alleges that "the Juarezes intentionally interfered with Jani-King's prospective economic relationship" with a third company, Cocina Poblana, "with knowledge that Jani-King had bid to clean the property." Id. at 9. Jani-King seeks to amend its answer to include three counterclaims against the Juarezes: breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage. Id. at 8.

In opposition to Jani-King's Motion, Plaintiffs argue that they will suffer undue prejudice should Jani-King be permitted to file its proposed counterclaims, Jani-King has unduly delayed in seeking leave to file its counterclaims, and Jani-King's counterclaims should be denied as futile. See Opp'n.

### III. LEGAL STANDARD

A party may amend its pleadings with leave of the court, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy should be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). However, district courts may deny amendments that would cause undue prejudice to another party, that would cause undue delay, that are sought in bad faith, or that are futile. Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999). Not all of these factors merit equal weight, as "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052 (citations omitted). "The party opposing amendment bears the burden of showing prejudice." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

4

## IV. DISCUSSION

### A. Undue Prejudice

Plaintiffs argue that they will be unduly prejudiced if Jani-King is permitted to file a counterclaim at this point in the case. Opp'n at 4. Plaintiffs claim that Jani-King's counterclaims are "based on entirely different operative facts than the underlying Complaint," and suggest that as a consequence, Jani-King's proposed counterclaims will expand the scope of the suit. Id. Jani-King disputes this contention. Reply at 2.

The Court finds that both Plaintiffs' claims and Jani-King's proposed counterclaims involve the same common nucleus of operative facts. At the heart of both Plaintiffs' FAC and Jani-King's proposed counterclaims is the standard franchise agreement governing the relationship between Jani-King and Plaintiffs. Plaintiffs claim it is "replete with unconscionable terms" and a "scheme" perpetuated by Jani-King "to evade responsibility for janitorial workers' wages and job benefits" while "retaining control over the work that Plaintiffs and other janitorial workers perform." FAC ¶¶ 2-3. Jani-King argues that the agreement is enforceable, and thus the Juarezes breached it and tortiously interfered with contractual and prospective business relationships by establishing a competing cleaning company. As such, the FAC and the proposed counterclaims clearly turn on the legality, enforceability, and terms of the franchise agreement.

Plaintiffs also call the proposed counterclaims "a form of retaliation against the Juarezes in response to their assertion of statutory rights that is likely to chill participation in this putative class action." Opp'n at 4. Jani-King responds:

5

"Plaintiffs cite no case disallowing a counterclaim in similar circumstances." Reply at 3.

The Court agrees with Jani-King that the law cited by Plaintiffs is inapposite. For instance, Plaintiffs' reliance on California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, is misplaced. As California courts have held, "oppressive litigation tactics alone do not trigger the anti-SLAPP statute." <u>Kajima Engineering and Const., Inc. v. City of Los Angeles</u>, 95 Cal. App. 4th 921, 933 (2002). Jani-King's counterclaims would be subject to a motion to strike under Section 425.16 only if Plaintiffs made a prima facie showing that the acts by the Juarezes underlying these counterclaims were taken in furtherance of "constitutional rights of petition or free speech in connection with a public issue." <u>Id.</u> at 928. Plaintiffs have not made such a showing, but even if they had, the counterclaims would be stricken only if Jani-King failed to demonstrate that there is a probability it would prevail on its claims. <u>Id.</u> Similarly, Plaintiffs write, "many courts have found that counterclaims can constitute actionable retaliation when they are filed in response to the assertion of statutory workplace rights," and cite a handful of out-of-circuit cases supporting this statement. Opp'n at 5. But Plaintiffs cite no cases -- within the Ninth Circuit or otherwise -- in which a court found that the "chilling effect" of a prospective counterclaim on class action participation justified denying a motion to file that counterclaim. As such, Plaintiffs have not met their burden of showing prejudice.

///
///

6

**B.   Undue Delay**

Plaintiffs argue that Jani-King "admits that it knew of the existence of facts underlying its proposed counterclaims early in the case," and thus Jani-King impermissibly delayed in bringing the present motion to amend their Answer. Opp'n at 6. Specifically, Plaintiffs argue Jani-King knew in March 2010 that the Juarezes had formed Nano's Janitors, and knew in 2008 and early 2009 of Jani-King's loss of contracts or prospective relationships with its clients. Id.

