IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO JUAREZ, MARIA JUAREZ, LUIS A. ROMERO and MARIA PORTILLO, individually and on behalf of all others similarly situated, | Case No. 09-3495 SC |
| | ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY THE CLASS |
| Plaintiffs, | |
| v. | |
| JANI-KING OF CALIFORNIA, INC., a Texas corporation, JANI-KING, INC., a Texas corporation, JANI-KING INTERNATIONAL, INC., a Texas corporation, and DOES 1 through 20, inclusive, | |
| Defendants. | |

**United States District Court**
For the Northern District of California

## I.   **INTRODUCTION**

Before the Court is an Amended Motion to Certify the Class by Plaintiffs Alejandro Juarez, Maria Juarez, Luis A. Romero, and Maria Portillo ("Plaintiffs").  ECF No. 96 ("Mot.").  Defendants Jani-King of California, Inc., Jani-King, Inc., and Jani-King International, Inc. (collectively, "Jani-King") filed an Opposition, and Plaintiffs filed a Reply.  ECF Nos. 109 ("Opp'n"), 113 ("Reply").  Pursuant to Civil Local Rule 7-1(b), the Court finds the Motion suitable for determination without oral argument. For the following reasons, the Court DENIES Plaintiffs' Motion.

**United States District Court**
For the Northern District of California

II.   **BACKGROUND**

  A. **Factual Background**

Jani-King provides cleaning and janitorial services to commercial clients in California and other states.  First Amended Complaint, ECF No. 32 ("FAC") ¶ 16.  It specializes serving larger commercial clients, including commercial office buildings, healthcare facilities, and retail outlets.  ECF Nos. 97-99 ("Pls.' Evidence") Vol. 4 Tab T Ex. 10 ("Jani-King Presentation") at 5701.

Jani-King's business model involves selling franchises to individuals or entities, who then perform janitorial work for Jani-King's clients.  FAC ¶ 20.  Jani-King claims to have more than twelve thousand franchisees throughout the United States.  See Jani-King Presentation; Pls.' Evidence Vol. 2 Tab S Ex. 2 ("Jani-King Franchise Disclosure Document").

Under the franchise agreement between Jani-King and its franchisees, franchisees pay an Initial Franchise Fee and an Initial Finder's Fee.  Id. at 21.  Both fees are paid in installments over the life of the franchise agreement, with a down payment due on purchase.  Id.  In return, Jani-King must offer each franchisee a certain amount of centrally generated business -- the "Initial Business Offering" -- during the franchisee's "Initial Offering Period."  Jani-King Presentation at 5715.  The amount of business Jani-King is obligated to offer is proportional to the size of the Initial Finder's Fee paid by the franchisee.  Id.  Jani-King offers fifteen franchise plans which are identical in all respects except the amount of initial investment required by the franchisee and the amount of centrally generated business promised by Jani-King.  Id. at 5719.  These franchise plans range in cost

1  from $8,600 to $46,500.  Id.

2     Franchisees do not receive an exclusive territory; rather,

3  each franchise agreement designates a specific non-exclusive

4  geographic territory.  Id. at 5749.  Franchisees agree to clean,

5  interact with clients, and perform other business tasks according

6  to standardized procedures established by Jani-King.  For example,

7  franchisees must purchase specific cleaning equipment, carry

8  insurance, and report customer complaints to Jani-King.  Id. at

9  5731-34.  Franchisees also solicit clients directly, although they

10  must comply with Jani-King's procedures in doing so.  Id.  In

11  addition to the two above-mentioned fees, franchisees must pay

12  Jani-King a number of other fees, including an accounting fee and

13  an advertising fee.  See Jani-King Presentation.

14     In addition to centralized bidding, Jani-King centrally

15  performs accounting, data management, and franchise training.  Mot.

16  at 5.  As a franchiser, Jani-King is subject to California's

17  franchise regulations, as well as the regulations of other states.

18  It must provide each prospective franchisee with a Franchise

19  Disclosure Document ("FDD") disclosing, among other things, its

20  litigation history, its business experience, the fees the

21  franchisee is required to pay under the agreement, and the

22  estimated total investment that the franchisee must make to open

23  the franchise.  Cal. Corp. Code § 31114; Cal. Code. Regs. tit. X, §

24  310.114.1.

25     Plaintiffs are four individuals who purchased franchises from

26  Jani-King and have performed janitorial work under the Jani-King

27  franchise agreement.  FAC ¶ 2.  Alejandro and Maria Juarez jointly

28  purchased a Plan "D" franchise for $13,500.  Pls.' Ev. Vol. 1 Tabs

**United States District Court**
For the Northern District of California

A ¶ 5, B ¶ 5.  Maria Portillo and Luis A. Romero both purchased Plan "C" franchises for $12,000.  Id. Tabs C ¶ 4, D ¶ 4.

In their FAC, Plaintiffs claim that they have limited or no fluency in English and no formal education, and that they were "induced by Jani-King with promises of guaranteed income and entrepreneurial opportunity" to purchase the franchises.  FAC ¶¶ 2, 22.  Plaintiffs allege that the "franchise contracts are replete with unconscionable terms of which Plaintiffs and others have no understanding, and the enforcement of which creates a cycle of debt for Plaintiffs and others from which they cannot free themselves." Id. ¶ 2.

