United States District Court
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6         FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   ALEJANDRO JUAREZ, MARIA JUAREZ,    ) Case No. 09-3495 SC
    LUIS A. ROMERO and MARIA PORTILLO, )
9   individually and on behalf of all  ) ORDER RE: DEFENDANTS'
    others similarly situated,         ) MOTIONS FOR SUMMARY
10                                      ) JUDGMENT
                                        )
11            Plaintiffs,               )
                                        )
12        v.                            )
                                        )
13  JANI-KING OF CALIFORNIA, INC., a    )
    Texas corporation, JANI-KING,      )
14  INC., a Texas corporation, JANI-   )
    KING INTERNATIONAL, INC., a Texas  )
15  corporation, and DOES 1 through    )
    20, inclusive,                     )
16                                      )
                                        )
17            Defendants.               )
                                        )
18  _____

19  I.   **INTRODUCTION**

20       Before the Court are two motions for summary judgment brought

21  by Defendants Jani-King of California, Inc., Jani-King, Inc., and

22  Jani-King International, Inc. (collectively, "Jani-King").  ECF No.

23  149 ("MSJ").  First, Jani-King moves for summary judgment on all

24  claims brought by Plaintiffs Alejandro and Maria Juarez ("the

25  Juarezes") and Maria Portillo ("Portillo") (collectively,

26  "Plaintiffs").  Second, Jani-King moves for partial summary

27  judgment on its counterclaims against the Juarezes.  Plaintiffs

28  filed an Opposition, and Jani-King filed a Reply.  ECF Nos. 159

**United States District Court**
For the Northern District of California

1   ("Opp'n"), 164 ("Reply").  Pursuant to Civil Local Rule 7-1(b), the

2   Court finds the Motion suitable for determination without oral

3   argument.  For the following reasons, the Court GRANTS in part and

4   DENIES in part Jani-King's motion for summary judgment on

5   Plaintiffs' claims and DENIES Jani-King's motion for partial

6   summary judgment on its counterclaims.

7

8   II.  <u>**BACKGROUND**</u>

9        **A. Factual Background**

10       The Court has already set forth much of the factual background

11  of this case in its prior order denying class certification.  ECF

12  No. 130 ("Class Cert. Order").  Jani-King provides cleaning and

13  janitorial services to commercial clients in California and other

14  states.  <u>Id.</u> at 2.  It specializes in serving larger commercial

15  clients, including commercial office buildings, healthcare

16  facilities, and retail outlets.  <u>Id.</u>

17       Jani-King's business model involves selling franchises to

18  individuals or entities, who then perform janitorial work for Jani-

19  King's clients.  <u>Id.</u>  Jani-King claims to have more than twelve

20  thousand franchisees throughout the United States.  <u>Id.</u>

21       Under the franchise agreement between Jani-King and its

22  franchisees, franchisees pay an Initial Franchise Fee and an

23  Initial Finder's Fee.  <u>Id.</u>  Both fees are paid in installments over

24  the life of the franchise agreement, with a down payment due on

25  purchase.  <u>Id.</u>  In return, Jani-King must offer each franchisee a

26  certain amount of centrally generated business -- the "Initial

27  Business Offering" ("IBO") -- during the franchisee's "Initial

28  Offering Period."  <u>Id.</u>  The amount of business Jani-King is

2

**United States District Court**
For the Northern District of California

obligated to offer is proportional to the size of the Initial

Finder's Fee paid by the franchisee.  Id.  Jani-King offers fifteen

franchise plans which are identical in all respects except the

amount of initial investment required by the franchisee and the

amount of centrally generated business promised by Jani-King.  Id.

These franchise plans range in cost from $8,600 to $46,500.  Id. at

2-3.

Franchisees do not receive an exclusive territory; rather,

each franchise agreement designates a specific non-exclusive

geographic territory.  Id. at 3.  Franchisees agree to clean,

interact with clients, and perform other business tasks according

to standardized procedures established by Jani-King.  Id.  For

example, franchisees must purchase specific cleaning equipment,

carry insurance, and report customer complaints to Jani-King.  Id.

Franchisees also solicit clients directly, although they must

comply with Jani-King's procedures in doing so.  Id.  In addition

to the two above-mentioned fees, franchisees must pay Jani-King a

number of other fees, including an accounting fee and an

advertising fee.  Id.

In addition to centralized bidding, Jani-King centrally

performs accounting, data management, and franchise training.  Id.

As a franchiser, Jani-King is subject to California's franchise

regulations, as well as the regulations of other states.  It must

provide each prospective franchisee with a Franchise Disclosure

Document ("FDD") disclosing, among other things, its litigation

history, its business experience, the fees the franchisee is

required to pay under the agreement, and the estimated total

investment that the franchisee must make to open the franchise.

**United States District Court**
For the Northern District of California

1   Cal. Corp. Code § 31114; Cal. Code. Regs. tit. X, § 310.114.1.

2       Plaintiffs in this case are four individuals who purchased

3   franchises from Jani-King and have performed janitorial work under

4   the Jani-King franchise agreement.  Id.  Plaintiffs are Spanish

5   speakers and have limited proficiency in speaking or reading

6   English.  The Juarezes jointly purchased a Plan "D" franchise for

7   $13,500 in May 2005.  Id.  Portillo and Luis A. Romero ("Romero")

8   both purchased Plan "C" franchises for $12,000.  Id. at 4.  The

9   Juarezes and Portillo have testified that they used employees to

10  perform cleaning work on many of their accounts.  See JK Ex. 5 at

11  89-91, 94-97, 104; Ex. 6 at 111-13; Ex. 7 at 57-59.[1]  The Juarezes

12  and Portillo also operated their own independent cleaning

13  businesses while they operated their Jani-King franchise.  The

14  Juarezes founded Nano's Janitor ("Nano's") in 2007, and Portillo

15  owned Tidy Maids for several years before she bought her Jani-King

16  franchise.  JK Ex. 20; Ex. 9 ("A. Juarez 2nd Dep.") at 55-72; Ex. 7

17  at 10-13; 57-59.

