JAMES C. STURDEVANT (SBN 94551)
(jsturdevant@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA 94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

MARK TALAMANTES (SBN 187961)
(mark@e-licenciados.com)
JENNIFER A. REISCH (SBN 223671)
(jennifer@e-licenciados.com)
TALAMANTES/VILLEGAS/CARRERA, LLP
170 Columbus Avenue, Suite 300
San Francisco, CA 94133
Telephone: (415) 989-8000
Facsimile: (415) 989-8028

MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
235 Montgomery St., Suite 1010
San Francisco, CA 94104
Telephone:(415) 433-0333
Facsimile: (415) 449-6556

Attorneys for Plaintiffs

(ADDITIONAL COUNSEL LISTED ON LAST PAGE)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEJANDRO JUAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JANI-KING OF CALIFORNIA, INC., a Texas Corporation, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Case No.: CV09-03495 SC <br><br> **PLAINTIFFS' MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY FURTHER PROCEEDINGS PENDING APPEAL** <br><br> Date: March 9, 2012 <br> Time: 10:00 am <br> Courtroom: 1, 17th Flr. <br> Judge: Hon. Samuel Conti <br><br> Complaint filed: June 22, 2009 <br> Trial Date: March 12, 2012 |

1    Notice is hereby given that this motion has been scheduled for hearing at 10:00 a.m. on
2  March 9, 2012.  Pursuant to N.D. Civ. L.R. 7-1(b), Plaintiffs are requesting that this motion be
3  decided without oral argument, and on an expedited basis, given the currently scheduled trial date of
4  March 12, 2012.  Plaintiffs are conferring with Defendants on that issue.
5    Pursuant to 28 U.S.C. § 1292(b), Plaintiffs move that this Court certify for interlocutory
6  appeal its January 23, 2012, Order dismissing the claims brought under the California Labor Code
7  (Counts 8-13) and to stay further proceedings pending appeal.  Because the viability of Plaintiffs'
8  Labor Code claims turns on the Court's interpretation of a significant and unsettled area of
9  California law, and because it would be inefficient for the parties to engage in multiple, largely
10 duplicative trials if the Court's interpretation is later reversed on appeal, it would be better first to
11 obtain an appellate ruling on the viability of the Labor Code claims and then to schedule and conduct
12 a single trial.
13   This Court's Order rests on the conclusion that Labor Code claims brought by individuals
14 who perform work as alleged "franchisees" are subject to a test that is significantly different from
15 the test applied in every other case where Labor Code claims arise from the alleged misclassification
16 of workers as non-employees (independent contractors).  That is, while California authority provides
17 (1) that there is a presumption of an employment relationship when an individual shows he
18 performed services for another (Dkt. 168 at 8), and (2) that the existence of an employer-employee
19 relationship turns on a multi-factored test (Dkt. 159 at 4-7), the Court rejected the application of
20 these principles to this case.  Instead, the Court ruled that an individual who claims to be
21 misclassified as an independent contractor and is called a "franchisee" by the putative employer
22 must meet a different standard – i.e., "that the franchisor exercised 'control beyond that necessary to
23 protect and maintain its interest in its trademark, trade name, and good will' to establish a prima
24 facie case of an employer-employee relationship."  (Dkt. 168 at 8 (emphasis added), citing <u>Cislaw v.</u>
25 <u>Southland Corp.</u>, 4 Cal. App. 4th 1284, 1296 (Cal. Ct. App. 1992)).  This holding presents an
26 important question of first impression under California law, as the Court previously recognized (in
27 denying class certification) when concluding that whether this special test should apply in the
28 context of claims under the Labor Code was not "entirely clear."  (Dkt. 130 at 22-23).  Because


"there is substantial ground for differences of opinion" as to this issue[1] and because the other requirements for certification under 28 U.S.C. § 1292(b) are satisfied, certification is warranted here.

**Argument**

A district court may certify for appellate review any order that, in the court's opinion, "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (brackets added). A court has "substantial discretion" to decide whether to grant a motion for certification. In re California Title Insurance Antitrust Litigation, 2010 WL 785798, *1 (N.D. Cal. 2010) (citation omitted). Certification is particularly appropriate where a district court has issued a legal ruling on a complex issue of first impression, resulting in significant consequences for the parties and the general public. See, e.g., U.S. ex rel. Kelly v. Boeing Co., 9 F.3d 743, 745 (9th Cir. 1993) (legal question of first impression certified under § 1292(b) and accepted for appeal). Novel questions of law in cases under the Labor Code fall squarely within that category, and district courts in California previously have certified, and the Ninth Circuit has accepted, interlocutory appeals involving such questions. In fact, in the past year alone, the Ninth Circuit accepted two such appeals. See Kairy v. Supershuttle Int'l, Inc., 660 F.3d 1146, 1150 (9th Cir. 2011) (considering interlocutory appeal to determine district court's jurisdiction to rule on whether passenger stage corporation drivers – who are called "franchisees" – are employees or independent contractors under California law)[2]; Campbell v. PricewaterhouseCoopers, LLP, 642 F.3d 820, 824 (9th Cir. 2011) (considering interlocutory appeal to determine whether class of employees is subject to overtime exemption under California law).