Jani-King counters that it "waited only long enough to ensure that it had sufficient facts to raise its claims," and claims that occurred only after deposing the Juarezes on April 26 and 27, 2010. Reply at 3. Jani-King also notes that because merits discovery has not yet begun and class certification is still pending, "Plaintiffs fail to show that the timing of the amendment will cause them to face increased litigation expenses beyond the ordinary cost of defending a lawsuit." Id. at 2-3.

The Court agrees with Jani-King. The present motion was filed fewer than three months after the deposition of the Juarezes, and fewer than four months after Jani-King learned of the existence of Nano's Janitors. As such, it is not the product of undue delay. And because merits discovery has not yet commenced, the timing of the motion will not necessitate a re-opening of discovery.

**C.   Futility**

The standard for determining the futility of a proposed counterclaim is the same standard used when considering the sufficiency of a pleading challenged under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Miller v. Rykoff-Sexton, Inc.,

7

845 F.2d 209, 214 (9th Cir. 1988). As such, a counterclaim is not futile if it is supported by a cognizable legal theory or by sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The facts pleaded are sufficient if they "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Plaintiffs challenge both the theory underlying Jani-King's counterclaims and the sufficiency of the facts alleged. First, Plaintiffs argue that Jani-King's counterclaims are futile "because they arise from a Noncompetition provision that is facially invalid and unenforceable as a matter of law." Opp'n at 12. Jani-King argues that while non-competition provisions are generally invalid under California law, "California courts have held that anti-competition clauses in franchise agreements, including territorial limits, are valid 'during the life of the franchise.'" Reply at 6 (citing Dayton Time Lock Serv., Inc. v. Silent Watchman Corp., 52 Cal. App. 3d 1, 6 (1975)).

Whether anti-competition clauses are enforceable is a highly factual matter. See, e.g., Dayton Time Lock Serv., 52 Cal. App. 3d at 6-7 (holding that the legality of territorial limits in a franchise agreement turns on "knowledge and analysis of the line of commerce, the market area, and the affected share of the relevant market"). As such, the Court finds that denying Jani-King's counterclaims as unsupported by a cognizable legal theory is not

appropriate at this stage in the case.

In addition to challenging the legal underpinnings of the counterclaims, Plaintiffs challenge the adequacy of the pleadings. Plaintiffs argue that Jani-King has failed to sufficiently plead the elements of damages and causation, alleging that Jani-King relies on conclusory statements about its damages incurred as a result of the alleged breach, as well as the causal connection between the breach and the damages sought. Id. Plaintiffs also argue that Jani-King has failed to adequately plead its two tortious interference claims. Id.

The Court finds that Jani-King has sufficiently pleaded facts to state plausible claims for breach of contract, interference with contract, and interference with prospective economic advantage. In its Motion, Jani-King identifies by name the former customers who have since terminated their relationships with Jani-King and hired Nano's Janitors. Jani-King identifies by name the prospective client, Cocina Poblana, that received a bid for services from Jani-King and subsequently hired Nano's Janitors. As such, Jani-King has alleged more than enough facts to "nudge" its counterclaims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While Jani-King alleges the Juarezes intentionally interfered with Jani-King's prospective relationship with Cocina Poblana without identifying specific intentional acts by the Juarezes, this counterclaim is still plausible, given the specific circumstances pled. Furthermore, Jani-King's allegations are particularly plausible in light of the evidence it filed in support of its Motion, including the franchise agreement signed by the Juarezes, Mot. Ex. B; the deposition

transcripts of Alejandro and Maria Juarez, id. Exs. C & E; Jani-King's account history for the Juarezes' franchise, id. Ex. D; customer service call records for Jani-King's former clients, id. Ex. M; and Jani-King's April 21, 2009 bid to Cocina Poblana, id. Ex. N.  For these reasons, the Court finds that Jani-King's proposed counterclaims are not futile.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Jani-King of California, Inc.'s Motion for Leave to File a Counterclaim.  Within five (5) days of this Order, Jani-King shall file its counterclaims for breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage.

IT IS SO ORDERED.

Dated: November 19, 2010

UNITED STATES DISTRICT JUDGE