Plaintiffs bring fourteen claims against Jani-King.  Six claims allege violations of California's Labor Code ("Plaintiffs' Labor Code claims").  These claims rely on a singular theory of liability: that Jani-King's franchise system is a "scheme to evade responsibility for janitorial workers' wages and job benefits by purporting to hire them indirectly (through the 'franchises') as 'independent contractors' while, in fact, retaining control over the work that Plaintiffs and other janitorial workers perform." Id. ¶ 3.  Plaintiffs argue that Jani-King so tightly controls and oversees the janitorial work done by its franchisees as to create an employer-employee relationship between Jani-King and the franchisees, triggering the numerous employee protections provided by California's Labor Code, such as payment of overtime wages, payment of California's minimum wage, and itemized wage statements. Id. ¶¶ 3, 193-220.

Plaintiffs bring two claims concerning the standard franchise agreement between Jani-King and the franchisees: Plaintiffs allege

United States District Court
For the Northern District of California

1  breach of contract and breach of California's covenant of good

2  faith and fair dealing ("Plaintiffs' good faith claim").  Id.

3  Under the standard Jani-King franchise agreement, Jani-King is

4  obligated to offer each franchisee a certain dollar amount of

5  cleaning accounts to service; Plaintiffs allege that Jani-King has

6  breached the franchise agreement by failing to satisfy this

7  requirement.  Id. ¶ 182.  Plaintiffs also allege that Jani-King

8  breached the covenant of good faith and fair dealing by adopting

9  practices to frustrate franchisees' ability to receive the benefits

10 under the agreement.  Id.  Plaintiffs allege that Jani-King offers

11 cleaning accounts to franchisees without giving the franchisees the

12 opportunity to review them and determine whether accepting the

13 account would be profitable, and that it takes away accounts from

14 franchisees at will, making these offers illusory.  Mot. at 9.

15 Plaintiffs also allege that Jani-King breaches this covenant by

16 bidding so competitively on cleaning accounts that "after all the

17 Jani-King fees and the costs of doing business . . . are taken into

18 account, class members are deprived of any profit from the

19 accounts."  Id.

20      Four claims involve alleged representations or omissions made

21 by Jani-King to would-be franchisees ("Plaintiffs' fraud claims").

22 These causes of action are: violation of sections 31201 and 31202

23 of California's Corporations Code (prohibiting the making of any

24 untrue statement of material fact or omission of material fact

25 during the offer or sale of a franchise contract and prohibiting

26 persons from willfully making an untrue statement or omitting a

27 material statement that must be disclosed in writing,

28 respectively); deceit by intentional misrepresentation; deceit by

1   negligent misrepresentation; and deceit by concealment.  See FAC.

2       Finally, Plaintiffs allege that Jani-King violated

3   California's Unfair Competition Law by engaging in unlawful,

4   unfair, or fraudulent acts ("Plaintiffs' UCL claim").  See FAC.

5       **B.   Procedural Background**

6       This action was removed from California Superior Court by

7   Jani-King on July 30, 2009.  ECF No. 1.  The Court granted Jani-

8   King's motion to dismiss certain claims in the Initial Complaint on

9   October 5, 2009.  ECF No. 25.  On November 4, 2009, Plaintiffs

10  filed their FAC, which Jani-King answered.  ECF No. 35.

11      At the January 22, 2010 status conference, the Court

12  bifurcated discovery, with discovery relating to class

13  certification commencing immediately and merits discovery beginning

14  if and once the Court certified the class.  ECF No. 40.  On July 8,

15  2010, Jani-King sought leave from the Court to file a counterclaim

16  against Plaintiffs Alejandro and Maria Juarez ("the Juarezes"),

17  which the Court granted.  ECF Nos. 47, 112.

18      In its counterclaim, Jani-King alleges that without first

19  seeking termination of their Jani-King franchise, the Juarezes

20  formed a competing cleaning firm, Nano's Janitors, and induced

21  Jani-King customers to terminate their cleaning agreements and

22  transfer their business to the competing firm.  ECF No. 115

23  ("Defs.' Countercl.").  Jani-King brings action for breach of

24  contract, tortious interference with contract, and tortious

25  interference with prospective economic advantage.  Id.

26      On July 16, 2010, Plaintiffs filed their first Motion to

27  Certify the Class.  ECF No. 52.  The Court denied this motion,

28  ruling that it violated Civil Local Rule 7-4(b)'s page limit, and

**United States District Court**
For the Northern District of California

instructed Plaintiffs to refile their motion in conformity with the

local rules.  ECF No. 93.  Plaintiffs now bring the present motion,

and move to certify the following class under Rule 23(a) and (b)(3)

of the Federal Rules of Civil Procedure:

> All persons who have performed janitorial work
> on cleaning accounts as Jani-King "franchisees"
> within the State of California at any time from
> June 22, 2005 up to and through the time of
> judgment.

Mot. at 1.

Of the fourteen claims stated in the FAC, Plaintiffs seek

class certification for eight.  Plaintiffs seek certification for

five of their six Labor Code claims: failure to pay a minimum wage

in violation of California Labor Code §§ 1182.11-1182.13, 1194(a),

1194.2, 1197 and Wage Order 5-2001; failure to provide accurate

itemized wage statements and maintain adequate records in violation

of California Labor Code §§ 1182.11-1182.13, 1194(a), 1194.2, 1197

and Wage Order 5-2001; failure to indemnify employees for expenses

in violation of California Labor Code § 2802; unlawful deductions

from wages in violation of California Labor Code § 221; and

compelling employees to patronize in violation of California Labor

Code § 450.  FAC ¶¶ 200-20.  Plaintiffs seek certification of their

good faith claim, but not their breach of contract claim; their

concealment claim, but not their other fraud claims; and their UCL

claim.  Id.