18      **B.   Procedural Background**

19      This action was initially filed as a putative class action in

20  California Superior Court and was removed to federal court by Jani-

21  King on July 30, 2009.  ECF No. 1.  The Court granted Jani-King's

22  motion to dismiss certain claims in the Initial Complaint on

23

24  [1] Eileen Hunter ("Hunter"), Jani-King's attorney, submitted two
    declarations in support of Jani-King's motions for summary

25  judgment.  ECF Nos. 149-2 ("Hunter Decl."); 164-2 ("Hunter Supp.
    Decl.").  Exhibit numbers 1 through 37 were attached to the Hunter

26  Declaration and exhibit numbers 38 through 50 were attached to the
    Hunter Supplemental Declaration (hereinafter, "JK Exs. 1-50").

27  Shannon Liss-Riordan ("Liss Riordan"), Plaintiffs' attorney,
    submitted a declaration in opposition to Jani-King's motion.  ECF

28  No. 157 ("Liss-Riordan Decl.").  Forty-nine exhibits were attached
    to the Liss-Riordan Declaration (hereinafter, "Pls.' Exs. 1-49").

4

**United States District Court**
For the Northern District of California

1  October 5, 2009.  ECF No. 25.  On November 4, 2009, Plaintiffs

2  filed their FAC, which Jani-King answered.  ECF Nos. 32 ("FAC"), 35

3  ("Answer").

4      The FAC alleges fourteen causes of action:  (1) & (2)

5  violations of California Corporations Code §§ 31201, 31202; (3) &

6  (4) deceit by intentional misrepresentation and concealment; (5)

7  negligent misrepresentation, (6) breach of contract; (7) breach of

8  the implied covenant of good faith and fair dealing ("breach of the

9  implied covenant"); (8) failure to pay overtime in wages; (9)

10 failure to pay minimum wage for all hours worked; (10) failure to

11 provide accurate itemized wage statements; (11) failure to

12 indemnify employees for expenses; (12) unlawful deductions for

13 wages; (13) compelling employees to patronize employer; (14) unfair

14 competition in violation of California Business and Professions

15 Code § 17200.

16     On July 8, 2010, Jani-King sought leave from the Court to file

17 a counterclaim against the Juarezes, which the Court granted.  ECF

18 Nos. 47, 112.  In its counterclaim, Jani-King alleges that, without

19 first seeking termination of their Jani-King franchise, the

20 Juarezes formed Nano's and induced Jani-King customers to terminate

21 their cleaning agreements and transfer their business to the

22 competing firm.  ECF No. 115 ("Countercl.").  Jani-King brings

23 action for (1) breach of contract, (2) tortious interference with

24 contract, and (3) tortious interference with prospective economic

25 advantage.  Id.

26     The Court denied Plaintiffs' amended motion for class

27 certification on March 4, 2011 and ordered that the case proceed as

28 an action on behalf of the Juarezes, Portillo, and Romero.  ECF No.

**United States District Court**
For the Northern District of California

1  130 ("Class Cert. Order").  On September 27, 2011, Romero and Jani-

2  King stipulated to the entry of judgment against Jani-King and in

3  favor of Romero in the amount of $50,000.  ECF No. 148.

4       Jani-King now moves for summary judgment on all fourteen

5  claims brought by the remaining plaintiffs.  Jani-King argues that

6  it is entitled to summary judgment on Plaintiffs' labor code claims

7  because Plaintiffs are independent contractors, not employees.  MSJ

8  at 4-5.  As to Plaintiffs' contract and fraud-based claims, Jani-

9  King argues that it disclosed all required information and

10 fulfilled its obligations under the franchise agreements.  Id. at

11 8-22.  Jani-King also moves for partial summary judgment on its

12 contract counterclaim against the Juarezes because the Juarezes

13 purportedly used Nano's to siphon business away from Jani-King in

14 violation of the franchise agreement.  Id. at 23-24.

15

16 **III.  LEGAL STANDARD**

17      Entry of summary judgment is proper "if the movant shows that

18 there is no genuine dispute as to any material fact and the movant

19 is entitled to judgment as a matter of law." Fed. R. Civ. P.

20 56(a).  Summary judgment should be granted if the evidence would

21 require a directed verdict for the moving party.  Anderson v.

22 Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]

23 mandates the entry of summary judgment . . . against a party who

24 fails to make a showing sufficient to establish the existence of an

25 element essential to that party's case, and on which that party

26 will bear the burden of proof at trial." Celotex Corp. v. Catrett,

27 477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be

28 believed, and all justifiable inferences are to be drawn in his

favor." <u>Anderson</u>, 477 U.S. at 255.  However, "[t]he mere existence
of a scintilla of evidence in support of the plaintiff's position
will be insufficient; there must be evidence on which the jury
could reasonably find for the plaintiff." <u>Id.</u> at 252.  "When
opposing parties tell two different stories, one of which is
blatantly contradicted by the record, so that no reasonable jury
could believe it, a court should not adopt that version of the
facts for purposes of ruling on a motion for summary judgment."
<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  "Where the moving party
will have the burden of proof on an issue at trial, the movant must
affirmatively demonstrate that no reasonable trier of fact could
find other than for the movant." <u>Dias v. Nationwide Life Ins. Co.</u>,
700 F. Supp. 2d 1204, 1214 (E.D. Cal. 2010).  "Where the non-moving
party will have the burden of proof on an issue at trial, the
movant may prevail by presenting evidence that negates an essential
element of the non-moving party's claim or by merely pointing out
that there is an absence of evidence to support an essential
element of the non-moving party's claim." <u>Id.</u>

**IV.  <u>DISCUSSION</u>**

    **A.  <u>Plaintiffs' Labor Code Claims (Claims 8-13)</u>**

    The legal theory underlying Plaintiffs' labor code claims
(claims 8-13) is that Jani-King's common policies and practices so
tightly controlled the franchisees' actions as to create an
employer-employee relationship between Jani-King and Plaintiffs.
Jani-King argues that no trial is required to decide these labor
claims because the undisputed facts show that Plaintiffs were
independent contractors.  The Court agrees.