All three of the criteria for certification are satisfied in this case. First, as demonstrated by the Court's dismissal of the Plaintiffs' Labor Code claims, the application of a special test for

---

[1] As discussed in more detail below, courts across the country have conducted employee-independent contractor analyses without using a special test for alleged "franchise" relationships, including in cases involving Jani-King and other commercial cleaning companies. See infra, pp. 4-5.

[2] The district court's order certifying an interlocutory appeal is attached as Exh. A.

putative franchisees is a controlling question of law in this case.  See In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982) ("all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court").  Applying a special test for putative employers who call themselves franchisors, the Court ruled that the Plaintiffs' Labor Code claims fail as a matter of law; without that special test, the Plaintiffs' Labor Code claims should proceed to trial.

Second, an immediate appeal will materially advance the ultimate resolution of this litigation by preventing the risk of duplicate trials.  See Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 1996) (noting appropriateness of certification where appeal could prevent "needless expense and delay"); Bartolutti v. Mukasey, 2008 WL 5054575, *1 (D. Idaho 2008) (Immediate appeal "may materially advance the ultimate termination of the litigation.  To proceed to trial on the remaining issues in the case would substantially increase the costs of the litigation in the event of a reversal on appeal.  If the case is not stayed . . . two trials with evidence very substantially overlapping would be necessary and would substantially increase the expense resolved in determination of the case"); F.D.I.C. v. Anders, 1991 WL 442874, * 3 (E.D. Cal. 1991) (reversal after trial and retrial "would delay the case longer than if the interlocutory appeal were decided prior to trial, even if the trial is postponed to await the resolution of the appeal").

The trial on the Plaintiffs' surviving claims is scheduled to begin on March 12, 2012.  Regardless of what happens with that trial, if the Court's dismissal of the Labor Code claims is subsequently reversed, the parties will need to go through a second trial that will involve essentially the same witnesses and the same evidence.  The Court's ruling that Jani-King's practice of "underbidding" accounts should go to trial will require Plaintiffs to present evidence on, among other things, the amount of time they spent working, the expenses they incurred to service their Jani-King accounts, and the resulting (sub-minimum) hourly wages they received.  Plaintiffs would present this same evidence to prove their Labor Code claims for minimum wage, overtime, and expense reimbursement violations.  Likewise, the evidence of Jani-King's control over Plaintiffs' wages, hours, and working conditions will be presented twice, because it is relevant both to its status as Plaintiffs' employer and to show the ways in which Jani-King made and broke promises.

The final element required for certification is a showing that the Court's order raises an issue for which "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In this case, the Court first considered the proper test for determining an employer-employee relationship when it ruled on and denied the Plaintiffs' motion for class certification. At that time, the Court acknowledged the lack of direct appellate authority:

> While the answer is *not entirely clear*, the Court finds it *likely* that under California law, a franchisee must show that the franchisor exercised 'control beyond that necessary to protect and maintain its interest in its trademark, trade name and goodwill' to establish a prima facie case of an employer-employee relationship. Cislaw, 4 Cal. App. 4th at 129.

(Dkt. 130 at 22-23) (emphasis added). The Plaintiffs respectfully urge the Court to recognize that other courts might rule – and in similar circumstances have ruled – otherwise.

Other courts around the country have rejected any special test for putative franchisees when evaluating whether a worker was an employee or an independent contractor. For example, in two decisions involving one of Jani-King's principal competitors, Coverall – which uses a virtually identical arrangement, also called a "franchise" system, to employ cleaning workers – the Massachusetts Supreme Judicial Court and a federal court rejected the company's attempts to characterize its cleaning workers as "franchisee" independent contractors. See Coverall North America, Inc. v. Division of Unemployment Assistance, 447 Mass. 852, 857 N.E.2d 1083 (2006); Awuah v. Coverall North America, Inc., 707 F. Supp. 2d 80 (D. Mass. 2010). Indeed, the Massachusetts Supreme Judicial Court expressly noted that it was rejecting the "franchise" label in the context of a claim for unemployment benefits: "Typically, we would refer to the claimant as a franchisee; however, because we conclude that this individual is not a franchisee, we refer to her as the claimant." Coverall, 447 Mass. at 853 n.2.[3] Another federal court, applying a multi-factor test

---

[3] In a decision last summer, the Massachusetts Supreme Judicial Court further held, on certification from the federal court in the Awuah matter, that the Coverall workers were entitled to a refund of all of their franchise fees and additional business fees, as well as deductions taken from their pay for various types of insurance, as these fees and deductions constituted wage violations and violated Massachusetts public policy (as they essentially require the workers to buy their jobs). See Awuah v. Coverall North America, Inc., 460 Mass. 484, 491, 952 N.E.2d 890 (2011).