In opposing Plaintiffs' Motion, Jani-King argues that class

treatment is improper because individual issues predominate over

common issues, individual actions are superior to class action, the

named Plaintiffs are inadequate class representatives, and the

named Plaintiffs' claims are not typical of the class.  See Opp'n.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 23(a) provides four requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a). In addition, the court must also find that the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied. <u>Dukes v. Wal-Mart Stores, Inc.</u>, 603 F.3d 571, 580 (9th Cir. 2010). Rule 23(b)(3) requires a finding by the court "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts refer to the requirements of Rule 23(b)(3) as its "predominance" and "superiority" requirements. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 615 (1997).

## IV. <u>DISCUSSION</u>

In its Opposition, Jani-King does not contest that numerosity or commonality is satisfied for these claims, and Jani-King makes only a brief challenge to Rule 23(a)'s typicality requirement. <u>See</u> Opp'n. Rather, Jani-King focuses on two main arguments. Jani-King argues that the named Plaintiffs cannot adequately represent the proposed class because their experiences are atypical of the class

as a whole and because there are fundamental potential conflicts of
interest within the proposed class.  Jani-King also argues that
Plaintiffs' claims cannot be established with common proof, and
thus individual issues predominate and class treatment is inferior
to individual actions.  Id. at 5-24.

A.   **Preliminary Matters**

1.   Motions to File Documents Under Seal

Plaintiffs filed an administrative motion to file documents
under seal in support of their Motion, which the Court granted on
October 18, 2010.  ECF No. 104.  Jani-King also filed an
administrative motion to file documents in opposition under seal.
ECF No. 108.  Having reviewed Jani-King's unopposed administrative
motion and the relevant documents, the Court GRANTS Jani-King's
motion with respect to the following exhibits:

- Exhibits IV-A through VII of Exhibit 6 to the Declaration
  of Eileen Hunter ("Hunter") in Support of Jani-King's
  Opposition; and

- Exhibits 29, 30, and 31 to the Hunter Declaration.

Plaintiffs and Jani-King must comply with Civil Local Rule 79-
5 and General Order 62 and e-file these documents under seal
according to the procedures outlined on the ECF website.

2.   Evidentiary Issues

While neither party raises specific evidentiary objections in
their briefs, Jani-King takes issue with Plaintiffs' reliance on
the declarations of twelve Jani-King franchisees.  Opp'n at 4.
Jani-King alleges that the parties agreed that a randomly selected
sample of ten percent of the putative class would represent the

**United States District Court**
For the Northern District of California

9

**United States District Court**
For the Northern District of California

class.  Id.  Jani-King argues that Plaintiffs ignored this random sample, and have instead relied on "hand-picked declarations" from a handful of franchisees as common proof.  Id.  These declarations are nearly identical in wording.  See Pls.' Ev. Vol. 1 Tabs A-D, F-M ("Franchisees' Decls.").  Jani-King argues that these declarations do not prove common experiences because they are not representative of the class as a whole, because they rely on indefinite terms like "sometimes" and "often," and because the declarants' deposition testimony conflicts with their declarations. Opp'n at 4.  Plaintiffs do not directly respond to this challenge in their Reply.

The Court finds merit in Jani-King's arguments.  These twelve declarations -- hand-picked by Plaintiffs, written in vague language, short on factual assertions, and contradicted by deposition testimony -- do not provide a trustworthy representation of the class as a whole.  As such, the Court accepts these declarations for what they are -- the statements of twelve franchisees within a putative class of nearly two thousand -- rather than a reliable representation of the class as a whole.

**B.   Numerosity**

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964).

Plaintiffs claim that at least nineteen hundred persons fall

within the class description, and Defendants do not dispute this. Mot. at 6; see Opp'n. The Court thus finds the numerosity requirement to be satisfied.

### C. **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement must be "construed permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "The commonality test is qualitative rather than quantitative -- one significant issue common to the class may be sufficient to warrant certification." Dukes, 603 F.3d at 599 (internal quotations omitted).

Plaintiffs argue that commonality is satisfied for their Labor Code claims because Jani-King's liability "rests primarily on whether Jani-King lawfully treats class members as independent contractors rather than employees." Mot. at 8. Plaintiffs argue that commonality is satisfied as to their good faith claim because Jani-King's relationship with its franchisees is governed substantially by standardized agreements and policy manuals. Id. Plaintiffs assert that their concealment claim is common to the class because it arises from "standardized and scripted disclosures about the details of purchasing and owning a franchise and thus are made to all class members." Id. at 9. Finally, Plaintiffs contend that their UCL claim is common to the class. They allege that

11

**United States District Court**
For the Northern District of California

1   classifying the franchisees as independent contractors rather than

2   employees serves as a predicate unlawful act, and that the non-

3   compete provision in the franchise agreements and the allegedly

4   excessive franchise fees also serve as predicate unfair acts.  <u>Id</u>.

5   at 11.  Jani-King does not dispute that the commonality requirement

6   is satisfied.  <u>See</u> Opp'n.

7        In light of the evidence and the permissive nature of the

8   commonality inquiry, the Court finds the commonality requirement to

9   be satisfied.

10        **D.    <u>Typicality and Adequacy of Representation</u>**

11        Because Jani-King's arguments against typicality and adequacy

12   of representation are tightly woven, the Court addresses both

13   requirements together.