United States District Court
For the Northern District of California

In California, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  S. G. Borello & Sons, Inc. v. Department of Indus. Relations, 48 Cal. 3d 341, 350 (Cal. 1989) (internal quotations and citations omitted).  While the principal's right to control is the most important consideration, California courts consider a number of additional factors, including: the right of the principal to discharge at will, without cause; whether the one performing services is engaged in a distinct occupation or business; whether the work is usually done under the direction of the principal; whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the services are to be performed; the method of payment; whether the work is a part of the regular business of the principal; and whether the parties believe they are creating an employer-employee relationship.  Id. at 351.

In most cases, "once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee."  Narayan v. EGL, Inc., 616 F.3d 895, 900 (9th Cir. 2010) (applying California law).  However, this presumption does not apply in the franchise context.  A franchisee must show that the franchisor exercised "control beyond that necessary to protect and maintain its interest in its trademark, trade name, and good will" to establish a prima facie case of an employer-employee relationship.  Cislaw v. Southland Corp., 4 Cal. App. 4th 1284,

1  1296 (Cal. Ct. App. 1992).[2]

2      The Court finds that Jani-King did not exercise sufficient

3  control over Plaintiffs to render them employees.  Plaintiffs had

4  the discretion to hire, fire, and supervise their employees, as

5  well as determine the amount and manner of their pay.  See JK Ex. 5

6  21-26, 89-108; Ex. 7 at 10-13, 60-61, 65-66.  Plaintiffs had the

7  contractual right to decline accounts and, in practice, they did

8  so.  JK Ex. 1 at 7506; Ex. 5 at 101; Ex. 7 at 82-89.  Jani-King

9  could not terminate Plaintiffs' franchise without cause.  See Cal.

10  Bus. & Prof. Code. § 20020.  Plaintiffs purchased their own cleaning

11  supplies and equipment.  JK Ex. 5 at 116-19; Ex. 7 at 77-80.

12  Plaintiffs could bid their own accounts and sell their businesses.

13  See JK Ex. 6 at 114-115; 148-149.  Plaintiffs decided when to

14  service certain accounts, subject to timeframes set forth by their

15  clients.  JK Ex. 5 at 88-89; Ex. 7 at 126-27.  Instead of an hourly

16  wage, Plaintiffs' compensation came in the form of gross revenues,

17  less fees paid to Jani-King.  JK Ex. 5 at 126-127; Ex. 7 at 112-13.

18  Finally, Plaintiffs' franchise agreements expressly state that

19  franchisees are independent contractors.  JK Ex. 3 § 12.7; Ex. 4 §

20  12.7.

21      As Plaintiffs point out, Jani-King imposed a number of

22  controls on franchisees.  See Opp'n at 7-11.  However, these

23  controls were no more than necessary to protect Jani-King's

24  trademark, trade name, and good will and, accordingly, did not

25  create an employer-employee relationship between Jani-King and

26

27  [2] Plaintiffs argue that Cislaw is inapposite and that the Court
should instead apply the standard enunciated in Narayan.  Opp'n at

28  4-6.  This argument was addressed and rejected in the Court's prior
order denying class certification.  See Class Cert. Order at 18-23.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Plaintiffs.  For example, to protect its customer relationships,

2  Jani-King retains sole ownership of all contracts with cleaning

3  clients.  <u>See</u> Pls.' Ex. 9 § 14.9.2.  While all contracts for

4  provision of services are drafted by Jani-King, <u>id.</u>, franchise

5  owners may "freely set [their] own prices for services and products

6  . . . provided such actions do not affect the business of the

7  franchisor," <u>id.</u> § 12.1.  Jani-King also protects its goodwill by

8  retaining the power to terminate a franchisee's right to service a

9  particular client when the franchisee fails to comply with Jani-

10  King's policies and procedures.  <u>Id.</u> § 4.17.2.  Jani-King performs

11  billing and accounting for franchisees' cleaning services to

12  maintain consistency across the franchise.  <u>Id.</u> § 4.7.  There is no

13  evidence that this practice limited the business opportunities

14  available to franchisees.  Jani-King also communicated directly

15  with some of Plaintiffs' clients to address complaints and ensure

16  customer satisfaction.[3]  Pls.' Ex. 6 at 90, 140-141; Ex. 7 at 95-

17  96.

18      Plaintiffs make much of the fact that Jani-King collected

19  payments directly from customers and then remitted "what resembles

20  a paycheck to workers."  Opp'n at 8.  Regardless of how payments

21  were collected and distributed, it remains undisputed that

22  Plaintiffs were entitled to the revenues generated by their

23  franchises, less franchise fees.  Plaintiffs also argue that

24  "[w]orkers are not free to choose their own clients; they may only

25  accept or reject a proposed assignment."  Opp'n at 7.  Plaintiffs

26  offer no facts to support this conclusion and their own deposition

27  ───────────────

28  [3] Jani-King did not have a monopoly on such communications,
Plaintiffs often talked directly with clients about their accounts.
<u>See</u> JK Ex. 6 at 41; Ex. 7 at 85-87.

**United States District Court**
For the Northern District of California

1  testimony indicates that they were permitted and encouraged to seek

2  out and bid their own commercial cleaning accounts, independent of

3  Jani-King's sales staff.  See JK Ex. 6 at 148-49; Ex. 7 at 84-89.

4       Plaintiffs have failed to raise a triable issue that Jani-King

5  exercised control beyond that necessary to protect and maintain its

6  interest in its trademark, trade name, and good will.  Accordingly,

7  the Court GRANTS Jani-King's motion for summary judgment with

8  respect to Plaintiffs' labor code claims.