1  similar to that used in California, denied Jani-King's motion for summary judgment, because there
2  were genuine issues of material fact about whether a Jani-King "franchisee" was its employee under
3  Mississippi law. Hayes v. Enmon Enterprises, LLC, 2011 WL 2491375 (S.D. Miss. June 22, 2011).
4  And an appellate court in Connecticut recently held that the use of a "franchise" label did not
5  warrant any special analysis or defense when evaluating whether a worker was an employee or
6  independent contractor. Jason Roberts, Inc. v. Administrator, 15 A.3d 1145, 1150 (Conn. App.
7  2011).

8      Cislaw, the primary authority on which the Court relies, is distinguishable for at least two
9  reasons. First, that case addressed the issue of whether a franchisee acted as an "agent" – not the
10 "employee" – of a franchisor for purposes of determining whether the franchisor could be liable to a
11 third party under a respondeat superior theory. Second, Cislaw did not involve the use of franchising
12 as a subterfuge to avoid liability under the Labor Code, which is *the* central issue with respect to the
13 Plaintiffs' Labor Code claims in the instant case.[4] In the context of claims under the Labor Code, it
14 is well established that "[t]he label placed by the parties on their relationship is not dispositive, and
15 *subterfuges are not countenanced.*" S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations, 48
16 Cal.3d 341, 349 (1989) (emphasis added). See also Narayan v. EGL, Inc., 616 F.3d 895, 903-904
17 (9th Cir. 2010) (the existence of a contract purporting to establish independent contractor status "is
18 simply *not dispositive* under California's test of employment") (emphasis added).

19     Plaintiffs submit that this Court's application of a special test for putative franchisees
20 attaches undue significance to the "franchise" label placed by the parties on their relationship,
21 thereby breathing life into Jani-King's use of a label to escape employer obligations under California

---

[4] Even in Cislaw, the court did not look solely at the issue of control. Instead, the court granted summary judgment for a franchisor where (1) there was no evidence that the franchisor exerted control "beyond that necessary to protect and maintain its interest in its trademark, trade name and goodwill," (2) the franchisor could not terminate the franchisee at will, *and* (3) there was "little, if any, evidence in the record" as to the other common-law factors relevant to determining agency status. Id. at 1296-97. Moreover, unlike in this case, the plaintiff in Cislaw relied *solely* on the franchise agreement to prove agency. Id. at 1287. Here, Plaintiffs pointed to a broad array of evidence to support their misclassification claim. (Dkt. 159 at 8-11).

5

labor laws.  By virtue of the parties' use of the franchise label, the Court elevated a single factor – control – to a status greater than that factor has in other cases challenging an independent contractor classification.  While control is an important consideration, it is not dispositive under California law.  Bowman v. Wyatt, 186 Cal. App. 4th 286, 303-304 (2010), citing Borello ("the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements").

The use of subterfuge to avoid Labor Code claims is particularly pronounced in the commercial cleaning industry, where large companies such as Jani-King, Coverall, and Jan-Pro target unskilled, low-wage workers, inducing them to undertake a futile pursuit of the "American dream" by paying thousands of dollars for the privilege of cleaning commercial buildings.[5]  Indeed, in denying Jani-King's motion for summary judgment on the claim alleging a breach of the implied covenant, the Court recognized that Jani-King "exerted a substantial amount of control over bids made to clients," and its underbidding resulted in sub-minimum wages.  (Dkt. 168 at 18-19).  For example, there is evidence "that Plaintiffs serviced certain Jani-King accounts for $3.58 to $6 per hour."  (Id. at 19).  This evidence demonstrates why commercial cleaning "franchises" have come under attack across the country – they are not arrangements which provide genuine opportunities to develop a profitable business; they are shams designed to enrich companies like Jani-King while their allegedly non-employee janitors labor for sub-minimum wages, without any of the benefits or protections enjoyed by employees.  These types of concerns are wholly absent from cases like Cislaw, where the question was not whether a putative employer was using subterfuge to avoid Labor Code obligations, but whether a franchisee's alleged negligence could be imputed to the franchisor under a theory of respondeat superior.

---

[5]  The abuses in this industry are so widespread that the Federal Trade Commission issued a "consumer alert" in 2001 about janitorial franchises. Federal Trade Commission, "Buying a Janitorial Service Franchise: Making a Clean Sweep" (August 2001) (available at http://www.ftc.gov/bcp/menus/consumer/invest/business.shtm).  The Department of Labor's 2012 proposed budget, meanwhile, targets misclassification as an important enforcement priority, and notes that industries with "higher rates of violations" include the "janitorial" industry. FY2012, Dep't of Labor, Budget in Brief, at 47, available at http://www.dol.gov/dol/budget/2012/PDF/FY2012BIB.pdf.