14        Rule 23(a)(3) requires that the representative parties' claims

15   be "typical of the claims . . . of the class."  Fed. R. Civ. P.

16   23(a)(3).  "Under the rule's permissive standards, representative

17   claims are 'typical' if they are reasonably co-extensive with those

18   of absent class members; they need not be substantially identical."

19   <u>Hanlon</u>, 150 F.3d at 1020.  Rule 23 "does not require the named

20   plaintiffs to be identically situated with all other class members.

21   It is enough if their situations share a common issue of law or

22   fact and are sufficiently parallel to insure a vigorous and full

23   presentation of all claims for relief."  <u>Cal. Rural Legal Assist.,</u>

24   <u>Inc. v. Legal Servs. Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990).

25   Rule 23(a)'s commonality and typicality requirements "tend to

26   merge" in practice.  <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457

27   U.S. 147, 157 n.13 (1982).  However, they serve different purposes:

28   "Commonality examines the relationship of facts and legal issues

**United States District Court**
For the Northern District of California

1  common to class members, while typicality focuses on the

2  relationship of facts and issues between the class and its

3  representatives."  <u>Dukes</u>, 603 F.3d at 613 n.37.

4      Rule 23(a)(4) requires a showing that "the representative

5  parties will fairly and adequately protect the interests of the

6  class."  Fed. R. Civ. P. 23(a)(4).  "Adequate representation

7  'depends on the qualifications of counsel for the representatives,

8  an absence of antagonism, a sharing of interests between

9  representatives and absentees, and the unlikelihood that the suit

10 is collusive.'"  <u>Crawford v. Honig</u>, 37 F.3d 485, 487 (9th Cir.

11 1994) (quoting <u>Brown v. Ticor Title Ins. Co.</u>, 982 F.2d 386, 390

12 (9th Cir. 1992).  "This factor requires: (1) that the proposed

13 representative Plaintiffs do not have conflicts of interest with

14 the proposed class, and (2) that Plaintiffs are represented by

15 qualified and competent counsel."  <u>Dukes</u>, 603 F.3d at 614.

16     Plaintiffs argue that typicality is satisfied because all

17 class claims "arise out of Jani-King's standardized policies and

18 procedures" and "Plaintiffs and the class are thus in a materially

19 identical position vis-à-vis Jani-King with respect to those

20 practices."  Mot. at 12-13.  Plaintiffs contend that both elements

21 of Rule 23(a)(4) are satisfied, alleging that "both the class and

22 the named Plaintiffs share an interest in requiring Jani-King to

23 operate in compliance with California law" and that Plaintiffs'

24 counsel has "extensive expertise in prosecuting complex cases and

25 the resources to represent the class effectively."  <u>Id.</u> at 13.

26     Jani-King counters that the named Plaintiffs' claims and

27 experiences are not typical of the class, arguing that "each

28 owner's claim arises out of events unique to that owner."  Opp'n at

**United States District Court**
For the Northern District of California

25.  Jani-King argues that the Juarezes are inadequate representatives because they are subject to counterclaims and lack credibility.  Id. at 23-34.  Jani-King additionally argues that the class cannot be adequately represented because "[t]here is a conflict of interest between owners who manage multiple employees and owners who mostly perform the labor themselves."  Id. at 23-24.

The Court finds that the typicality and adequacy requirements fail for three reasons.  First, the named Plaintiffs' experiences as Jani-King franchisees do not appear to be typical of the class.  While Plaintiffs seek certification of eight claims, named Plaintiffs still bring fourteen claims.  Among these claims are Plaintiffs' allegations that Jani-King representatives made oral promises regarding the profitability of the franchises, which Plaintiffs relied on in choosing to purchase a franchise.  Id. at 14; see Franchisees' Decls.  Plaintiffs' FAC makes numerous references to the fact that the named Plaintiffs were not native English speakers and had little or no fluency in English.  The FAC provides a compelling narrative: Jani-King entered into franchise agreements with recent immigrants to the United States with little or no fluency in English, who signed the agreements without understanding them and on the basis of representations made by Jani-King representatives; by doing so, Jani-King performed an end-run around California's Labor Code, extracting below-minimum wage labor from workers who were "franchisees" in name only.

These allegations are fleshed out in named Plaintiffs' declarations.  Alejandro Juarez states that his first and primary language is Spanish, and that "at the time that I signed the Franchise Agreement with Jani-King and paid for the franchise, I

14

**United States District Court**
For the Northern District of California

could not read, write, or speak with ease in English." Pls.' Ev.
Vol. 1 Tab A ¶ 7. Alejandro further declares that despite the fact
that Jani-King's representatives spoke to him in Spanish, he was
never given a Spanish-language franchise agreement or a translation
of the franchise agreement. Id. The other named Plaintiffs --
Maria Juarez, Portillo, and Romero -- make identical allegations in
their declarations. Id. Tab B ¶ 7, B ¶ 6, D ¶ 6. The declarations
of the other franchisees do not contain these allegations. See
Franchisees' Decls.

These are serious allegations, and Plaintiffs are entitled to
attempt to prove them in court and, if they are successful, collect
the appropriate relief. However, Plaintiffs do not allege in their
Motion that these allegations are typical of the class, and they
submit no evidence of a common scheme to mislead prospective
franchisees through oral promises of franchise profitability. On
the contrary, Jani-King's promotional materials and required
franchise documentation clearly state that Jani-King does not make
profit predictions.