9       **B.**   **Plaintiffs' Fraud and CFIL Claims (Claims 1-5)**

10       Jani-King argues that Plaintiffs claims for fraud and

11  violations of the California Franchise Investment Law ("CFIL") fail

12  because (1) they are time-barred; and (2) Plaintiffs could not have

13  reasonably relied on Jani-King's alleged misrepresentations.  The

14  Court agrees.

15       Plaintiffs' claims for fraud and CFIL violations are

16  predicated on nine categories of fraudulent actions.  Specifically,

17  Plaintiffs allege that Jani-King: (1) made false earnings promises;

18  (2) misrepresented the amount of work available for franchisees;

19  (3) misrepresented the geographic location of available accounts;

20  (4) failed to fully disclose Jani-King's fees and costs; (5) failed

21  to provide Plaintiffs with the Uniform Franchise Offering Circular

22  ("UFOC") before they signed their franchise agreements; (6)

23  misrepresented that Plaintiffs' franchise down-payment was the

24  exclusive purchase price; (7) failed to disclose Plaintiffs' right

25  to seek a refund if their franchise failed to secure a certain

26  amount of business within the "Initial Offering Period"; (8)

27  misrepresented that Plaintiffs were required to purchase supplies

28  from Cole Supplies, which is owned by Jani-King; and (9) failed to

provide Plaintiffs with Spanish language translations of key documents, including their franchise agreements.

As Defendants argue, these alleged omissions and oral misrepresentations are directly contradicted by written agreements received and signed by Plaintiffs.  Accordingly, evidence of these misrepresentations is barred by the parol evidence rule.  See Duncan v. McCaffrey Grp., Inc., 200 Cal. App. 4th 346, 369 (Cal. Ct. App. 2011) ("[A]n integrated contract establishes the terms of the agreement between the parties, and evidence suggesting the terms are other than those stated in the agreement is irrelevant.").  Plaintiffs argue that, under the fraud exception to the parol evidence rule, they are permitted to introduce evidence of oral promises to show that their agreements with Jani-King were induced by fraud.  Opp'n at 11-13.  However, the fraud exception does not apply where, as here, the alleged oral promises directly contradict the terms of a written agreement.  See Cobbs v. Cobbs, 53 Cal. App. 2d 780, 784 (Cal. Ct. App. 1942).  To be admissible, parol evidence "must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing."[4]  Bank of Am. Assn. v. Pendergrass, 4 Cal. 2d 258, 263 (Cal. 1935).

Specifically, the omissions and oral misrepresentations alleged by Plaintiffs are contradicted by the Franchise Agreement, UFOC, and various other documents signed by Plaintiffs.  The

---

[4] "This interpretation has been widely criticized, but has never been overruled."  Scott v. Minuteman Press Int'l, No. 94-15140, 1995 U.S. App. LEXIS 30130 (9th Cir. Oct. 13, 1995).

United States District Court
For the Northern District of California

12

Franchise Agreement included terms concerning profits and earnings, the down-payment and total purchase price, the geographic location of accounts, fees and costs, and refund rights, among other things. See JK Ex. 3 at 1, §§ 4.3, 6.1.1, 6.5, 6.8; Ex. 4 §§ 6.1.1, 6.5., 6.8; Ex. 11 at 45.  When Plaintiffs purchased their franchises, they signed a written form acknowledging that they had not received any representation regarding any "sales, income, or profit levels." JK Ex. 10; Ex 11.  Plaintiffs also signed written documents acknowledging that they received the UFOC before signing their franchise agreements and Portillo subsequently testified that she received the UFOC.[5]  Id.; JK Ex. 7 at 42-43.  The UFOC expressly states that Jani-King does not promise any amount of profits or earnings.  JK Ex. 1 at Item 19; 2 at Item 19.  The UFOC also states that franchise owners "may purchase" supplies and equipment from Jani-King, but they have "no obligation to purchase or lease" required items "from any designated supplier."  Id. at Item 8. Pre-contractual oral representations concerning any of these terms are inadmissible.  Accordingly, Plaintiffs' statutory fraud claims must fail.

Plaintiffs' statutory fraud claims are also time barred as Plaintiffs should have discovered the truth or falsity of most of the alleged misrepresentations before the statute of limitations had run.  The limitations period for an "untrue statement" under CFIL is two years after the violation or one year "after the

---

[5] Alejandro Juarez testified that Jani-King gave him a "big white book to read over the rules" during his first meeting at the Jani-King office, but does not remember whether that book was the UFOC. JK Ex. 9 at 137-38.  In light of his testimony and his signed acknowledgment, the Court finds there is no issue of triable fact as to whether the Juarezes received the UFOC before signing the franchise agreement.

discovery by the plaintiff of the facts constituting such

violation," whichever is sooner.  Cal. Corp. Code. §§ 31201, 31304.

For willfully untrue statements, the period is four years after the

violation or one year after its discovery, whichever is sooner.

Id. §§ 31300, 31303.  The limitations period for Plaintiffs'

remaining statutory fraud claims is three years from discovery.

Cal. Civ. Proc. Code § 338.  "The statute commences to run only

after one has notice of circumstances sufficient to make a

reasonably prudent person suspicious of fraud, thus putting him on

inquiry."  Briskin v. Ernst & Ernst, 589 F.2d 1363, 1367 (9th Cir.

1978) (quoting Schaefer v. Berinstein, 140 Cal. App. 2d 278, 294-95

(Cal Ct. App. 1956)).