When assessing the significance of the question before this Court, the Plaintiffs urge the Court to recognize that cases decided in the realm of cleaning franchise litigation are closely watched and frequently cited in other jurisdictions. For example, this Court's decision denying class certification was cited by Jani-King in a case proceeding in Massachusetts,[6] by Jan-Pro in a case proceeding in Georgia,[7] and by Coverall in a case proceeding in the Southern District of California.[8] As demonstrated by these citations, the significance of the Court's decisions in this case extends beyond the interests of the parties in this case, potentially affecting thousands of cleaning workers across the country. As a result, this is an issue that warrants immediate appellate consideration and decision.

Finally, because appellate resolution of this issue will directly impact the scope of any trial, and because the benefits of an interlocutory appeal will largely be lost if this case is tried in piecemeal fashion, the Plaintiffs respectfully request that the matter be stayed pending a final decision by the Ninth Circuit Court of Appeals. See Order Granting Motion for Certification Pursuant to 28 U.S.C. § 1292(b), Exh. A, at 3. In the absence of an interlocutory appeal, the parties will have a trial in March on seven claims, as identified by the Court. (Dkt. 168 at 27-28). That trial will necessarily get into details about the cleaning work performed by the Plaintiffs under the alleged

---

[6] De Giovanni v. Jani-King International, Inc., Civil Action No. 07-CV-10066, Defendants' Motion to Decertify Class and Memorandum in Support Thereof, at 1, 8-9 (D.Mass. Aug. 12, 2011) (attached as Exh. B).

[7] Jan-Pro Franchising Int'l, Inc. v. Depianti, Appeal No. A11A0342, Appellants' Supplemental Brief (Ga. App. Ct. Apr. 21, 2011) (attached as Exh. C).

[8] Laguna v. Coverall North America, Inc., Civil Action No. 09-CV-02131, Defendants' Opposition to Plaintiffs' Motion for Class Certification, 2011 WL 4466958 at §V.C.1(a) (S.D. Cal. Mar. 18, 2011). Indeed, the parties in the California Coverall case are seeking court approval of a class settlement that provides almost no monetary relief to 1,500 class members – and is, in fact, being challenged as insufficient in a heated objection dispute – relying largely on this Court's decision denying class certification, and more recently on this Court's decision granting summary judgment to Jani-King on the Labor Code claims. See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF Dkt. 254-1 at 12, 17, 24 (Nov. 14, 2011); Response to Memorandum in Support of Class Member Amrit Singh's Objection to Class Action Settlement, ECF Dkt. 257 at 1, 5, 6, 8, 12 (Nov. 18, 2011); Notice of Supplemental Authority, ECF Dkt. 276 (Jan. 27, 2012) (attaching summary judgment ruling from this case).

franchise agreements and the role played by Jani-King to control and monitor that work. Regardless of how that trial ends, the Plaintiffs intend to appeal the Court's dismissal of the Labor Code claims. If that dismissal is reversed, the parties will then proceed to a second trial, which will substantially overlap the scope of the first trial, with evidence about the cleaning work performed by the Plaintiffs and about Jani-King's control and monitoring of that work. As a result, it would be more efficient for the parties and for this Court to obtain a definitive resolution of the law governing the Labor Code claims before proceeding to trial.

### Conclusion

Because all three of the criteria for an interlocutory appeal of the Court's order are satisfied, the Plaintiff's motion should be granted. Granting of the motion will provide an opportunity for obtaining clear guidance about the proper standard for resolving the Plaintiffs' Labor Code claims, resolve a significant issue that is arising throughout this industry in cases in California as well as around the country, and will provide a far more efficient resolution of this case for the parties and the Court alike. A proposed order is filed herewith as Exh. D and will be sent to the Court by electronic mail.

DATED: _February 1, 2012                    Respectfully submitted,

                                            THE STURDEVANT LAW FIRM
                                            A Professional Corporation

                                            TALAMANTES/VILLEGAS/CARRERA, LLP

                                            DUCKWORTH PETERS LEBOWITZ
                                            OLIVIER LLP

                                            LICHTEN & LISS-RIORDAN, P.C.

                                    By:     /s/ Shannon Liss-Riordan
                                            SHANNON LISS-RIORDAN
                                            Attorneys for Plaintiffs

**ADDITIONAL COUNSEL**

Counsel for Plaintiffs

SHANNON LISS-RIORDAN (*Pro Hac Vice*)
(sliss@llrlaw.com)
HILLARY SCHWAB (*Pro Hac Vice*)
(hschwab@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114
Telephone:  (617) 994-5800
Facsimile:    (617) 994-5801