As such, named Plaintiffs' experiences and claims are not
typical of the class as a whole. If they were to serve as class
representatives, named Plaintiffs would likely be called on to
subjugate their interest in the litigation of their uncertified
fraud claims to serve their representational duty owed to the
class, and it is unclear whether the named Plaintiffs are aware of
this sacrifice. Each named Plaintiff has submitted a sworn
declaration stating: "I have agreed to serve as a representative of
the proposed Class in this case. I understand that I am
responsible for acting in and for the best interests of the Class,

and not just my own interests.  I am not aware of any conflicts or reasons why I cannot represent the interests of the Class."  Pls.' Ev. Tabs A – D ("Named Pls.' Decls.") ¶ 2.  While this statement evidences named Plaintiffs' willingness to serve as class representatives, it does not show that named Plaintiffs understand the obligations of the position.  In fact, the statement that named Plaintiffs are "unaware" of any conflicts with the class suggests that counsel has not adequately disclosed to them that such conflicts exist.

The second issue is Jani-King's counterclaim against the Juarezes for breach of contract and tortious interference.  Jani-King alleges that the Juarezes -- without seeking to terminate their Jani-King franchise -- formed a competing cleaning firm, Nano's Janitors, and induced Jani-King customers to terminate their cleaning agreements and transfer their business to the competing firm.  See Defs.' Countercl.  While the existence of a counterclaim does not automatically render a named plaintiff inadequate to represent a class, the Court finds the dangers of inadequate representation to be particularly strong here due to a lack of alignment of interests between named Plaintiffs and the class as a whole.

The third issue is the potential for conflict within the proposed class.  Plaintiffs have chosen to define the class extremely broadly, and essentially capture all Jani-King California franchisees in their class definition.  Several prospective conflicts exist within this class.  As Jani-King notes, there is a conflict between Jani-King franchisees who perform janitorial services themselves and those that hire employees to perform the

16

1   labor.  Plaintiffs' Labor Code claims hinge on proof that Jani-King

2   so controls the actions of its franchisees as to make the

3   franchisees Jani-King employees, making the franchise itself a

4   fraudulent scheme to avoid employment regulations.  Similarly,

5   franchisees who are still in the Initial Offering Period may prefer

6   injunctive relief over rescission or damages, while those who have

7   terminated their franchise agreements with Jani-King will receive

8   no benefit from injunctive relief.  While these potential conflicts

9   could arise at trial, they could also arise during settlement

10  negotiations.

11      For these reasons, the Court finds the typicality and

12  adequacy-of-counsel requirements to be unsatisfied.

13      **E.    Predominance and Superiority**

14      As with the typicality and adequacy-of-representation

15  requirements, because Jani-King's predominance and superiority

16  arguments are tightly intertwined, the Court discusses them

17  together.

18      Rule 23(b)(3) requires the court to find that "the questions

19  of law or fact common to class members predominate over any

20  questions affecting only individual members."  Fed. R. Civ. P.

21  23(b)(3).  Predominance "tests whether proposed classes are

22  sufficiently cohesive to warrant adjudication by representation," a

23  standard "far more demanding" than the commonality requirement of

24  Rule 23(a).  Amchem, 521 U.S. at 623-24.  However, "[w]hen common

25  questions present a significant aspect of the case and they can be

26  resolved for all members of the class in a single adjudication,

27  there is clear justification for handling the dispute on a

28  representative rather than an individual basis."  Hanlon, 150 F.3d

**United States District Court**
For the Northern District of California

at 1022.  If the plaintiff advances a theory of liability in its motion for class certification, the court should determine whether common issues predominate under this theory without evaluating the theory itself.  <u>United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.</u>, 593 F.3d 802, 808 (9th Cir. 2010) ("<u>United Steel</u>"); <u>see also</u> <u>Dukes</u>, 603 F.3d at 588 ("it is the plaintiff's <u>theory</u> that matters at the class certification stage, not whether the theory will ultimately succeed on the merits") (emphasis in original).

Rule 23(b)(3) also requires that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The factors relevant to assessing superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Because Plaintiffs' seven claims demand individual attention, the Court discusses them separately.

### 1.   Plaintiffs' Labor Code Claims

The legal theory underlying Plaintiffs' Labor Code claims is that Jani-King's common policies and practices so tightly control the franchisees' actions as to create an employer-employee relationship between Jani-King and the putative class.  Mot. at 14.

Under California law, "the principal test of an employment

United States District Court
For the Northern District of California

1   relationship is whether the person to whom service is rendered has

2   the right to control the manner and means of accomplishing the

3   result desired." S.G. Borello & Sons, Inc. v. Dept. of Indus. Rel.

4   48 Cal. 3d 341, 349, (1989).  While the principal's right to

5   control is the most important consideration, California courts

6   consider a number of additional factors, including: the right of

7   the principal to discharge at will, without cause; whether the one

8   performing services is engaged in a distinct occupation or

9   business; whether the work is usually done under the direction of

10  the principal; whether the principal or the worker supplies the

11  instrumentalities, tools, and the place of work for the person

12  doing the work; the length of time for which the services are to be

13  performed; the method of payment; whether the work is a part of the

14  regular business of the principal; and whether the parties believe

15  they are creating an employer-employee relationship. Id. at 351.