Plaintiffs' suit was not filed until June 22, 2009, and

Plaintiffs should have discovered the facts constituting the

violation soon after they opened their franchises in 2005.  During

that time, they had "notice of circumstances sufficient to make a

reasonably prudent person suspicious" based on their earnings, the

amount of work made available to them, the geographic location of

their clients, and the fees and costs charged by Jani-King.  These

are fundamental aspects of Plaintiffs' businesses.  Accordingly, it

is implausible that Plaintiffs were unaware of these facts before

the statute of limitations had run.[6]

---

[6] Plaintiffs argue that they were unaware of Jani-King's
misrepresentations until after this suit was filed.  This argument
is unpersuasive.  Opp'n at 14-15.  First, the relevant inquiry is
not whether Plaintiffs had knowledge of the fraud, but whether a
reasonably prudent person would have been put on notice.  Second,
the deposition testimony relied on by Plaintiffs is too vague to
support their assertion.  See Pls.' Ex. 5 at 121; Ex. 7 at 90; Ex.
21 at 170-73.  Third, Plaintiffs concede in their opposition brief
that they were aware of some of the alleged misrepresentations
before the statute had run.  See, e.g., Opp'n at 14 ("Mr. and Ms.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   For the foregoing reasons, the Court GRANTS Jani-King's

2   motion for summary judgment with respect to Plaintiff's causes of

3   action for fraud and violations of CFIL.

4      **C.**   **<u>Plaintiffs' Claim for Breach of Contract (Claim 6)</u>**

5   In the FAC, Plaintiffs allege that Jani-King breached its

6   Franchise Agreements with the Juarezes and Portillo in a variety of

7   ways. <u>See</u> FAC ¶¶ 74, 81, 119, 112, 182.  In responding to Jani-

8   King's motion for summary judgment, Plaintiffs appear to abandon

9   all of these claims but one -- that Jani-King failed to meet its

10  IBO requirement and provide Plaintiffs with refunds required by the

11  contract.  <u>See</u> Opp'n at 15-16.  The Court finds that triable issues

12  of fact exist as to Portillo's claim for breach, but Jani-King is

13  entitled to summary judgment on the Juarez's claim for breach.

14  Under the franchise agreement, Jani-King was required to offer

15  Portillo $2,000 in business during a 120-day initial offering

16  period, which began on May 4, 2005.  JK Ex. 3 at 1.  If Jani-King

17  failed to meet its IBO, it was required to refund three times the

18  amount of the shortfall.  <u>Id.</u> § 4.3.3.  Jani-King concedes that,

19  considering the facts in a light most favorable to Portillo, it

20  satisfied only $686.29 of Portillo's $2000 IBO during the initial

21  offering period.  MSJ at 16.  Jani-King also concedes that Portillo

22  is entitled to $3,941 -- three times the unsatisfied amount.[7]  <u>Id.</u>

23

24  Juarez complained to [Jani-King] about the fact that documents were
    not translated into Spanish . . . .  [Portillo] did not know, until
25  after she attended training, that more fees were to be charged.").

26  [7] Plaintiffs argue that there are factual disputes about the exact
    amounts Portillo would be owed under the refund provision.  Opp'n
27  at 16.  Portillo disputes which accounts Jani-King offered and
    whether those accounts were actually offered to satisfy the IBO.
28  <u>Id.</u>  In light of these and other factual disputes, Portillo may be
    entitled to more or less than $3,941.

In its Motion, Jani-King offers, apparently for the first time, to pay the refund amount of $3,941, in compliance with the Franchise Agreement.  Id.

Jani-King argues that it is not liable for breach because Portillo never requested a refund and because the Franchise Agreement does not specify that a refund must be made within a specified time period.  Id.  The Court disagrees.  First, the Franchise Agreement does not require that Portillo request a refund in order to trigger a breach.  Second, Jani-King's delay is sufficient to constitute a breach.  Jani-King failed to meet its IBO as of September 2005 and, over six years later, it has yet to provide Portillo with a refund.  While the Franchise Agreement is silent as to the time-frame for refunds, it is highly unlikely that either party contemplated a six-year period at the time of contract formation.  Third, in light of Jani-King's delay, it is uncertain that Portillo would ever receive her refund absent Court action. Finally, if Portillo was to prevail on her contract claim at trial, she may be entitled to additional relief, including interest and costs.

Plaintiffs also claim that Jani-King fell $190 short of meeting its $3000 IBO requirement for the Juarezes.  Opp'n at 16. The Court finds Plaintiffs' argument unpersuasive.  Maria Juarez testified that Jani-King met its initial business obligation and Alejandro Juarez signed a statement acknowledging the same.[8]  JK

---

[8] Jani-King also argues that Plaintiff's calculation of Jani-King's IBO is based on mistaken initial business period.  Reply at 11. The Franchise Agreement provides that the initial business period begins on the date after the franchisee (1) obtains all required equipment, (2) completes all required training, and (3) obtains the required insurance.  JK Ex. 4 § 6.1.1.  Plaintiffs contend that the

**United States District Court**
For the Northern District of California

1  Ex. 9 at 140-41; Ex. 45.  In light of these facts, Plaintiffs

2  cannot plausibly contend that Jani-King failed to satisfy its IBO

3  requirement for the Juarezes.

4      For the foregoing reasons, the Court DENIES in part Jani-

5  King's motion for summary judgment with respect to Plaintiffs'

6  breach of contract claim.  Plaintiffs' claim that Jani-King

7  breached the Franchise Agreement by failing to provide Portillo

8  with an IBO refund may proceed to trial.  Jani-King's motion for

9  summary judgment on Plaintiffs' breach of contract claim is GRANTED

10 in all other respects.

11     **D.    Plaintiffs' Claims for Breach of the Implied Covenant**

12         **(Claim 7)**

13     Plaintiffs assert that Jani-King breached the implied covenant

14 by, among other things, offering Plaintiffs accounts that generate

15 little or no income due to underbidding.  Opp'n at 17-18.  The

16 Court agrees and finds that Plaintiffs' claim for breach of the

17 implied covenant may proceed to trial.

18     "There is an implied covenant of good faith and fair dealing

19 in every contract that neither party will do anything which will

20 injure the right of the other to receive the benefits of the

21 agreement."  Kransco v. American Empire Surplus Lines Ins. Co., 23

22 Cal. 4th 390, 400 (2000) (quotations omitted).  This covenant

23 exists to "prevent one contracting party from unfairly frustrating

24

25 initial business period began to run after the Juarezes completed
   their training on June 23, 2005.  Opp'n at 16.  Jani-King responds

26 that the initial business period did not commence until one month
   later, when the Juarezes obtained all required equipment.  Reply at

27 11 (citing JK Ex. 46).  It is unclear from the documentation
   submitted by the parties when the initial business period actually

28 commenced.