16      As common proof of their Labor Code claims, Plaintiffs offer

17  Jani-King's franchise manuals and other documents, which they claim

18  show that Jani-King directs the franchisees' method of cleaning,

19  their cleaning schedule, their contact with customers, and their

20  manner of dress, as Jani-King requires franchisees to wear uniforms

21  with the Jani-King logo.  Mot. at 3.  Plaintiffs submit, as

22  evidence of "control," that franchisees must be reachable by Jani-

23  King within four hours of contact and must notify Jani-King before

24  going on vacation; that franchisees are not permitted to handle

25  customer complaints without notifying Jani-King and following

26  specific procedures; that franchisees must obtain Jani-King's

27  approval before they establish an office location, use a trade or

28  business name, or create a vehicle display; and that franchisees

must "always use Jani-King's name and Jani-King's phone number with clients." Id. Plaintiffs cite Jani-King's advertising material -- which touts the company's "quality control" over its franchisees -- as evidence of an employer-employee relationship. Id. Plaintiffs argue that because it is undisputed that the class members "performed janitorial work" for Jani-King, Jani-King should have the burden of rebutting the existence of an employer/employee relationship. Reply at 2 (citing Narayan v. EGL, Inc., 616 F.3d 895, 900 (9th Cir. 2010)).

Jani-King responds that many of the above-mentioned franchise agreement terms are policies Jani-King must abide by under California's law governing franchises. Opp'n at 8. Section 20001 of California's Business and Professions Code defines the term "franchise" as "a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:"

> (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and

> (b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Bus. & Prof. Code § 20001(b); Cal. Corp. Code § 31005(a).

Jani-King argues that Plaintiffs' common proof "shows nothing more than that which makes the owners franchisees." Id. at 7-8.

United States District Court
For the Northern District of California

20

**United States District Court**
For the Northern District of California

1  Jani-King also argues that Plaintiffs, not Jani-King, should have

2  the burden of establishing an employer-employee relationship.  Id.

3  The Court agrees with Jani-King.  It is true that under

4  California law, in determining whether a plaintiff is an employee

5  or an independent contractor, "once a plaintiff comes forward with

6  evidence that he provided services for an employer, the employee

7  has established a prima facie case that the relationship was one of

8  employer/employee." Narayan, 616 F.3d at 900.  However, Plaintiffs

9  cite no authority suggesting that this rebuttable presumption

10  applies to franchisees.  There are substantial public policy

11  reasons for the rule provided in Narayan: with the hiring of

12  employees comes the additional expenses of compliance with

13  California's Labor Code, and employers have a strong motive to

14  avoid these costs through creatively classifying their workers as

15  independent contractors.  This is why California does not permit

16  circumvention of the Labor Code through "label" or "subterfuge."

17  S.G. Borello, 48 Cal. 3d at 349.  Franchisors, however, are subject

18  to a considerable amount of regulation that does not apply to

19  independent contractors or employees.  For instance, franchisors

20  are compelled by state and federal law to make detailed disclosures

21  to prospective franchisees, and must provide a fourteen-day waiting

22  period between provision of the disclosure document and the sale of

23  the franchise.  See 16 C.F.R. § 436.  Thus the above policy

24  concerns do not weigh as heavily in the franchise context.

25  In support of its argument that the rebuttable presumption

26  does not apply to franchisees, Jani-King cites to a number of cases

27  discussing the problem of agency in the franchisor-franchisee

28  relationship.  In Cislaw v. Southland Corp., 4 Cal. App. 4th 1284,

21

United States District Court
For the Northern District of California

1   1292 (Ct. App. 1992), the court held that a "franchisor's interest
2   in the reputation of its entire system allows it to exercise
3   certain controls over the enterprise without running the risk of
4   transforming its independent contractor franchisee into an agent."
5   For this reason, California courts have consistently held that a
6   principal-agent relationship exists only when the franchisor
7   retains complete or substantial control over the daily activities
8   of the franchisee's business.  Id. at 1296.

9       Cislaw's test for principal-agent liability in the franchisor-
10  franchisee context has been found helpful by other courts in
11  addressing the employee-independent contractor question.  In Singh
12  v. 7-Eleven, Inc., No. C-05-4534, 2007 WL 715488, *7 (N.D. Cal.
13  Mar. 8, 2007), a federal district court granted summary judgment in
14  the franchisor's favor on the plaintiff's Labor Code claims,
15  finding that the franchisor 7-Eleven failed to exercise control
16  beyond that which was necessary to protect and maintain its
17  trademark, trade name, and goodwill, despite the fact that the
18  franchisor paid the franchisee's lease and utilities, shared in the
19  store's profits, and sent a field consultant to the store for
20  weekly visits to evaluate the condition of the store and provide
21  advice on increasing sales and profits.  Id. at *1.

22      Plaintiff argues that Cislaw and the other cases cited by
23  Jani-King are inapposite because they do not discuss the employee-
24  independent contractor distinction.  Reply at 4.  But Plaintiffs
25  offer no competing law; they merely continually cite to Narayan as
26  the appropriate test.  Id.

27      While the answer is not entirely clear, the Court finds it
28  likely that under California law, a franchisee must show that the

franchisor exercised "control beyond that necessary to protect and maintain its interest in its trademark, trade name and goodwill" to establish a prima facie case of an employer-employee relationship. Cislaw, 4 Cal. App. 4th at 129.  As such, the Court can safely exclude from the employee-employer relationship analysis facts that merely show the common hallmarks of a franchise -- those that constitute a "marketing plan or system" under which the franchisee's operation is "substantially associated with the franchisor's trademark, service mark, trade name," or goodwill. Cal. Bus. & Prof. Code § 20001(b).  Jani-King's franchisees are required to follow specific methods of cleaning and handle customer complaints a certain way because that is part of Jani-King's required franchise system.  Franchisees must wear uniforms, use Jani-King's name and phone number in client communication, and receive approval before they create marketing and advertising tools because the system must be substantially associated with the franchise's service mark.