1  the other party's right to receive the benefits of the agreement

2  actually made." Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 349-

3  50 (2000).  However, "the scope of the conduct prohibited by the

4  covenant of good faith is circumscribed by the purposes and express

5  terms of the contract." Carma Developers v. Marathon Dev. Cal.,

6  Inc., 2 Cal. 4th 342, 373 (1992).  The implied covenant may not be

7  read "to prohibit a party from doing that which is expressly

8  permitted by an agreement." Id. at 374.

9        In the instant action, there is a triable issue of fact as to

10  whether Jani-King breached the implied covenant by underbidding

11  accounts serviced by Plaintiffs.  The Jani-King policies and

12  procedures manual shows that Jani-King exerted a substantial amount

13  of control over bids made to clients.  See Pls.' Ex. 31 at 8183-84.

14  Plaintiffs have testified that a significant number of these bids

15  were too low and that Jani-King often underestimated the amount of

16  time necessary to service an account.  For example, Portillo

17  testified that she spent 24 hours per month servicing a Jani-King

18  account which only paid $86 per month after Jani-King fees were

19  deducted.  Pls.' Ex. 7 at 102-04.  Portillo also testified that

20  another account took significantly longer to service than Jani-King

21  had represented, id. at 94-95, that she was forced to turn down

22  several accounts because they were underbid, id. at 88-89, and that

23  Jani-King underbid almost all of the accounts she serviced, id. at

24  98.  The Juarezes offered similar testimony.  Alejandro Juarez

25  stated that Jani-King miscalculated the time it would take to clean

26  "the vast majority of accounts" and that only "three or four" of

27  his accounts were profitable.  Pls. Ex. 21 at 166.  Maria Juarez

28  stated that some of her accounts paid only $5 to $6 per hour.

**United States District Court**
For the Northern District of California

1   Pls.' Ex. 6 at 132.

2       Jani-King argues that this evidence fails to show that Jani-

3   King's bids fell below an "objective standard" that would identify

4   a properly bid account.  Reply at 12.  The Court disagrees.

5   Plaintiffs' testimony suggests that Jani-King often underestimated

6   the time it would take to service an account and that Plaintiffs

7   serviced certain Jani-King accounts for $3.58 to $6 per hour.  This

8   evidence, which Defendants do not dispute, is sufficient to create

9   a genuine issue of material fact for trial.

10      Jani-King also argues that Plaintiff's claim for breach of the

11  implied covenant fails because "Plaintiffs identify no contractual

12  provisions that were frustrated by Jani-King's bidding

13  practices[.]"  MSJ at 17.  The Court is unaware of any authority

14  that would require a plaintiff to identify "contractual provisions

15  that were frustrated" in order to state a claim for breach of the

16  implied covenant.  As Jani-King states, "the [implied] covenant

17  prohibits one party from injuring the other's right to receive 'the

18  benefits of the agreement.'"  Id. (quoting Barrous v. BP P.L.C.,

19  No. 10-CV-2944-LHK, 2010 U.S. Dist. LEXIS 108933, at *15 (N.D. Cal.

20  Oct. 13, 2010)).  In the instant action, Plaintiffs assert that

21  Jani-King interfered with their right to receive the benefits of

22  the Franchise Agreement by offering them unprofitable accounts.

23  This is sufficient to state a claim for breach of the implied

24  covenant.

25      Accordingly, the Court DENIES Jani-King's motion for summary

26  judgment with respect to Plaintiffs' claim for breach of the

27  implied covenant.

28  ///

**United States District Court**
For the Northern District of California

**E.    Plaintiffs' UCL Claim (Claim 14)**

The UCL prohibits businesses from engaging in "any [1] unlawful, [2] unfair or [3] fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs bring claims under all three prongs of the UCL.  The Court addresses each in turn.

1.   Unlawful Practices

The parties agree that Plaintiffs' claims under the unlawful prong of the UCL rise and fall with Plaintiffs' labor code, statutory fraud, and contract claims, addressed in Sections IV.A-D above.  See MSJ at 21; Opp'n at 20.  Accordingly, Plaintiffs' UCL claim for unlawful acts fails to the extent it is derivative of Plaintiffs' labor code and statutory fraud claims, but may proceed to trial to the extent it is derivative of Plaintiffs' undisturbed claims for breach of contract and breach of the implied covenant.

2.   Fraudulent Practices

Plaintiffs now assert that their claim for fraudulent practices under the UCL is predicated on Jani-King's "practice of not providing translations of documents - even when there is repeated, ongoing need for such translations - and of having [Jani-King] agents 'describe' the contents of these documents in a cursory, incomplete, and misleading manner[.]"  Opp'n at 21.  As Defendants point out, Plaintiffs' position is inconsistent with California law.  "The care and diligence of a prudent man in the transaction of his business would demand an examination of the instrument before signing, either by himself or by someone for him in whom he had the right to place confidence."  Hawkins v. Hawkins, 50 Cal. 558, 560 (1875).  The California legislature has not required franchisors to provide translations of disclosure

**United States District Court**
For the Northern District of California

1   documents or agreements to prospective franchisees.  See generally

2   Cal. Corp. Code § 31000 et seq.  Accordingly, the Court declines to

3   impose such a requirement on Jani-King.

4           3.   Unfair Business Practices

5       In the FAC, Plaintiffs allege that Jani-King engaged in eight

6   unfair business practices.  FAC ¶ 24.  The Court has already found

7   that no triable issues of fact exist as to the five unfair business

8   practices alleged in paragraphs 24c and 24e through 24h of the FAC.