Once it sets aside the policies required to protect Jani-King's service mark and goodwill, the Court finds very little -- if any -- common evidence tending to prove an employer-employee relationship between Jani-King and its franchisees.  For these reasons, the Court finds that individual questions predominate over common questions, and that class treatment of Plaintiffs' Labor Code claims is not superior to individual actions.

### 2.   Plaintiffs' Good Faith Claim

Plaintiff alleges that Jani-King breached its covenant of good faith and fair dealing with all class members in the same manner. Mot. at 9.  Plaintiffs claim that although Jani-King is required

**United States District Court**
For the Northern District of California

under the franchise agreement to offer a certain volume of cleaning accounts to each franchisee, Jani-King frustrates the franchisee's opportunity to benefit from this promise by (1) crediting an offered account, regardless of whether the franchisee accepts the account; (2) withdrawing offers before a franchisee has the opportunity to review the account, inspect the account property, and accept; and (3) taking away accounts from franchisees at will. Mot. at 9.  Plaintiffs additionally argue that "Jani-King's uniform bidding process and formulas are such that, after all the Jani-King fees and the costs of doing business that class members must incur are taken into account, class members are deprived of any profits from the accounts."  Id.

Jani-King argues that whether it breached a duty to its franchisees requires "an individual inquiry into whether each owner had a chance to respond to offers, to accept offers, to review accounts, or to inspect the property."  Opp'n at 11.  Jani-King argues that the evidence cited by Plaintiffs are "hand-picked declarations."  Opp'n at 4.  Jani-King argues that these declarations are not representative of the class as a whole; that "the declarations are filled with qualifications showing that the events were not uniform even for the individual declarants but happened only 'sometimes' or, at most, 'often,'" and that the declarants' deposition testimony contradicts their declarations. Id.

Having reviewed the evidence, the Court finds Plaintiffs have failed to establish that Jani-King's allegedly breaching activity can be shown through common proof.  The "common proof" cited -- a handful of nearly identical declarations picked from a putative

24

**United States District Court**
For the Northern District of California

class of nearly two thousand -- shows only that a dozen franchisees had similar experiences, and does not tend to show that common issues predominate through the class as a whole.

Plaintiffs additionally argue that they can establish lack of good faith through expert testimony showing that Jani-King lacks sufficient accounts to fulfill all of its obligations owed to its franchisees. Mot. at 19. Jani-King argues that this alleged breach can only be proved with individual evidence. Opp'n at 10. Jani-King provides a chart in its Opposition, which it claims shows that the fourteen deponents and Plaintiffs entered into agreements with Initial Business Obligations ranging from $1000 to $11,000; that some accepted all or nearly all of the accounts offered, while others accepted eighty percent or less of the accounts offered. Id. at 11. Jani-King also argues that even if Plaintiffs could prove that Jani-King lacked the funds to meet all its obligations, this would only affect the franchises who were not offered sufficient accounts. Id. at 12. Jani-King asserts that this would require individual inquiries to determine whether any transferred account was transferred due to Jani-King's bad faith or a valid reason, such as a franchise owner's non-performance or the cancellation by a client. Id. Jani-King claims that even if there were a common bidding system, good faith would require each franchisee to prove that it was wrongfully denied benefits of the contract, citing Newell v. State Farm Gen. Ins. Co., 118 Cal. App. 4th 1094, 1103 (2004). Id. at 13.

In light of these arguments, the Court finds the issue of breach of good faith to be highly factual, and to be dependent on individual proof. As such, it finds that common issues do not

United States District Court
For the Northern District of California

1  predominate and that class action would not be superior to
2  individual actions.

3         3.  <u>Plaintiffs' Concealment Claim</u>

4      To prevail on its concealment claim, Plaintiffs must show that
5  Jani-King has concealed or suppressed a material fact, Jani-King
6  was under a duty to disclose the fact to Plaintiffs, Jani-King
7  intentionally concealed the fact to defraud Plaintiffs, Plaintiffs
8  were unaware of the fact and would not have acted as they did with
9  knowledge of the fact, and Plaintiffs suffered damage as a result
10 of the concealment.  <u>Marketing West, Inc. v. Sanyo Fisher (USA)</u>
11 <u>Corp.</u>, 6 Cal. App. 4th 603, 612-13 (Ct. App. 1992).

12     Plaintiffs claim that Jani-King concealed from prospective
13 franchisees Jani-King's bidding practices, the amount of business
14 it has to offer, how it offers accounts, and how it prices
15 accounts.  Mot. at 21-22.  Plaintiffs claim: "Jani-King's
16 fraudulent omissions arise in the context of standardized and
17 scripted disclosures about the details of purchasing and owning a
18 franchise and thus are made to all class members.  Jani-King
19 follows a standard, detailed protocol when it sells a franchise."
20 <u>Id.</u> at 11.