9   Specifically, the Court has already addressed and rejected

10  Plaintiffs' contention that Jani-King violated the California Labor

11  Code by improperly classifying Plaintiffs as independent

12  contractors rather than employees.  See Section IV.A supra.  The

13  Court has also addressed and rejected Plaintiffs' contention that

14  Jani-King was required to provide them with Spanish language

15  translations of various disclosure documents.  See Section IV.E.2

16  supra.  Accordingly, these practices cannot form the basis of

17  Plaintiff's UCL claim.

18      The three remaining unfair business practices alleged by

19  Plaintiffs are: (1) Jani-King induced Plaintiffs to purchase

20  illusory franchise contracts using high pressure sales tactics and

21  failing to disclose material information; (2) Jani-King uses a

22  variety of tactics to keep Plaintiffs from leaving their employment

23  with Jani-King, including underbidding accounts, charging excessive

24  fees, and taking accounts from Plaintiffs without notice or

25  justification; and (3) Jani-King's franchise agreements are filled

26  with unconscionable terms.  FAC ¶¶ 24a, b, d.  Jani-King's motion

27  for summary judgment does not coherently address the first of these

28  allegedly unfair business practices.  With respect to the second

**United States District Court**
For the Northern District of California

1   set of practices, the Court has already found that triable issues

2   of fact exist as to whether Jani-King underbid accounts.  <u>See</u>

3   Section IV.D <u>supra</u>.  Accordingly, Plaintiffs' UCL claim for unfair

4   practices may proceed to trial to the extent it is based on these

5   unfair practices.

6        With respect to the third practice, Plaintiffs claim that the

7   Franchise Agreement is unconscionable because of its "unfair"

8   noncompetition provisions, "oppressive" and "confusing" IBO refund

9   provision, and "excessive" and "unfair" fee provisions.  Opp'n at

10  22-23.  As discussed in Section IV.F <u>infra</u>, the noncompetition

11  provision is overly restrictive and contrary to California law.

12  Accordingly, Plaintiffs' UCL claim for unfair practices may proceed

13  to trial with respect to this claim.[9]  However, Plaintiffs may not

14  state a claim for unfair practices based on the Franchise

15  Agreement's IBO refund and fee provisions.  Plaintiffs have cited

16  no authority to suggest that these provisions constitute unfair

17  practices under the UCL.  Further, Plaintiffs could have reasonably

18  avoided the alleged injuries by not entering the Franchise

19  Agreement.  <u>See</u> <u>Davis v. Ford Motor Credit Co. LLC</u>, 179 Cal. App.

20  4th 581, 597-98 (Cal. Ct. App. 2009).

21       For the foregoing reasons, the Court GRANTS in part and DENIES

22  in part Jani-King's motion for summary judgment with respect to

23  Plaintiffs' UCL claims.

24  ///

25  _____

[9]  Jani-King argues that Plaintiffs cannot base their unfairness
26  claim on the noncompetition provision because Plaintiffs have
introduced no evidence that the non-compete provision was enforced.
27  Reply at 14.  This argument lacks merit as Jani-King has filed a
counterclaim to enforce the noncompetition provision against the
28  Juarezes.  Countercl. ¶ 6.

**United States District Court**
For the Northern District of California

**F.   Jani-King's Counterclaim for Breach of Contract**

Jani-King argues that the Juarezes violated their Franchise Agreement by secretly creating their own cleaning company, Nano's, and using it to siphon business away from Jani-King.  MSJ at 23.

Jani-King's argument turns on the noncompetition provisions of the Franchise agreement.  The Franchise Agreement provides, in relevant part:

> Franchisee . . . agrees during the term of this Agreement [20 years] not to engage in or have any financial interest in, either as an officer, agent, stockholder, employee, director, owner, or partner, any other business which performs cleaning management services franchising or contracting cleaning management sales or any related business anywhere, except as otherwise approved in writing by Franchisor.

Pls.' Ex. 9 § 4.14.1.  In the event that the franchise is sold, assigned, or terminated, the non-competition provision remains in force for two years within the territory covered by the agreements and for one year in any other territory covered by a Jani-King Franchise agreement.  Id. § 4.14.2.  The Franchise agreement also provides that the Juarezes would pay Jani-King a fee equal to ten percent of monthly gross revenues by the fifth day of each month. Id. § 4.5.1.  Gross revenues are defined as:

> All revenue invoiced by anyone for any contract services . . . and any other revenue related to or derived from the provision of any cleaning and maintenance services . . . in connection with the conduct and operation of Franchisee's business or otherwise directly or indirectly . . . performed . . . for the benefit of you . . . regardless of the entity or business name used.

Id. (emphasis added).  Owners must pay a non-reported business fee of $25 for "each day [the] Franchisee fails to report all gross revenue," and also pay the missing royalty, advertising, and

23

accounting fees when the hidden revenue is discovered.  <u>Id.</u>

Jani-King contends that, under the express terms of the Franchise Agreement, it is entitled to a percentage of all revenues earned by Nano's as well as non-reported business fees of $25 per day.  MSJ at 24.  Jani-King points specifically to the Juarezes' deposition testimony.  <u>Id.</u>  The Juarezes admitted that they formed Nano's and that Nano's serviced at least three clients that Jani-King had bid on or that the Juarezes had first serviced as Jani-King franchise owners.  <u>See</u>, <u>e.g.</u>, JK Ex. 6 at 10-15; Ex. 5 at 18-29.  The Juarezes also admitted not reporting revenue earned by Nano's and not sharing Nano's gross revenue with Jani-King.  <u>See JK Ex. 6 at 13, 20.</u>

Plaintiffs do not dispute any of these facts.  However, they argue that there is a triable issue of fact as to whether the noncompetition provisions in the Franchise Agreement are enforceable.  The Court agrees.  Noncompetition clauses are governed by California Business and Professions Code § 16600, which states: "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[10] "California courts have repeatedly held that section 16600 should be interpreted as broadly as its language reads." <u>Scott v. Snelling & Snelling, Inc.</u>, 732 F. Supp. 1034, 1042 (N.D. Cal. 1990).  Accordingly, courts applying Section 16600 have refused to enforce noncompetition clauses, regardless of whether those clauses

---

[10] The chapter provides exceptions for noncompetition agreements in the sale or dissolution of corporations, Cal. Bus. & Prof. Code § 16601, partnerships, <u>id.</u> § 16602, and limited liability corporations, <u>id.</u> § 16602.5.