21     Jani-King argues that Plaintiffs must prove that Jani-King had
22 a duty to disclose this information, and "Plaintiffs cannot provide
23 this duty on a classwide basis without overriding California's
24 franchise regulations."  Opp'n at 18.  Jani-King also argues that
25 Plaintiffs must prove justifiable reliance, which is "an individual
26 issue."  <u>Id.</u>  Jani-King writes: "Plaintiffs must prove that each
27 owner would have acted differently had the omitted information been
28 disclosed . . . . This will require an individual inquiry to

**United States District Court**
For the Northern District of California

1    determine what each owner already knew, whether he or she would

2    have received any disclosure, and whether it would have caused him

3    or her to act differently." Id. at 18-19.  Jani-King notes that

4    deposition testimony shows that while some franchisees read Jani-

5    King's disclosures, some did not, and argue that this shows that

6    for some would-be class members, additional disclosures would have

7    made no difference.  Id. at 19.

8         The Court finds that individual issues will predominate in

9    determining questions of the duty owed by Jani-King and justifiable

10   reliance by franchisees.  Plaintiffs cite no authority for the

11   argument that this Court is in a position to augment the detailed

12   disclosure requirements California and the federal government place

13   on sellers of franchises.  Therefore, the franchisee-franchisor

14   relationship alone cannot give rise to these additional disclosure

15   requirements, and if any additional duty exists, it is created by

16   the details of the relationship between Jani-King and the specific

17   franchisee owed the duty.  Plaintiffs do not produce evidence

18   suggesting that the class members are all so similarly situated

19   that they would all be owed an additional disclosure duty.  The

20   Court thus finds this issue is heavily factual, and that Plaintiffs

21   have failed to show that common issues predominate over individual

22   issues such that class treatment would be superior.

23            4.  Plaintiffs' UCL Claim

24        The UCL prohibits businesses from engaging in "any unlawful,

25   unfair or fraudulent business act or practice."  Bus. & Prof. Code

26   § 17200; Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co., 20 Cal.

27   4th 163, 180 (1999).

28        Plaintiffs allege the above-mentioned claims -- the Labor Code

27

**United States District Court**
For the Northern District of California

claims, good faith claim, and concealment claim -- serve as predicates satisfying the UCL's unlawful and fraudulent prongs. Mot. at 17.  Plaintiffs admit that "[t]here is no substantive difference in the analysis of these claims under the UCL unlawful prong."  Id.  Because the Court finds individual issues predominate each of these claims, it finds that a UCL claim predicated on these claims also fails the predominance and superiority requirements.

Plaintiffs also argue that the UCL's unfairness prong is satisfied through Jani-King's practice of charging franchise fees which are "excessive and unfair;" through the inclusion of a non-compete clause in the franchise agreement; and through the franchise agreement's refund policy, which Plaintiffs claim rewards Jani-King for failing to satisfy its contractual obligations.  Mot. at 11-12.

Plaintiffs and Jani-King agree that the question of what constitutes an unfair consumer practice is unsettled in California. See Mot. at 10-11; Opp'n at 21-22.  Some California courts of appeal balance the impact of the allegedly unfair conduct "against the reasons, justifications and motives of the alleged wrongdoer." S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999).  Others require a showing of "conduct that threatens an incipient violation of [a] law, or violates the policy or spirit of one of [the] laws because its effects are comparable to or the same as a violation of the law."  Cel-Tech, 20 Cal. 4th at 187.  Others adopt the approach of the Federal Trade Commission and require plaintiffs to prove three elements: (1) the consumer injury must be substantial; (2) it must not be outweighed by any countervailing benefits to consumers or competition; and (3) it

United States District Court
For the Northern District of California

1    must be an injury that the consumer himself could not reasonably

2    have avoided.  See, e.g., Davis v. Ford Motor Credit Co. LLC, 179

3    Cal. App. 4th 581, 597-98 (2009).  Plaintiffs argue that the third

4    test is the appropriate test.  Mot. at 11.

5        Under any of these tests, including Plaintiff's preferred

6    test, Plaintiffs have failed to show common proof of their UCL

7    claim.  For the fees charged to be unfair under this test,

8    Plaintiffs must prove that they caused a substantial injury to the

9    class.  Aside from citing to handpicked declarations -- some of

10   which are contradicted by the franchisees' deposition testimony --

11   there is no evidence, let alone common evidence, of such an injury.

12   Similarly, Plaintiffs have introduced no evidence that the non-

13   compete provision caused injury.  Indeed, Plaintiffs have

14   introduced no evidence that the non-compete provision was enforced,

15   or that the non-compete provision affected the franchisees'

16   behavior in any way.  As to the third argument -- that the

17   franchise agreement's terms rewarded Jani-King for failing to meet

18   its contract obligations -- Plaintiffs do not fully flesh out this

19   argument and cite to no California case law suggesting that such a

20   refund policy could constitute an unfair practice under

21   California's unfair competition law.  The Court cannot bind a class

22   on so novel a theory and so bare an evidentiary record.

23       In summary, class certification is inappropriate for all eight

24   of the claims Plaintiffs seek to be certified, because individual

25   issues predominate over common issues, because the named

26   Plaintiffs' claims are not typical of the class as a whole, and

27   because the named Plaintiffs and their counsel have not established

28   that they are capable of adequately representing the class.

**V.   <u>CONCLUSION</u>**

    For the foregoing reasons, the Court DENIES Plaintiffs'
Amended Motion for Class Certification.   The case shall proceed as
an action on behalf of Alejandro Juarez, Maria Juarez, Luis A.
Romero, and Maria Portillo individually.   A Case Management
Conference is scheduled for April 29, 2011, at 10:00 a.m. in
Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate
Avenue, San Francisco, CA 94102.   Parties shall file a Joint Case
Management Statement no later than seven (7) days before the Case
Management Conference.


    IT IS SO ORDERED.


    Dated: March 4, 2011

                                    _____
                                    UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California