<b>United States District Court</b>
For the Northern District of California

**United States District Court**
For the Northern District of California

1   are "reasonable."  <u>See</u> <u>Aussie Pet Mobile, Inc. v. Benton</u>, NO. SACV

2   09-1407 AG, 2010 U.S. Dist. LEXIS 65126, *17 (C.D. Cal. June 28,

3   2010); <u>Snelling</u>, 732 F. Supp. at 1042-43.  The California Supreme

4   Court has recognized an exception to Section 16600 where a

5   noncompetition clause is necessary to protect a franchisor's trade

6   secrets or proprietary information.  <u>Muggill v. Reuben H. Donnelley</u>

7   <u>Corp.</u>, 62 Cal. 2d 239, 242 (Cal. 1965).

8        Several courts have refused to enforce similar non-competition

9   clauses in the franchise context.  For example, in <u>Aussie Pet</u>

10  <u>Mobile</u>, the Court addressed an Exclusive Relationship Clause that

11  prohibited the franchisee from "having any direct or indirect

12  interest as a disclosed or beneficial owner in any Similar Business

13  located anywhere" and "from performing services for any Similar

14  Business located anywhere." 2010 U.S. Dist. LEXIS 65126, at *18

15  (internal quotations omitted).  The Court found that the clause was

16  unenforceable since "[t]he broad language and lack of restrictions

17  on the scope . . . show that the intent was not merely to protect

18  trade secrets, but also to restrict competition." <u>Id.</u> at *18-19;

19  <u>see</u> <u>also</u> <u>Snelling</u>, 732 F. Supp. at 1043-45 (declining to enforce a

20  noncompetition clause in a franchise agreement since franchisee did

21  not utilize franchisor's trade secrets).

22       Defendants insist that <u>Dayton Time Lock Service, Inc. v.</u>

23  <u>Silent Watchman Corp.</u>, 52 Cal. App. 3d 1 (Cal. App. 2d Dist. 1975)

24  is controlling.  MSJ at 24.  The Court disagrees.  In <u>Dayton</u>, the

25  court found that a non-competition provision was enforceable

26  against a franchisor during the term of the franchise agreement. 52

27  Cal. App. 3d at 6.  Relying on federal anti-trust case law, the

28  Court stated that "[exclusive dealing contracts] are proscribed

**United States District Court**
For the Northern District of California

1    when it is probable that performance of the contract will foreclose

2    competition in a substantial share of the affected line of

3    commerce." Id. This standard is inconsistent with later court

4    decisions directly applying Section 16600. See, e.g., Aussie Pet

5    Mobile, 2010 U.S. Dist. LEXIS 65126, at *18; Snelling, 732 F. Supp.

6    at 1043-45.

7         In the instant action, it is unclear how prohibiting

8    Plaintiffs from having any financial interest or employment in any

9    "contract cleaning" or "any related business" "anywhere" is

10   necessary to protect Jani-King's trade secrets or proprietary

11   information. Nor is it clear that the Juarezes misappropriated

12   trade secrets in operating Nano's or in soliciting Jani-King's

13   former clients. The non-competition provision in the Franchise

14   Agreement effectively prevents Plaintiffs from working as janitors

15   for any other company during (and for some time after) the term of

16   the franchise. Even under the more lenient standard enunciated in

17   Dayton, such restrictions may not be unenforceable.

18        For the foregoing reasons, the Court concludes that triable

19   issues of fact exist as to whether the noncompetition clause in the

20   Franchise Agreement is enforceable. Accordingly, the Court DENIES

21   Jani-King's motion for summary judgment on its counterclaim for

22   breach of contract. At trial, Jani-King may present additional

23   evidence that the non-competition provision in the Franchise

24   Agreement is necessary to protect its trade secrets or proprietary

25   information.

26   ///

27   ///

28   ///

**V.   CONCLUSION**

The Court GRANTS in part and DENIES in part Defendant Jani-King's motion for summary judgment on claims brought by Plaintiffs Alejandro and Maria Juarez and Maria Portillo.  Specifically:

- The Court GRANTS Jani-King's motion for summary judgment with respect to Plaintiffs' labor code claims (claims 8-13).

- The Court GRANTS Jani-King's motion for summary judgment with respect to Plaintiffs' statutory fraud claims (claims 1-5).

- The Court GRANTS in part and DENIES in part Jani-King's motion for summary judgment with respect to Plaintiffs' claim for breach of contract (claim 6).

- The Court DENIES Jani-King's motion for summary judgment with respect to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (claim 7).

- The Court GRANTS in part and DENIES in part Jani-King's motion for summary judgment with respect to Plaintiffs' UCL claim (claim 14).

As to Plaintiffs' claims, the following issues may proceed to trial:  (1) whether Jani-King breached the Franchise Agreement by failing to provide Portillo with an IBO refund; (2) whether Jani-King breached the implied covenant of good faith and fair dealing; (3) whether Jani-King violated the UCL by engaging in unlawful business practices; (4) whether Jani-King engaged in the actions alleged in paragraph 224a of the FAC and whether those actions constitute unfair business practices under the UCL; (5) whether Jani-King underbid accounts and took accounts away from Plaintiffs without notice or justification and whether those actions constitute unfair business practices under the UCL; and (6) whether

**United States District Court**
For the Northern District of California

27

1   the non-competition provision of the Franchise Agreement

2   constitutes an unfair business practice under the UCL.

3        Additionally, the Court DENIES Jani-King's motion for summary

4   judgment on its counterclaim for breach of contract.  Jani-King's

5   counterclaims for breach of contract, tortious interference with

6   contract, and tortious interference with prospective economic

7   advantage may proceed to trial.

8

9        IT IS SO ORDERED, ADJUDGED, AND DECREED.

10

11        Dated: January 23, 2012

12                              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28